## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

PHYLLIS ANDREWS
284 Smith Ridge Road
South Salem, NY 10590,

THOMAS E. MINOGUE, Co-Trustee
of the Phyllis Andrews Family Trust
237 Elm Street
New Canaan, CT 06840,

HERMAN H. TARNOW, Co-Trustee
of the Phyllis Andrews Family Trust
108 Napa Ridge Way
Naples, FL 34119, and

JANE F. SIMS, Co-Trustee
of the Phyllis Andrews Family Trust
20 Branchwood Court
Baltimore, MD 21208,

     Plaintiffs,

    v.

ARTHUR B. MODELL,
8 Laurelford Court
Cockeysville, MD 21030,

     Defendant.

# 07 CIV. 3368

# ROBINSON

Civil Action No. : _____

---

## NOTICE OF REMOVAL

 Defendant, Arthur B. Modell, hereby gives notice under 28 U.S.C. § 1446(a)

that the civil action in *Minogue v. Modell*, Index No. 07-4170 (N.Y. Sup. Ct.) (filed

Mar. 13, 2007) is removed to this Court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441(a). In support of removal, Mr. Modell respectfully states as follows:

## PROCEDURAL HISTORY

1.      This is the third civil action filed by the Phyllis Andrews Family Trust (the "Trust") against Mr. Modell seeking to recover a "finder's fee." The Trust's claims all arise from a document (the "Letter Agreement") that Mr. Modell and Vincent S. Andrews Sr. signed in 1963. According to the Trust, the Letter Agreement requires Mr. Modell to pay the Trust five percent of Mr. Modell's net gain from the sale of his ownership interests in the corporation that held the assets of the football franchise formerly known as the Cleveland Browns. *See* Compl. ¶ 39. The two preceding courts to have considered these claims have rejected them.

2.      After two years of litigation, a federal court in Maryland granted summary judgment to Mr. Modell, holding, among other things, that the Trust lacked standing to sue. *See Minogue v. Modell*, 384 F. Supp. 2d 821, 824-25 (D. Md. 2005) ("*Minogue I*") (attached as Exhibit A). When the Trust filed the same claims in Ohio six months later, the Court of Common Pleas in Cuyahoga County, Ohio dismissed, holding that Ohio was an inconvenient forum, particularly compared to Maryland. *See Minogue v. Modell*, No. 580274, Slip Op. ¶ 12 (Ohio Ct. Com. Pleas Oct. 4, 2006) ("*Minogue II*") (attached as Exhibit B). This complaint, which recycles the same twice-rejected claims, seeks to shop for an altogether new forum — on the eve of the limitations period, no less. *See* Compl. ¶ 88.

*Minogue I*

3.      On May 23, 2003, Thomas Minogue and Thomas Callaghan, co-
trustees of the Trust, filed a complaint against Mr. Modell in the Court of Common

Pleas in Cuyahoga County, Ohio seeking to recover the same "finder's fee" at issue

here.  Mr. Modell removed the case to the U.S. District Court for the Northern

District of Ohio on the basis of diversity jurisdiction.  The District Court in Ohio

granted Mr. Modell's ensuing motion to transfer venue to the U.S. District Court for

the District of Maryland.  Following extensive discovery and voluminous briefing

by the parties, the District Court in Maryland granted summary judgment to Mr.

Modell on July 22, 2005 on the ground that the Trust lacked standing to sue

because it could not demonstrate that it rightfully owned the Letter Agreement that

formed the basis for all of its claims.  *See Minogue I*, 384 F. Supp. 2d at 824-25.  The

Court further held that the Trust's common law claim for "prevention" and bad faith

was defective as a matter law.  *See id.* at 826.[1]

*Minogue II*

4.      Claiming to have corrected its lack of standing, the same Trust,
represented by the same attorneys, filed a second lawsuit against Mr. Modell on

December 30, 2005, raising nearly identical claims to those adjudicated by the

District Court in Maryland.  To avoid appearing before the same federal judge in

Maryland, the Trust filed its complaint once again in the Court of Common Pleas in

---

[1]      The Trust sought, and the court denied, reconsideration of part of the court's
summary judgment holding.  The Trust did not appeal the judgment.

Cuyahoga County, Ohio.[2] Anticipating that Mr. Modell might again exercise his statutory right to remove the action to federal court based on diversity jurisdiction, the Trust shuffled its trustees. Less than two weeks before filing the second complaint, Mr. Callaghan of Ohio resigned as co-trustee, thereby removing the Trust's only nominal Ohio connection. Taking his place were two new co-trustees, Herman Tarnow and Jane Sims, whose appointments were designed to thwart diversity of citizenship. Ms. Sims is a citizen of Maryland, just like Mr. Modell. Mr. Tarnow is a citizen of Florida where Mr. Modell resides in the winter.

5.      Mr. Modell again removed the action to the U.S. District Court for the Northern District of Ohio on the basis of diversity jurisdiction, arguing that the court should disregard Ms. Sims's citizenship for purposes of the complete diversity rule because her appointment as trustee on the eve of litigation was a collusive device to defeat diversity jurisdiction. Relying on *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183 (1931), the District Court in Ohio decided that it was "forbidden from speculating further into the motive for Sims's appointment as trustee," and therefore remanded the case to Ohio state court. *Minogue v. Modell*, 2006 WL 1704932 (N.D. Ohio June 16, 2006) (attached as Exhibit C).[3] On remand, the Ohio

---

[2]      Under any definition, the second action was a "related case" with respect to *Minogue I*. When *Minogue I* was filed in the Court of Common Pleas, it was assigned to Judge Stuart Friedman. When the second suit was filed in the same court, it was initially assigned to Judge Mary Boyle, but was then reassigned *sua sponte* to Judge Friedman under standard Ohio procedure.

[3]      Mr. Modell, of course, could not appeal the remand ruling. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . .").

Court of Common Pleas granted Mr. Modell's motion to dismiss the complaint on the ground of *forum non conveniens* because the Circuit Court for Baltimore County, Maryland was "the more convenient" alternate forum. *Minogue II*, Slip Op. ¶ 12.[4]

## THE CURRENT COMPLAINT

6.      Paying no heed to the Ohio state court's *forum non conveniens* analysis, Mr. Minogue, Mr. Tarnow, and Ms. Sims filed yet another nearly identical complaint on behalf of the Trust on March 13, 2007, this time in the Supreme Court of the State of New York for Westchester County. *See* Compl. at 1 (attached as Exhibit E). Joining the co-trustees as plaintiff in this latest round of litigation is the Trust's grantor, Phyllis Andrews, notwithstanding the Trust's consistent allegation that Mrs. Andrews "sold" her interest in the letter agreement to the Trust in 2000. *See* Compl. ¶ 6 ("Phyllis Andrews . . . entered into a written Purchase Agreement in which she transferred to the Trust all of her interest in the Letter Agreement."); *id.* ¶ 55 (same). Copies of all process, pleadings, and orders served on Mr. Modell in this latest suit are collected in the attached appendix of exhibits. The complaint and summons were served on Mr. Modell in Maryland on March 29, 2007, and this notice of removal timely followed. *See* 28 U.S.C. § 1446(b). In accordance with 28 U.S.C. § 1446(d), Mr. Modell promptly will give notice to the Supreme Court of the State of New York of the filing of this notice of removal.

---

[4]      The Trust appealed this judgment to the Eighth Appellate District of Ohio, which dismissed the appeal *sua sponte* for lack of a final order. *See* Compl. ¶ 19. The Trust then filed a petition for certiorari with the Ohio Supreme Court, which the Trust withdrew on March 13, 2007, the same day this action was filed. *See* Compl. ¶¶ 20-21.

## JURISDICTION

7.      "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The territory of the U.S. District Court for the Southern District of New York embraces Westchester County.

8.      This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(1), which provides that "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."

### *Amount in Controversy*

9.      According to the Trust, the Letter Agreement requires Mr. Modell to pay the Trust five percent of his net gain from the sale of his ownership interests in the corporation that held the assets of the football franchise formerly known as the Cleveland Browns. The Trust estimates that it is entitled to "at least $21.5 million," *see* Compl. ¶ 1, which is well in excess of this Court's jurisdictional minimum of $75,000.

*Diversity of Citizenship*

10.    Plaintiff Phyllis Andrews is the Trust's grantor.  She is a citizen of New York.  *See* Compl. ¶ 22.

11.    Plaintiff Thomas E. Minogue was appointed co-trustee of the Trust on April 8, 2003.  Mr. Minogue was a party-plaintiff in *Minogue I* and *Minogue II*.  He is a citizen of Connecticut.  *See* Compl. ¶ 23.

12.    Plaintiff Herman H. Tarnow was appointed co-trustee of the Trust on December 19, 2005.  Mr. Tarnow was a party-plaintiff in *Minogue II*.  He is a citizen of Florida.  *See* Compl. ¶ 24.

13.    Plaintiff Jane F. Sims was appointed co-trustee of the Trust on December 17, 2005.  Ms. Sims was a party-plaintiff in *Minogue II*.  She is a citizen of Maryland.  *See* Compl. ¶ 25.

14.    Defendant Arthur B. Modell is a citizen of Maryland.

15.    Although Ms. Sims shares Maryland citizenship with Mr. Modell, this Court's diversity jurisdiction is not defeated.  The Court should disregard Ms. Sims's citizenship for purposes of the complete diversity rule because her appointment as trustee was a device designed to defeat diversity jurisdiction.

- First, Ms. Sims's interest in the Trust's assets or this litigation comprises significantly less than a full or undivided interest.  In *Minogue I* there were two trustees and now there are three.  The Trust purposefully created for Ms.

Sims something analogous to a minority interest, so that she might exercise some degree of authority over the Trust without the risk that she could actually control the Trust or this litigation.

- Second, Ms. Sims is a mid-level associate at a Baltimore law firm, and was appointed as an additional co-trustee only fourteen days before the Trust filed *Minogue II. See* Compl. ¶ 25; *see also* Attorney Profile, available at http://www.milesstockbridge.com/LAW/law.php? id=113 &selected_lawyer =580.  More to the point, Ms. Sims was a total stranger to *Minogue I*, and it is difficult to understand what insights or expertise she offers now, given the Trust's reliance on all of the discovery from *Minogue I. See* Compl. ¶ 2 ("Because there has already been substantial litigation relating to this dispute, most of the material facts relating to the dispute are now known."); *see also McClanahan v. Snodgrass*, 319 F. Supp. 913, 916 (N.D. Miss. 1970) (disregarding improper transfer where plaintiff dismissed case, transferred interest in claim to a non-diverse person, and re-filed lawsuit with additional, non-diverse co-plaintiff).

In short, Ms. Sims has been named as an additional co-trustee of the Trust solely for the purpose of manipulating the subject matter jurisdiction of this Court.  The Court should disregard her citizenship as a nominal co-plaintiff. *Dempsey v.*

*Transouth Mort. Corp.*, 88 F. Supp. 2d 482, 484 (W.D.N.C. 1999) (finding substitute

trustee to be a nominal party only).[5]

    16.    Mr. Modell acknowledges that *Minogue II* was remanded to state court

because the District Court in Ohio felt it was "forbidden" under *Mecom v.*

*Fitzsimmons Drilling Co.*, 284 U.S. 183 (1931) from questioning the "motive for

Sims's appointment as trustee."   *Minogue v. Modell*, 2006 WL 1704932 at *16.  But

*Mecom* was cited only in passing by both sides and was not addressed at any length

during the briefing on the Trust's motion to remand.[6]  Mr. Modell respectfully

submits that the District Court in Ohio overread *Mecom* and took too limited a view

of its own authority.  A significant body of caselaw recognizes a federal court's

authority to ensure that a defendant's right of removal is not stifled, and the Court's

jurisdiction not manipulated, by the collusive maneuvers of a plaintiff.  *Mecom* is,

moreover, distinguishable from the facts of this case — a point Mr. Modell was

unable to advance fully in *Minogue II* because the District Court in Ohio received

scant briefing on *Mecom*'s inapplicability and because the remand order was not

appealable.  *See* 28 U.S.C. § 1447(d).

---

[5]     Mr. Tarnow's appearance in this case is equally objectionable.  His appointment as
an additional co-trustee two weeks before the complaint was filed in *Minogue II* was
motivated by the possibility that Mr. Modell, who owns property in Florida, might claim to
be a resident of the State of Florida — thus making it necessary to appoint a Florida citizen
as co-trustee to defeat diversity jurisdiction.  As stated above, Mr. Modell is a citizen of
Maryland for removal purposes.  Even if Mr. Modell were a Florida citizen, Mr. Tarnow's
last-minute appointment as an additional co-trustee could not serve to defeat diversity
jurisdiction for the same reasons that apply to Ms. Sims.

[6]     Importantly, the Trust never relied on *Mecom* in any significant way, and the
District Court in Ohio never held a hearing or otherwise expressed its views regarding the
applicability of that case before entering its (unappealable) opinion remanding the case.

17.    Contrary to the conclusion of the District Court in Ohio in *Minogue II*, the Court is fully empowered to examine whether Ms. Sims's appointment was made to manipulate jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (recognizing that "sham or collusion" may operate as an exception to the general rule that a trustee's citizenship counts for purposes of diversity jurisdiction). As the Supreme Court long ago stated, the "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907); *see also, e.g., Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) ("[F]ederal district courts have both the authority and the responsibility . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal."). Indeed, as the Eastern District of New York has found, "the power and duty of the federal district court to insure that no one improperly invokes or stifles its jurisdiction is so plain, that elaborate inquiry into the question of citizenship is often indispensable." *Gunderson v. Barber Asphalt Corp.*, 71 F. Supp. 40, 41 (E.D.N.Y. 1947).

18.    *Mecom* is not to the contrary. In that case, an Oklahoma citizen died in an accident alleged to be caused by the negligence of the defendants. 284 U.S. at 184. His widow was appointed the administrator of his estate by the Oklahoma

state probate court. *Id.* The widow attempted to sue the defendants three different times in state court and each time the case was properly removed to federal court. *Id.* After each removal, the widow dismissed suit. Finally, the widow resigned and Mr. Mecom was appointed administrator by the state probate court. *Id.* at 185. Because Mr. Mecom was a Louisiana resident, total diversity was destroyed. *Id.* The Supreme Court rebuffed the defendant's contention that Mr. Mecom, the widow, and her attorney "were in a conspiracy to defeat federal jurisdiction" because "[t]o go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it." *Id.* at 189.

19.    The decision in *Mecom* thus rested on the rationale that parties seeking to establish diversity jurisdiction may not do so by collaterally attacking a state court order appointing a fiduciary. This rationale is inapplicable here. Unlike Mr. Mecom, Ms. Sims was not appointed co-trustee by an order of any state court. Rather, she was appointed solely by the private actions of the Trust itself. The warning expressed in *Mecom* against collateral attacks on state court orders, therefore, is not implicated. Where, as here, private conduct is at issue, courts take quite the opposite approach and consider whether a plaintiff's motive in transferring a claim is a collusive device to defeat diversity jurisdiction. *See Grassi*, 894 F.2d at 182 (finding diversity exists because assignment of two percent interest to a non-diverse Costa Rican corporation was collusive); *JMTR Enters., L.L.C. v.*

*Duchin*, 42 F. Supp. 2d 87, 91 (D. Mass. 1999) (finding diversity exists because assignment of a portion of the claim to a related company of non-diverse citizenship was collusive); *Smilgin v. New York Life Ins. Co.*, 854 F. Supp. 464, 465 (S.D. Tex. 1994) (finding diversity exists because assignment of one percent of the claim to the non-diverse plaintiff was collusive); *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 940 (M.D. La. 1981) (finding diversity exists because assignment of 1/108th interest in the land at issue was collusive); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 162 (D. Maine 1969) ("The Court conceives it to be both its prerogative and its duty to pierce the appearance of plaintiff Tamblyn's interest in this case. Having done so, it concludes that the essential diversity of citizenship of the parties at bar has not been vitiated by plaintiffs' sham transaction.").

20.    Because the Trust has shuffled its trustees as a collusive device to defeat diversity jurisdiction, and because the District Court in Ohio mistakenly concluded in *Minogue II* that it was forbidden from examining the Trust's conduct, Mr. Modell has exercised his statutory right to remove this action to this Court on the basis of diversity jurisdiction.[7]

## CONCLUSION

This case meets the requirements of 28 U.S.C. § 1332, just as *Minogue I* did. The only thing that has changed is plaintiffs' attempt to defeat diversity jurisdiction

---

[7]    Many of the facts establishing the basis for Mr. Modell's collusion arguments are contained in plaintiffs' complaint. In addition, the Court may take judicial notice of the pleadings, orders, and other paper filed in *Minogue I* and *Minogue II*. Mr. Modell reserves the right to rely on additional facts and arguments, if necessary, in any future briefing.

by replacing the Trust's Ohio co-trustee with two new co-trustees whose sole

function is to defeat diversity and avoid the rulings of the District Court in

Maryland.  Once the collusively appointed plaintiffs are disregarded, the parties

have diverse citizenship and the amount in controversy exceeds $75,000.  Removal

to, and subject matter jurisdiction in, this Court are therefore appropriate.

DATED: April 27, 2007                         Respectfully submitted,


                                              **Hogan & Hartson LLP**
                                              By: Claudia T. Morgan (CM 1998)
                                              44 S. Broadway, Third Floor
                                              White Plains, NY 10601
                                              (212)918-8300

                                              *Counsel for Arthur B. Modell*

*Of counsel:*

Steven F. Barley
Douglas Nazarian
Daniel J. Jawor
**Hogan & Hartson LLP**
111 S. Calvert Street, Suite 1600
Baltimore, MD 21202
Telephone: (410) 659-2700
Facsimile: (410) 539-6981

## CERTIFICATE OF SERVICE

I certify that on this 27th day of April 2007 I sent a true copy of the foregoing document, entitled, Notice of Removal, to counsel for plaintiffs by first class mail, postage pre-paid, at the following address:

Christopher M. Green
Daniel E. Holloway
Lisa M. Nousek
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504

Claudia T. Morgan