Christopher M. Green (CG-1090)
Daniel E. Holloway (DH-5254)
Lisa M. Nousek (LN-0902)
**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, New York 10504
(914) 749-8200

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| PHYLLIS ANDREWS, THOMAS E. MINOGUE, HERMAN H. TARNOW and JANE F. SIMS, | : : : : : | |
| Plaintiffs, | : : | 07 Civ. 3368 (SCR) |
| v. | : : | |
| ARTHUR B. MODELL, | : : | Oral Argument Requested |
| Defendant. | : : | Judge Stephen C. Robinson |
| | : : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
THIS CASE TO THE SUPREME COURT OF THE STATE OF NEW YORK,
WESTCHESTER COUNTY**


**BOIES, SCHILLER & FLEXNER LLP**
333 Main Street
Armonk, New York 10504
(914) 749-8200

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ................................................... 1

**ARGUMENT** ..................................................................................................................... 6

    I.    IT WOULD BE ERROR FOR THIS COURT TO RECONSIDER THE OHIO
         FEDERAL COURT'S REMAND ORDER. ................................................................ 6

         A.    28 U.S.C. § 1447(d) Precludes this Court from Reviewing the Ohio Federal
               Court's Remand Order. ..................................................................................... 6

         B.    A Remand Order Has Issue Preclusive Effect in a Later Litigation Such as
               This One between the Same Parties and their Privies............................................ 7

    II.    THE OHIO FEDERAL COURT'S DECISION WAS CORRECT IN ANY
         EVENT. .................................................................................................................. 13

         A.  Complete Diversity Must Exist for this Court to Exercise Jurisdition. ..................... 13

         B.  For Diversity Purposes, the Citizenship of the Trust is that of Its Three Co-
            Trustees. ........................................................................................................... 14

         C.  Co-Trustee Tarnow and Sims Were Appointed for Legitimate Reasons, Not
            Fraudulently and Improperly as Mr. Modell Asserts.................................................. 16

         D.    Even if Co-Trustees Tarnow and Sims Were Appointed Solely to Defeat
              Diversity, Remand Would Still Be Required........................................................... 18

             1.    Real Parties in Interest May Be Joined Even where the Sole Factor
                 Motivating Joinder Is a Desire to Destroy Diversity Jurisdiction..................... 18

             2.    The Addition of Ms. Sims and Mr. Tarnow Compares Favorably to a
                 Valid Assignment of Claims............................................................................ 20

         E.    Mr. Modell Has Not Met the Burden that Must Be Born by a Party Who
              Seeks Removal................................................................................................. 22

**CONCLUSION** ........................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Attorneys Trust v. Videotape Computer Prods., Inc.*,
   93 F.3d 593 (9th Cir. 1996) ................................................................................19

*Baker v. Latham Sparrowbush Assoc.*,
   808 F. Supp. 992 (S.D.N.Y. 1992) ...........................................................................8

*Blakeman v. Conroy*,
   512 F. Supp. 325 (E.D.N.Y. 1981) ..........................................................................19

*Cal. Pub. Employees Retirement Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004)...............................................................................22

*Century Business Services, Inc. v. Bryant*,
   69 Fed.Appx. 306 (6th Cir. 2003) ............................................................................9

*City Capital Resources, Inc. v. White*,
   29 F. Supp. 2d 334 (S.D. W.Va. 1998) ....................................................................12

*Coal Co. v. Blatchford*,
   78 U.S. 172, 20 L.Ed. 179 (1870) ...........................................................................14

*Colorado v. Ace Cash Express, Inc.*,
   188 F. Supp. 2d 1282 (D. Col. 2002) ......................................................................12

*Covanta Onondaga Ltd. Partnership v. Onondaga
   Resource Recovery Agency*,
   318 F.3d 392 (2d Cir. 2003)...............................................................................11

*Feller v. Brock*,
   802 F.2d 722 (4th Cir. 1986) ...............................................................................12

*Frith v. Blaxon-Flexible Flyer, Inc.*,
   512 F.2d 899 (5th Cir. 1975) .................................................................................8

*Gardner & Florence Call Cowles Found. v. Empire Inc.*,
   754 F.2d 478 (2d Cir. 1985)...............................................................................23

*Health Cost Controls of Illinois, Inc. v. Washington*,
   187 F.3d 703 (7th Cir. 1999) ......................................................................8, 9, 11

*Henning v. Rando Mach. Corp.*,
   207 A.D.2d 106, 620 N.Y.S.2d 867 (N.Y. App. Div. 1994) .......................................20

*Hilow v. Rome City Sch. Dist.* No. 91-cv-567,
   1994 WL 328625 (N.D.N.Y. June 29, 1994)....................................................................5

*Intershoe, Inc. v. Filanto S.P.A.*,
   97 F. Supp.2d 471 (S.D.N.Y. 2000) .............................................................................19

*Jana Master Fund, Ltd. v. J.P. Morgan Chase & Co.*,
   No. 06 Civ. 14333(PKC),
   2007 WL 1175694 (S.D.N.Y. April 19, 2007) ............................................................22

*Johnson Street Steel Rail Co. v. William Wharton*,
   152 U.S. 252, 14 S. Ct. 608 (1894).................................................................................9

*K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*,
   61 F.3d 123 (2d Cir. 1995).............................................................................................13

*Langhorne v. Capital Fire Ins. Co. of California*,
   54 F. Supp. 771 (D. Minn. 1944) ..................................................................................19

*In re Lloyd's Am. Trust Fund Litig.*,
   954 F. Supp. 656 (S.D.N.Y. 1997) ...............................................................................20

*Lloyds Bank PLC v. Norkin*,
   817 F. Supp. 414 (S.D.N.Y. 1993) ...............................................................................14

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178, 56 S. Ct. 780 (1936)...............................................................................22

*Mecom v. Fitzsimmons Drilling Co.*,
   284 U.S. 183, 52 S. Ct. 84 (1931)...........................................................................3, 5, 22

*Mertan v. E.R. Squibb & Sons, Inc.*,
   581 F. Supp. 751 (C.D. Cal. 1980) ...............................................................................13

*In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*,
   Nos. 04-5974-cv(L), 04-6056-cv(CON),
   2007 WL 1500338 (2d Cir. May 24, 2007) .................................................................22

*Minogue v. Modell ("Minogue I")*,
   384 F. Supp. 2d 821 (D. Md. 2005) ................................................................................2

*Minogue v. Modell ("Minogue II")*,
   2006 WL 1704932 (N.D. Ohio Jun. 16, 2006) ...........................................1, 3, 5, 6, 24

*Modave v. Long Island Jewish Med. Ctr.,*
    501 F.2d 1065 (2d Cir. 1974)......................................................................23

*Napper v. Anderson, Henley, Shields, Bradford & Pritchard,*
    500 F.2d 634 (5th Cir. 1974),
    *cert. denied,* 423 U.S. 837, 96 S. Ct. 65 (1974).....................................8, 9, 10, 11, 12

*National City Commercial Capital Corp. v. AAAA*
    *At Your Service Inc.*
    843 N.E.2d 793 (Ohio Mar. 8, 2006) ...........................................................4

*Navarro Sav. Ass'n v. Lee,*
    446 U.S. 458, 100 S. Ct. 1779 (1980)...................................................14, 15

*New Orleans Public Service, Inc. v. Majoue,*
    802 F.2d 166 (5th Cir. 1986) .......................................................................7

*Nutter v. Monongahela Power Co.,*
    4 F.3d 319 (4th Cir. 1993) .........................................................................9

*Owen Equip. & Erection Co. v. Kroger,*
    437 U.S. 365, 98 S. Ct. 2396 (1978).........................................................14

*Painters Local Union No. 109 Pension Fund v. Smith*
    *Barney Inc.,*
    113 F.3d 590 (8th Cir. 1998),
    *cert. denied,* 524 U.S. 915, 118 S. Ct. 2297 (1998)...................................8, 11

*R.G. Barry Corp. v. Mushroom Makers, Inc.,*
    612 F.2d 651 (2d Cir. 1979)......................................................................22

*Rosecrans v. William S. Lozier, Inc.,*
    142 F.2d 118 (8th Cir. 1944) ...................................................................20

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.,*
    710 F.2d 87 (2d Cir. 1983) .......................................................................19

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.,*
    521 F. Supp. 1046 (S.D.N.Y 1981) ..........................................................19

*Seedman v. United States District Court*
    *for the Central District of California,*
    837 F.2d 413 (9th Cir. 1988) .....................................................................7

*Shapiro v. Logistec USA Inc.*,
   412 F.3d 307 (2d Cir. 2005)......................................................................7

*Southern Leasing Corp. v. Tufts*,
   804 P.2d 1321 (Ariz. Ct. App. 1991)......................................................9

*Southern Pacific R.R. v. U.S.*,
   168 U.S. 1, 18 S. Ct. 18 (1897)................................................................8

*Stichting Ter Behartiging Van de Belangen Van*
   *Oudaandeelhouders in Het Kapitaal Van*
   *Saybolt Int'l B.V. v. Schreiber*,
   407 F.3d 34 (2d Cir. 2005).....................................................................19

*Strawbridge v. Curtiss*,
   7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ..........................................13

*Sullivan v. American Airlines, Inc.*,
   613 F. Supp. 226 (S.D.N.Y. 1985) ........................................................11

*Things Remembered, Inc. v. Petrarca*,
   516 U.S. 124, 116 S. Ct. 494 (1995).......................................................6

*Tobin v. Slutsky*,
   506 F.2d 1097 (2d Cir. 1974).................................................................23

*Verschell v. Fireman's Fund Ins. Co.*,
   257 F. Supp. 153 (S.D.N.Y. 1966) ........................................................21

*Volvo of America Corp. v. Schwarzer*,
   429 U.S. 1331, 97 S. Ct. 284 (1976)........................................................6

*In re: WTC Disaster Site*,
   414 F.3d 352 (2d Cir. 2005)...................................................................13

*Wells Fargo Bank NW., N.A. v. Taca Int'l Airlines, S.A.*,
   314 F. Supp. 2d 195 (S.D.N.Y. 2003)....................................................14

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, South*
   *Atlantic and Gulf Coast District of the ILA; AFL-CIO, etc.*,
   751 F.2d 721 (5th Cir. 1985) .................................................................12

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)...................................................................20

*Winters v. Diamond Shamrock Chemical Co.*,
    149 F.3d 387 (5th Cir. 1998) ................................................................9

*Winters v. Lavine*,
    574 F.2d 46 (2d Cir. 1978).................................................................10

## STATUTES AND RULES

28 U.S.C. § 1332(c) .............................................................................22

28 U.S.C. § 1447(c) ........................................................6, 7, 8, 9, 11, 12, 13

28 U.S.C. § 1447(d) .............................................................1, 4, 6, 7, 12

Federal Rule of Civil Procedure 17(a) ..............................................14

N.Y. C.P.L.R. § 1004.........................................................................20

N.Y. Est. Powers & Trusts Law §§ 1-2.6, 6-4.2, 6-4.6.......................8

## MISCELLANEOUS

14 Wright & Miller, *Federal Practice and Procedure*, § 3641 (West 2007) ...............18, 22

18A Wright & Miller, *Federal Practice and Procedure*, § 4433 (West 2007) ....................8

18 James Wm. Moore et al., *Moore's Federal Practice* §132.03 (3d ed. 2002) .............5, 12

Unif. Trust Code § 703 (2000 & Supp. I 2005) .................................17

*Validity and Effect of Plaintiff's Assignment of Claim or Part Thereof to*
    *Prevent Removal of Action from State Court to Federal District*
    *Court on Ground of Diversity of Citizenship*,
    8 A.L.R. Fed. 845 (1971)...................................................................21

*Chief Justice William H. Rehnquist's 1991 Report on the Federal Judiciary*,
    reprinted in 1992 Chicago Daily Law Bulletin, Volume 138, No. 1 ..........................23

Black's Law Dictionary (7th ed. 1999) ..............................................8

Plaintiffs Phyllis Andrews, Thomas E. Minogue, Herman H. Tarnow and Jane F. Sims respectfully submit this memorandum in support of their motion to remand this case to the Supreme Court of the State of New York, Westchester County (the "New York state court").

## Preliminary Statement

Plaintiff Phyllis Andrews is the grantor of the Phyllis Andrews Family Trust (the "Trust") and a citizen of New York.  Plaintiffs Thomas E. Minogue, Herman H. Tarnow and Jane F. Sims are Co-Trustees of the Trust and citizens of Connecticut, Florida and Maryland, respectively. Under controlling Supreme Court precedent, the Trust is considered to be a citizen of each of those three states for purposes of diversity jurisdiction.  Because Defendant Arthur Modell is a citizen of Maryland, complete diversity of citizenship is lacking between Mr. Modell and the Plaintiffs.

Mr. Modell has previously argued that the federal courts have jurisdiction over this case because Ms. Sims was fraudulently joined to defeat diversity.  His attempted removal of the case from state court in Ohio on that basis was denied, however, after the issues were fully briefed by the parties and exhaustively analyzed by United States District Judge Patricia Gaughan in a detailed thirty-two page opinion. *Minogue v. Modell*, No. 1:06CV286, 2006 WL 1704932 (N.D. Ohio Jun. 16, 2006) (*Minogue II*).  Because 28 U.S.C. § 1447(d) and the doctrine of issue preclusion each precludes this Court from reconsidering Judge Gaughan's decision, and because there is no merit to Mr. Modell's fraudulent joinder argument in any event, this case should be remanded to the New York state court, where it was properly filed and should be tried.

## Factual and Procedural Background

This is the third round of litigation between the Trust and Mr. Modell over his refusal to pay the Trust a finder's fee of over $21.5 million that was earned by Mrs. Andrews's late

1

husband Vincent when he brought Mr. Modell the opportunity to purchase the Cleveland Browns in 1961.

The first round began when Co-Trustees Thomas Callaghan and Thomas Minogue filed a Complaint in the Cuyahoga County Court of Common Pleas (the "Ohio state court") on May 23, 2003. Mr. Modell removed that case to the United States District Court for the Northern District of Ohio (the "Ohio federal court") and successfully sought transfer to Maryland, where the United States District Court for the District of Maryland (the "Maryland federal court") granted him summary judgment on the ground that the Trust lacked standing to bring its claims.[1]

Following the Maryland federal court's decision, Co-Trustees Callaghan and Minogue worked with Mrs. Andrews to cure the standing problems identified by the Maryland federal court and authorized counsel to draft a second Complaint. However, Mr. Callaghan, who was diagnosed with cancer during the first round of litigation, decided to step down if a suitable replacement Trustee could be located.

Ultimately, Mr. Callaghan and Mr. Minogue chose to appoint two new Co-Trustees in place of Mr. Callaghan to avoid any possibility of a future deadlock in the administration of the Trust. They also decided that it would be in the Trust's best interests to appoint as Co-Trustees practicing lawyers who have an understanding of the respective probate laws of Maryland and Florida, the two states in which Mr. Modell's estate likely will be probated. As Plaintiffs have

---

[1]    The Maryland federal court noted that its standing decision deprived it of subject matter jurisdiction over the remaining issues in the case, but it nevertheless proceeded to address those issues "in the interests of efficiency." *See Minogue I*, 384 F. Supp. 2d 821, 825 n.8 (D. Md. 2005). As Plaintiffs have previously noted, *see* Nousek Decl., Exhibit 1 (Memorandum in Support of Plaintiffs' Motion for Reconsideration, filed in *Minogue I* on August 8, 2005), they believe that the Maryland federal court misapplied Ohio law when it concluded that the initial Co-Trustees' reliance on the doctrine of prevention must necessarily fail. Plaintiffs also believe that, due to the Maryland federal court's lack of jurisdiction, its discussion of the doctrine of prevention is *dicta* at best.

noted before, Mr. Modell has engaged in extensive estate planning and financial restructuring through which he has apparently sought to reduce the value of his estate, and potentially make it judgment-proof, by transferring substantial portions of his assets to other members of his family. *See* Nousek Decl., Exhibit 3 (Plaintiffs' Motion for a Preliminary Injunction, filed in *Minogue II* on December 30, 2005). With their concerns about the effect of this conduct on the Trust at the fore, Mr. Callaghan and Mr. Minogue appointed Mr. Tarnow and Ms. Sims as Co-Trustees.

On December 30, 2005, Mr. Minogue and the two new Co-Trustees filed a second Complaint – substantively identical to the first Complaint – in the Ohio state court. Mr. Modell once again removed the case to the Ohio federal court, this time arguing that Ms. Sims had been fraudulently joined as a Co-Trustee to destroy diversity. After considering a full round of briefing in which the parties submitted over three hundred pages of briefs and exhibits, United States District Judge Patricia Gaughan granted Plaintiffs' motion to remand in a thirty-two page opinion issued on June 16, 2006. *Minogue II*, 2006 WL 1704932. Judge Gaughan concluded that remand was compelled by *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S. Ct. 84 (1931), which precluded the Court from "speculating [on] the motive for Sims's appointment." *Id.* at *16. Nevertheless, she noted the possibility that an examination of the Co-Trustees' motivations for that appointment could also support remand. *Id.* at *16 n.21.

Following remand, Mr. Modell moved to dismiss the case on *forum non conveniens* grounds, arguing that Maryland was a more appropriate forum than Ohio. The Ohio state court granted Mr. Modell's motion and Plaintiffs appealed.[2] It soon became apparent that Plaintiffs'

---

[2] Plaintiffs respectfully submit that the Ohio state court's dismissal on *forum non conveniens* grounds was in error. In any event, the Ohio state court was not asked to determine, and it made no determination, as to whether New York is a more appropriate forum than Maryland. Plaintiffs maintain that, apart from Ohio, New York is the most appropriate forum for this dispute.

appeal might not be decided by the Ohio Supreme Court quickly enough for Plaintiffs to respond

to an adverse ruling by re-filing the case in the courts of another state before the running of the

limitations period, which was not stayed by the Ohio state court's dismissal.[3]  To avoid being

time-barred, the Co-Trustees withdrew their appeal and authorized counsel to file a new

Complaint in New York state court.  The Co-Trustees also agreed to Mrs. Andrews's request to

join the litigation as a plaintiff.

On March 13, 2007, Mrs. Andrews and the Co-Trustees filed the present Complaint –

which is substantively identical to the first and second Complaints – in New York state court.

Mr. Modell removed the case to this Court, where he argues that Judge Gaughan's remand

decision was in error and should in effect be reversed.

There are at least five independently sufficient reasons why this case must be remanded:

First, 28 U.S.C. § 1447(d) dictates that "[a]n order remanding a case to the State court

from which it was removed is not reviewable on appeal *or otherwise. . . ." Id.* (emphasis added).

The statute's plain language prevents one District Court from reviewing the remand decision of

another.

Second, although a remand order may not be reviewed on appeal (or, perhaps to some

degree, for that very reason), such an order has issue preclusive effect: "As between two federal

district courts, the inability to appeal from the order of remand does not permit the issue actually

---

[3]   The statute of limitations on Plaintiffs' claim for violation of the common law doctrine of
prevention arguably ran on April 8, 2007, three years from the date that Messrs. Modell and
Biscotti signed the agreements that provided for "Nevermore", an LLC in which Mr. Modell
owns an indirect interest, to retain a one-percent interest in the Ravens.  To date, the Ohio
Supreme Court has still not announced its decision in the consolidated appeals in connection
with which Plaintiffs requested that their discretionary appeal be considered.  *See National City
Commercial Capital Corp. v. AAAA At Your Service Inc.*, 843 N.E.2d 793 (Ohio Mar. 8, 2006)
(certifying conflict).

litigated and determined in one federal court to be relitigated in [a] second action." 18 James

Wm. Moore et al., Moore's Federal Practice §132.03[4][k][iv] (3d ed. 2002).

<u>Third</u>, there is no substantive difference between controlling precedent in the Second and

Sixth Circuits that would afford this Court a basis for reaching a different conclusion than that

reached by the Ohio federal court.

<u>Fourth</u>, the Ohio federal court's decision was correct. Even if the new Co-Trustees were

chosen solely to defeat diversity – and not for other legitimate reasons having nothing to do with

their citizenship – remand was and is required. Neither case law nor statute prohibits the joinder

of a non-diverse plaintiff to avoid federal jurisdiction over state law claims. And real parties in

interest may be joined even where the sole factor motivating joinder is a desire to destroy

diversity jurisdiction. Mr. Modell's effort to distinguish the facts of this case from those in

*Mecom v. Fitzsimmons Drilling Co.* does not undermine these essential points.[4]

---

[4]   Judge Gaughan did not base her holding on a mistaken belief that the facts of this case are on
all fours with the facts of *Mecom*. Rather, she stated that "[t]he issue is whether the
circumstances justify a departure from the rule of *Mecom*." *Minogue II*, 2006 WL 1704932, at
*13. She concluded that they did not.

Mr. Modell complains that Judge Gaughan acted inappropriately in relying on the Supreme
Court's opinion in *Mecom* because it "was cited only in passing by both sides and was not
addressed at any length during the briefing on the Trust's motion to remand" and because the
court "never held a hearing or otherwise expressed its views regarding the applicability of that
case [*Mecom*] before entering its (unappealable) opinion remanding the case." Notice of
Removal at 9 & n.6. Not only is this contention factually inaccurate, as Plaintiffs discussed the
facts and holding of *Mecom* in both an entire page and a lengthy footnote of Plaintiffs' fifteen
page Memorandum in Support of Their Motion to Remand This Case to The Cuyahoga County
Court of Common Pleas, *see* Nousek Decl., Exhibit 2 at 12-13 & n.9, but Mr. Modell does not
cite and Plaintiffs are not aware of any law requiring a court to hold a hearing or express its
views regarding the applicability of a particular case prior to issuing an opinion. *See, e.g., Hilow
v. Rome City Sch. Dist.*, No. 91-cv-567, 1994 WL 328625, at *4 (N.D.N.Y. June 29, 1994)
(adopting reasoning of case not cited by either party, but "uncovered" in court's independent
research). That Mr. Modell failed to address *Mecom* the first time around does not entitle him to
another bite at the apple.

And <u>fifth</u>, the facts support remand for a compelling reason that was noted, but not relied upon, by the Ohio federal court.  In short, Mr. Tarnow and Ms. Sims were chosen and appointed for legitimate reasons, including reasons other than their citizenship.  Accordingly, there is no merit to Mr. Modell's assertion that they were joined fraudulently, solely to divest the federal courts of subject matter jurisdiction.

<u>**Argument**</u>

**I.    IT WOULD BE ERROR FOR THIS COURT TO RECONSIDER THE OHIO FEDERAL COURT'S REMAND ORDER.**

**A.    28 U.S.C. § 1447(d) PRECLUDES THIS COURT FROM REVIEWING THE OHIO FEDERAL COURT'S REMAND ORDER.**

28 U.S.C. § 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal *or otherwise. . . .*" *Id.* (emphasis added).[5]  The Supreme Court has deemed section 1447(d) to be linked to section 1447(c).  *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127, 116 S. Ct. 494, 497 (1995) ("[O]nly remands based on grounds specified in section 1447(c) are immune from review under section 1477(d).").  Because the Ohio federal court granted remand here pursuant to section 1447(c), *Minogue II*, 2006 WL 1704932, at *16, its order is governed by section 1447(d).

Courts have concluded that section 1447(d) precludes review of section 1447(c) remand orders in a variety of non-appellate contexts analogous to the one in which it arises here.  According to the Second Circuit, the language of section 1447(d) "has been *universally construed* to preclude not only appellate review but also reconsideration by the district court."

---

[5]    In addition to precluding appellate review, the language of section 1447(d) precludes the appellate courts from considering a motion to stay the remand order of a District Court.  *Volvo of America Corp. v. Schwarzer*, 429 U.S. 1331, 1331-33, 97 S. Ct. 284, 284-85 (1976).

*Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 311 (2d Cir. 2005) (emphasis added) (citing cases

from the 1st, 3d, 4th, 5th and 9th Circuits, as well as S.D.N.Y.):

> We agree with the district court here, and with our sister circuits, that the 'or
> otherwise' language of section 1447(d) *bars district courts from reconsidering*
> *orders remanding cases on section 1447(c) grounds* ... Section 1447(d)
> establishes that once a section 1447(c) remand order has been mailed to the state
> court pursuant to the latter section, federal jurisdiction is at an end.

*Id.* at 312 (emphasis added).

In addition to precluding a District Court from entertaining a motion to reconsider its own

remand order, the "or otherwise" language of section 1447(d) precludes it from entertaining a

motion to vacate that order. *Seedman v. United States District Court for the Central District of*

*California*, 837 F.2d 413, 414 (9th Cir. 1988). It also prevents one District Court from

entertaining a collateral attack on the remand order of another District Court in the form of a

second suit seeking to enjoin state proceedings following remand. *New Orleans Public Service,*

*Inc. v. Majoue*, 802 F. 2d 166 (5th Cir. 1986). There is no principled reason why the "or

otherwise" language of section 1447(d) should not also prevent one District Court from

entertaining a collateral attack on the remand order of another District Court in the form of a

renewed notice of removal that alleges no intervening change in the essential jurisdictional facts.

**B.    A REMAND ORDER HAS ISSUE PRECLUSIVE EFFECT IN A**
**LATER LITIGATION SUCH AS THIS ONE BETWEEN THE**
**SAME PARTIES AND THEIR PRIVIES.**

The doctrine of issue preclusion applies to prevent any attempt to relitigate in a

subsequent suit between the same parties or their privies "a right, question or fact distinctly put

in issue and directly determined by a court of competent jurisdiction" in a prior suit. *Southern*

*Pacific R.R. v. U.S.*, 168 U.S. 1, 48-49, 18 S. Ct. 18, 27 (1897).[6]  Issue preclusion can apply

where appellate review is unavailable.  *See* 18A Wright & Miller, Federal Practice and

Procedure, § 4433, ¶21 & n.49, 50 (West 2007) (identifying judgments in cases in the Supreme

Court's original jurisdiction and judgments in federal circuit court cases in an amount too small

to be reviewed by writ of error as two examples of non-appealable judgments from which "issue

preclusion properly occurs").

The Circuit Courts are split over whether remand orders pursuant to 28 U.S.C. § 1447(c)

have issue preclusive effect on subsequent federal courts to address the same question.  The Fifth

and Eighth Circuits hold that issue preclusion is appropriate.  *See Painters Local Union No. 109*

*Pension Fund v. Smith Barney Inc.*, 113 F.3d 590 (8th Cir. 1998), *cert. denied*, 524 U.S. 915, 118

S. Ct. 2297 (1998); *Frith v. Blaxon-Flexible Flyer, Inc.*, 512 F.2d 899 (5th Cir. 1975); *Napper v.*

*Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636-637 (5th Cir. 1974), *cert.*

*denied*, 423 U.S. 837, 96 S. Ct. 65 (1974).  The Seventh and Sixth Circuits disagree.  *See Health*

*Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 708-09 (7th Cir. 1999) (remand order

---

[6]  A "privy" is "a person who is in privity with another"; that is, each has "a legally recognized
interest in the same subject matter (such as a transaction, proceeding, or piece of property)."
Black's Law Dictionary 1218, 1217 (7th ed. 1999).  Pursuant to Article VI, Paragraph Y of the
Trust Agreement for the Phyllis Andrews Family Trust, *see* Nousek Decl., Exhibit 4 (Declaration
of Thomas E. Minogue dated March 14, 2006 (hereinafter, "Minogue Decl."), at Exhibit A),
Mrs. Andrews retains the absolute right at any time to reacquire the Letter Agreement from the
Trust by substituting other property of equal value.  New York State law recognizes a right of
reacquisition as a future estate, *see* N.Y. Est. Powers & Trusts Law § 6-4.6, which is an interest
in property that will "commence in possession at a future time."  *Id.* at §§ 1-2.6, 6-4.2; *see also*
*Baker v. Latham Sparrowbush Assoc.*, 808 F. Supp. 992, 1008 (S.D.N.Y. 1992) (under New
York law, a right of reacquisition is a future interest that is deemed vested under the common
law).  Because Mrs. Andrews' right of reacquisition is a legally recognized interest in the Trust,
she is a privy of the Co-Trustees who obtained remand in *Minogue II*.  Thus, this litigation
qualifies as a subsequent suit between the same parties or their privies.

not *res judicata*); *see also Century Business Services, Inc. v. Bryant*, 69 Fed.Appx. 306, 312 n.4

(6th Cir. 2003) (following *Health Cost* in a case not recommended for full-text publication).[7]

    In the leading case to hold that remand orders pursuant to 28 U.S.C. § 1447(c) have issue

preclusive effect, *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, plaintiffs were

citizens of Arkansas who sued a Texas law partnership and its members for malpractice in

Arkansas state court. *Napper*, 500 F.2d at 635. Defendants removed, asserting diversity

jurisdiction, and filed a motion to quash plaintiffs' attempted service of process under Arkansas's

"long-arm" statute. *Id.* Plaintiffs filed a second action in federal court in Texas, substantively

identical to the first, except with the following explanation and request: "Plaintiffs are filing this

suit as a precaution against having their cause dismissed after the running of the applicable

limitations period. Plaintiffs request[] that the Court withhold proceedings hereon pending a

ruling by the federal courts of Arkansas upon the jurisdictional question." *Id.* Plaintiffs alleged

diversity jurisdiction in the second action: "Notwithstanding the fact that plaintiffs, Jim L.

---

[7]    The Seventh Circuit panel in *Health Cost,* the leading case of those in disagreement with *Napper*, cites three cases in support of its holding that a prior remand order on jurisdictional grounds "doesn't conclude the issue whether [a] district court has jurisdiction over [a] new and materially identical suit." None of those cases directly supports the *Health Cost* holding. In *Nutter v. Monongahela Power Co.*, the Fourth Circuit panel held that "jurisdictional findings . . . incident to an order of remand have no preclusive effect" on a *state* court, 4 F.3d 319, 322 (4th Cir. 1993); it did not address whether such findings or the resulting remand order have preclusive effect on a second federal court's consideration of the same jurisdictional issues. Similarly, rather than holding that a remand order lacked preclusive effect, the *Southern Leasing* court merely permitted the defendant to re-litigate in state court a service of process issue determined incident to a federal court's remand order, explaining that the federal court, having remanded for lack of federal jurisdiction, lacked jurisdiction for any substantive ruling on the service issue. *Southern Leasing Corp. v. Tufts*, 804 P.2d 1321, 1323 (Ariz. Ct. App. 1991). The *Winters v. Diamond Shamrock Chemical Co.* court ruled on "the reach of the offensive collateral estoppel doctrine," not issue preclusion, when it upheld a district court's discretionary refusal to estop defendants from re-litigating jurisdiction against an entirely different plaintiff. 149 F.3d 387, 389, 395-96 (5th Cir. 1998). Indeed, the *Winters* court explicitly cautioned that *Napper* and *Johnson Street Steel Rail Co. v. William Wharton*, 152 U.S. 252, 14 S. Ct. 608 (1894), govern in cases of direct estoppel, as presented here and in *Health Cost*. *Id.* at 396 & n.11.

Napper and wife, Jo Ann Napper, own homestead property in Texas, they have established
sufficient residence in the State of Arkansas to entitle them to invoke the diversity jurisdiction of
the United States District Court for the Northern District of Texas." *Id.*

Relying on plaintiffs' admitted ownership of homestead property in Texas, defendants
moved to dismiss the second action for want of diversity jurisdiction. *Id.* More than a year later,
defendants moved to dismiss the first action on the same basis. *Id.* The federal judge in the first
action remanded it to Arkansas state court, which quashed the "long-arm" service of process and
thus did not reach the merits. *Id.* at 636. Plaintiffs then filed an amended complaint in the
second action, continuing to allege diversity jurisdiction and adding a federal wire fraud claim.
*Id.* The Texas district court held that there was no private right of action for wire fraud and that
it was precluded from considering plaintiffs' remaining claims because plaintiffs had failed to
prove Arkansas citizenship subsequent to the date of the removal addressed by the Arkansas
district court's remand order. *Id.*

The Fifth Circuit affirmed the Texas district court's decision, holding that the prior
remand order of the Arkansas district court must be given issue preclusive effect:

> Estoppel by judgment precludes the plaintiffs from successfully asserting
> diversity jurisdiction. Estoppel by judgment will not permit matters actually
> litigated and determined between the same parties in one proceeding to be
> relitigated. . . . As between the two federal district courts, the inability to appeal
> from the order of remand does not permit the issue actually litigated and
> determined in the federal court in Arkansas to be relitigated in the second action.

*Id.* at 636-37 (internal citations omitted).

The Second Circuit has explicitly agreed with and relied upon the *Napper* court's holding
that estoppel by judgment applies to preclude the relitigation by the same parties and their privies
of certain unappealable orders – including remand orders. *See Winters v. Lavine*, 574 F.2d 46,
62 (2d Cir. 1978) (citing *Napper*) ("Even if there were no opportunity whatsoever for Winters to

appeal the Appellate Division's ruling [in an Article 78 proceeding for denial of Medicaid benefits], that decision would still retain preclusive effect, *for the extent of preclusion produced by a prior judicial determination of material and essential issues is not affected by the fact that the losing party could not appeal that determination to a higher court.*") (emphasis added).  The *Napper* holding has also been cited with approval by one court in the Southern District of New York.  *Sullivan v. American Airlines, Inc.*, 613 F. Supp. 226, 231 (S.D.N.Y. 1985) (citing *Napper*) ("There is no hard and fast rule requiring the right to appeal prior to application of the preclusion doctrines.").[8]

In *Painters Local Union No. 109 Pension Fund*, 113 F.3d 590 (8th Cir. 1998), *cert. denied*, 524 U.S. 915, 118 S. Ct. 2297 (1998), the Eighth Circuit also concluded that remand orders should be given issue preclusive effect.  In that case, the appellate court held that a district court's remand on the ground that a removed case was not governed by ERISA precluded the plaintiffs from filing a second, identical case in the same district court alleging federal question jurisdiction on the same basis:

> Since the original action was remanded under § 1447(c), that decision can not be reviewed. The present action has the *same issues and the same parties* as the original action. This makes it a collateral attack on the original remand order. It is improper for the Fund to do collaterally that which it could not do directly.

*Id.* at 591 (emphasis added).

---

[8]  Although a Second Circuit panel recently speculated that it is "highly unlikely" that a non-appealable remand order would have preclusive effect, *Covanta Onondaga Ltd. Partnership v. Onondaga Resource Recovery Agency*, 318 F.3d 392, 397 (2d Cir. 2003) (citing *Health Cost*), that speculation occurred in *dicta* and has no binding effect on this Court: "We emphasize the limited scope of our decision.  We are not purporting to determine whether the District Court's remand decision has collateral estoppel or *res judicata* effect. . . ." *Id.* at 401.

Finally, no less of an authority than Moore's Federal Practice has concluded that remand

orders which are not reviewable pursuant to 28 U.S.C. § 1447(d) must be given issue preclusive

effect:

> When a case is removed from state to federal court, and then remanded back to
> the state court for want of subject matter jurisdiction, the decision to remand is
> not subject to appeal. In this situation, it might be argued that the determination of
> the jurisdictional issue should not be given issue preclusive effect in a subsequent
> attempt to invoke federal jurisdiction on the ground that the determination of the
> issue was not subject to appeal. Authority is to the contrary, however. *As between
> two federal district courts, the inability to appeal from the order of remand does
> not permit the issue actually determined in one federal court to be relitigated in
> the second action.*

18 James Wm. Moore et al., Moore's Federal Practice §132.03[4][k][iv] (3d ed. 2002) (citing

*Napper*) (emphasis added).

Issue preclusion requires this Court to remand this matter to the New York state court on

the basis of Judge Gaughan's earlier order.[9]  In its essentials, this case is no different than the

foregoing appellate court cases and a number of other cases all holding that issue preclusive

effect must be given to remand orders pursuant to 28 U.S.C. § 1447(c).  *See, e.g., Colorado v.

Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282,  1285-86 (D. Col. 2002) (remand order in prior

action collaterally estopped business from relitigating matter in subsequent suit involving

different plaintiff, even though order was not appealable, where both cases made identical

allegations and preemption issue was fully adjudicated in prior action); *City Capital Resources,*

---

[9]   Principles of comity and judicial deference also counsel against reconsideration of the Ohio
federal court's remand order. *See Feller v. Brock*, 802 F.2d 722, 728 (4th Cir. 1986) ("Prudence
requires that whenever possible, coordinate courts should avoid issuing conflicting orders.");
*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast District of
the ILA; AFL-CIO, etc.*, 751 F.2d 721, 728-729 (5th Cir. 1985) (citations omitted) ("The federal
courts long have recognized that the principle of comity requires federal district courts – courts
of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each
other's affairs. . . . .  The concern manifestly is to avoid the waste of duplication, to avoid rulings
which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues
that call for a uniform result.").

*Inc. v. White*, 29 F. Supp. 2d 334 (S.D. W.Va. 1998) (direct estoppel prevented district court from reconsidering or relitigating California court's ruling on remand that one corporate plaintiff was a California citizen where ruling of California court was made in suit involving essentially same parties, same transactions and occurrences, the same operative facts, and the same claims and counterclaims); *Mertan v. E.R. Squibb & Sons, Inc.*, 581 F. Supp. 751, 753 (C.D. Cal. 1980) (order remanding action to state court on ground of lack of diversity jurisdiction was entitled to collateral estoppel effect in subsequent removal action where identical issues and identical parties were involved).

## II.    THE OHIO FEDERAL COURT'S DECISION WAS CORRECT IN ANY EVENT.

Even if this Court determines that it can appropriately reconsider the Ohio federal court's remand order, it should remand this case. Mr. Modell has not and cannot identify any substantive difference between controlling precedent in the Second and Sixth Circuits that would afford this Court a basis for reaching a different conclusion than that reached by the Ohio federal court.

### A.    COMPLETE DIVERSITY MUST EXIST FOR THIS COURT TO EXERCISE JURISDICTION.

Absent a federal question, a federal court may not exercise jurisdiction over a controversy unless complete diversity exists between the parties. *See K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61 F.3d 123, 130 (2d Cir. 1995). 28 U.S.C. § 1447(c) requires that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. *In re: WTC Disaster Site*, 414 F.3d 352, 363 (2d Cir. 2005). It is "clear that, at least since *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), the federal courts have followed the complete diversity rule, that 'diversity jurisdiction does not

exist unless *each* defendant is a citizen of a different State from *each* plaintiff.'" *Lloyds Bank PLC v. Norkin*, 817 F. Supp. 414, 417 (S.D.N.Y. 1993) (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S. Ct. 2396, 2402 (1978)) (emphasis in original).

### B.     FOR DIVERSITY PURPOSES, THE CITIZENSHIP OF THE TRUST IS THAT OF ITS THREE CO-TRUSTEES.

For purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of its trustees where those trustees are not "'naked trustees' who act as 'mere conduits' for a remedy flowing to others," but where "[t]hey have legal title; they manage the assets; [and] they control the litigation." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465, 100 S. Ct. 1779, 1784 (1980). In such circumstances, the trustees are "real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 465-66, 100 S. Ct. at 1784.[10]

Rule 17(a) of the Federal Rules of Civil Procedure explicitly states that trustees of express trusts are real parties in interest. *See* Fed. R. Civ. P. 17(a) ("An executor, administrator, guardian, bailee, trustee of an express trust . . . or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought.").

---

[10]   "Where a trustee is a party to an action in a federal court brought under the diverse citizenship clause of the federal constitution, the citizenship of the trustee, and not that of the beneficiaries under the trust, determines the jurisdiction." *Coal Co. v. Blatchford*, 78 U.S. 172, 173, 20 L.Ed. 179 (1870); *Navarro Sav. Ass'n*, 446 U.S. at 465, 100 S. Ct. at 1782 ("As early as 1808, this Court stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship."); *see, e.g., Wells Fargo Bank NW., N.A. v. Taca Int'l Airlines, S.A.*, 314 F. Supp. 2d 195, 199-200 (S.D.N.Y. 2003) (determining jurisdiction on basis of trustee's citizenship).

The record before this Court demonstrates that, as *Navarro* requires, the Co-Trustees of the Phyllis Andrews Family Trust have legal title to the Trust assets, manage those assets and control the Modell litigation:

- Pursuant to the Trust Agreement for the Phyllis Andrews Family Trust, *see* Nousek Decl., Exhibit 4 (Minogue Decl., Exhibit A), the Co-Trustees have "full power to manage and control the trust and to sue on its behalf," *see Navarro*, 446 U.S. at 460, 100 S. Ct. at 1781, as did the respondent trustees in *Navarro*.

- As Mr. Minogue testified in *Minogue I*, the Co-Trustees "conferred and concurred" to the filing of the Complaint in that matter, *see* Minogue Decl., Exhibit C (Excerpts from the Deposition of Thomas E. Minogue in *Minogue I*), at 29:24-25, approved the payment of legal fees, *see id.* at 55:21-22, and were empowered "as fiduciaries to take all reasonable steps for the protection of the trust property including but not limited to the prosecution of litigation," *see id.* at 66:13-17.

- Mr. Minogue's declaration demonstrates that the current Co-Trustees, who also derive their authority from the Trust Agreement for the Phyllis Andrews Family Trust, "are active trustees whose control over the assets held in their names is real and substantial," *see Navarro*, 446 U.S. at 465, 100 S. Ct. at 1784, as were the respondent trustees in *Navarro*. For example, the current Co-Trustees reviewed and approved the Complaint and Motion for Preliminary Injunction in *Minogue II* and the Complaint in this matter before those documents were filed, and they have also reviewed and approved all accrued attorney and expert fees. As Mr. Minogue's declaration states, had the current Co-Trustees not approved the Complaint and Motion for Preliminary Injunction in *Minogue II,* those documents would not have been filed. *See* Minogue Decl. at 4, ¶ 15.

Because the Co-Trustees of the Phyllis Andrews Family Trust have legal title to the Trust assets, manage those assets and control the Modell litigation, *see Navarro Sav. Ass'n*, 446 U.S. at 465, 100 S. Ct. at 1784, the Co-Trustees are real parties to the controversy and the Trust's citizenship is determined by their citizenship.[11]

---

[11] Indeed, in the Notice of Removal he filed in *Minogue I*, Mr. Modell conceded that the citizenship of the Trust cannot be determined without considering the citizenship of its Trustees: "At the time the Complaint was filed, and at the date of Removal, the parties here were citizens of different states. There is complete diversity of citizenship. According to the Complaint,

**C.    CO-TRUSTEES TARNOW AND SIMS WERE APPOINTED FOR LEGITIMATE REASONS OTHER THAN THEIR CITIZENSHIP, NOT FRAUDULENTLY AND IMPROPERLY AS MR. MODELL ASSERTS.**

There is no merit to Mr. Modell's assertion that Co-Trustees Herman Tarnow and Jane Sims were joined fraudulently, solely for the purpose of attempting to divest the federal courts of subject matter jurisdiction.  They were chosen and appointed for a number of legitimate reasons, including several reasons other than their citizenship.  First, Thomas Callaghan was required to resign as a Co-Trustee due to serious health issues.  Second, although Mr. Callaghan and Mr. Minogue have never materially disagreed over the management of the Trust, both decided that Mr. Callaghan should be replaced by two Co-Trustees rather than one to avoid any possibility of future deadlocks in the administration of the Trust.  And third, due to Mr. Modell's extensive estate planning efforts and out of concern that those efforts are designed to make his estate judgment-proof, Mr. Callaghan and Mr. Minogue agreed that it would be in the Trust's best interests to appoint as Co-Trustees attorneys such as Mr. Tarnow and Ms. Sims who have an understanding of the respective probate laws of the two states in which Mr. Modell's estate will likely be probated.  Although their appointment had the additional effect of defeating diversity, Mr. Tarnow and Ms. Sims were appointed for the foregoing valid reasons having nothing to do with that outcome.

While *Minogue I* was pending, Co-Trustee and plaintiff Thomas O. Callaghan was diagnosed with cancer.  *See* Minogue Decl. at 2, ¶ 6.  After the Maryland District Court entered summary judgment for Mr. Modell in *Minogue I* on standing grounds, Co-Trustees Minogue and

---

Plaintiff Thomas Minogue is a citizen of Connecticut and Plaintiff Thomas Callaghan is a citizen of Ohio.  Both Plaintiffs are trustees of a trust created in New York.  Defendant, Arthur Modell, is a citizen of Maryland.  None of these parties share citizenship, and, therefore, the first requirement of diversity jurisdiction is met."  *See* Minogue Decl., Exhibit D (*Minogue I* Notice of Removal) at 3, ¶ 5.

Callaghan determined that the Trust should cure the standing problem identified by the court and continue to press its claims against Mr. Modell for the finder's fee owed to Mr. Andrews, its predecessor-in-interest. *See id.* at 2, ¶ 8. However, Mr. Callaghan decided that due to his health problems, it would not be in the best interests of the Trust or himself and his family for him to continue as a Co-Trustee. Accordingly, he told Mr. Minogue that he intended to resign as Co-Trustee after an appropriate replacement Co-Trustee could be located and appointed. *See id.* at 3, ¶ 10.

Although Mr. Callaghan and Mr. Minogue had never seriously disagreed over Trust-related issues, Mr. Minogue was concerned that such unanimity may not exist in the future between him and any single replacement Co-Trustee. *See id.* at 3, ¶ 11. As a consequence of discussions between them, and after consideration of advice from counsel, the Co-Trustees decided to replace Mr. Callaghan with two Co-Trustees to avoid any possibility of a deadlock in the future. *See id.*[12]

Mr. Callaghan and Mr. Minogue also decided that it would be in the Trust's best interests to appoint as Co-Trustees attorneys who have an understanding of the respective probate laws of Maryland and Florida, the two states in which Mr. Modell's estate likely will be probated. *See id.* at 3, ¶ 12. As Plaintiffs have previously noted in support of the Motion for

---

[12]  The Uniform Trust Code, drafted in 2000 by the National Conference of Commissioners on Uniform State Laws, supports the appointment of an odd number of trustees: "Cotrustees are appointed for a variety of reasons. Having multiple decision-makers serves as a safeguard against eccentricity or misconduct. Cotrustees are often appointed to gain the advantage of differing skills, perhaps a financial institution for its permanence and professional skills, and a family member to maintain a personal connection with the beneficiaries. . . . Cotrusteeship should not be called for without careful reflection. Division of responsibility among cotrustees is often confused, the accountability of any individual trustee is uncertain, obtaining consent of all trustees can be burdensome, and *unless an odd number of trustees is named deadlocks requiring court resolution can occur.*" Unif. Trust Code § 703 cmt. (2000 & Supp. I 2005) (emphasis added).

Preliminary Injunction filed in *Minogue II, see* Nousek Decl., Exhibit 3, Mr. Modell has engaged

in extensive estate planning and financial restructuring in which he has transferred substantial

portions of his assets to other members of his family, and he has refused to make any provision

to ensure that he or his estate will be able to satisfy any potential judgment in the Plaintiffs' favor

in this litigation. *See id.* In order for the Trust to be well-equipped to protect its interests in light

of Mr. Modell's sophisticated estate planning, Mr. Callaghan and Mr. Minogue selected as

replacement Co-Trustees Jane Sims, an experienced Trusts and Estates attorney with a broad

knowledge of Maryland Trust and Estates law, and Herman Tarnow, a family law practitioner

and long-time friend of the Andrews family with a solid knowledge of Florida Trust and Estates

law reinforced during his recent and successful preparations to join the Florida Bar. *See id.* at 3,

¶ 13.

>    **D.    EVEN IF CO-TRUSTEES TARNOW AND SIMS WERE**
>    **APPOINTED SOLELY TO DEFEAT DIVERSITY, REMAND**
>    **WOULD STILL BE REQUIRED.**

Even if Co-Trustees Tarnow and Sims were chosen solely to defeat diversity – and not

for other legitimate reasons that inform their appointments having nothing to do with citizenship

– remand would still be required. Neither case law or statute prohibits the joinder of a non-

diverse plaintiff to avoid federal jurisdiction over state law claims. And real parties in interest

may be joined even where the sole factor motivating joinder is a desire to destroy diversity

jurisdiction.

>    **1.    Real Parties in Interest May Be Joined Even Where the Sole**
>    **Factor Motivating Joinder Is a Desire to Destroy Diversity**
>    **Jurisdiction.**

There is no statutory prohibition on purposely attempting to avoid federal jurisdiction

over state law claims. *See* 14 Wright & Miller, *Federal Practice and Procedure,* § 3641, text

accompanying n.2 (West 2007) ("[T]here is no statute that expressly inhibits the use of devices to defeat federal jurisdiction. Section 1359 of Title 28 'expresses a policy against the *creation* of federal jurisdiction and not against its *avoidance.*'") (citing, *inter alia*, *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593 (9th Cir. 1996) (emphasis added)).

"In determining whether complete diversity exists so as to support removal," courts in the Second Circuit disregard "the presence of nominal parties with no real, or direct interest in the controversy." *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1047 (S.D.N.Y 1981):

> While this doctrine has most often been applied to the "fraudulent joinder" of defendants to defeat removal, the reasoning applies as well to the joinder of plaintiffs who lack a cognizable or direct interest in the controversy. . . . A party to an action is nominal or formal if no cause of action or claim for relief is or could be stated against him or on his behalf, as the case may be. This is determined with reference to substantive law of the state where the federal court sits.

*Id.* at 1048, n. 2; *see also Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89-90 (2d Cir. 1983); *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp.2d 471, 474 (S.D.N.Y. 2000). Here, each of the Plaintiffs has a cognizable interest in the controversy, and there is no question that Co-Trustees Tarnow and Sims have a cause of action against Mr. Modell.

Because Mr. Tarnow and Ms. Sims are real parties in interest, Mr. Modell's attacks upon the former Co-Trustees' motives for appointing them are of no moment.[13] A plaintiff is a real party in interest if "under the governing substantive law it is entitled to enforce the right asserted." *Blakeman v. Conroy*, 512 F. Supp. 325, 327 (E.D.N.Y. 1981); *see also Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v.*

---

[13] Not only are they real parties interest, but one court has held that "trustees of express trusts are *indispensable* parties, [and] *must* be joined." *Langhorne v. Capital Fire Ins. Co. of California*, 54 F. Supp. 771, 776 (D. Minn. 1944) (emphasis added).

*Schreiber*, 407 F.3d 34, 48-49 & n.7 (2d Cir. 2005) (explaining that "while the question of *in whose name* a suit must be brought is procedural, that question must be answered with reference to *substantive* state law") (emphasis in original).

Under New York law, a "trustee of an express trust . . . may sue or be sued without joining with him the person for or against whose interest the action is brought." N.Y. C.P.L.R. § 1004; *see also Henning v. Rando Mach. Corp.*, 207 A.D.2d 106, 109-110, 620 N.Y.S.2d 867, 870 (N.Y. App. Div. 1994) (trustees, rather than beneficiaries, are appropriate parties in a lawsuit, because trustees are vested with legal title to the trust property and are real parties in interest). Thus, under the governing substantive law, Co-Trustees Tarnow and Sims are real parties in interest who have the power to prosecute or defend this action to protect and preserve the trust *res*. *See In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 679 (S.D.N.Y. 1997) (trustee charged with "the duty of preserving and protecting the trust res for the beneficiaries"). Their presence as Plaintiffs requires that this case be remanded.

### 2.    The Addition of Ms. Sims and Mr. Tarnow Compares Favorably to a Valid Assignment of Claims.

Consistent with the fact that purposeful avoidance of federal jurisdiction is permissible where the added non-diverse parties are real parties in interest, courts have also allowed plaintiffs to avoid diversity jurisdiction by assigning claims to other non-diverse plaintiffs and by obtaining court-ordered appointments of non-diverse replacements for themselves.

It is well-established that a valid assignment of claims may properly destroy diversity. *See Rosecrans v. William S. Lozier, Inc.*, 142 F.2d 118, 124-25 (8th Cir. 1944) ("The motive prompting the assignment is not material and an assignment of a cause of action to the plaintiff, a citizen of the same state as the defendant, even though it be for the purpose of giving the state court exclusive jurisdiction, will not render the cause removable on the ground of diversity of

citizenship."); Jerald J. Director, Annotation, *Validity and Effect of Plaintiff's Assignment of Claim or Part Thereof to Prevent Removal of Action from State Court to Federal District Court on Ground of Diversity of Citizenship*, 8 A.L.R. FED. 845 (1971) ("Thus, with few exceptions, it has generally been held that an assignment [of] all of a plaintiff's claim or of a portion of that claim to a person who is a resident of the same state as is the defendant, is effective to prevent the defendant from removing the case from a state court to a Federal District Court on grounds of diversity of citizenship, even though the assignment was expressly made for the purpose of preventing such removal."). The Southern District of New York has in the past recognized that a valid assignment destroys diversity, even when the assignor's stated motive was to defeat removal. *See Verschell v. Fireman's Fund Ins. Co.*, 257 F.Supp. 153, 154 (S.D.N.Y. 1966) ("an assignment to defeat removal, if valid as an assignment by State law, is effective to defeat removal" (citations omitted)).

Similarly, a plaintiff may defeat diversity jurisdiction by obtaining a court-ordered appointment of a non-diverse replacement for him- or herself. For example, in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S. Ct. 84 (1931), the administratrix of an estate obtained dismissal of three successive state court actions alleging identical claims after losing remand motions in each case following removal to the federal court on diversity grounds. The administratrix then resigned and had a different, non-diverse administrator appointed with the purpose of defeating federal jurisdiction. The Supreme Court upheld remand of the fourth state court action, stating that: "the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into

21

purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it." *Id.* at 189, 52 S. Ct. at 87.[14]

### E.    MR. MODELL HAS NOT MET THE BURDEN THAT MUST BE BORN BY A PARTY WHO SEEKS REMOVAL.

When a party "removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936)); *see also Jana Master Fund, Ltd. v. J.P. Morgan Chase & Co.*, No. 06 Civ. 14333(PKC), 2007 WL 1175694, at *2 (S.D.N.Y. Apr. 19, 2007). The removal petition is to be strictly construed, and "out of respect for the limited jurisdiction of the federal courts and the rights of states," the Court "must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liab. Litig.*, Nos. 04-5974-cv(L), 04-6056-cv(CON), 2007 WL 1500338, at *10 (2d Cir. May 24, 2007) (quotations omitted). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *Cal. Pub. Employees*

---

[14]    The result in *Mecom* has been superseded by statute, but as Wright & Miller makes clear, that statutory revision only applies to estates, incompetents and infants. Specifically, in 1988 Congress amended 28 U.S.C. § 1332, reversing the long-standing rule that the citizenship of the representative in guardian or estate situations determined jurisdiction for diversity purposes. Through the new rule, Congress has mandated that for purposes of jurisdiction, the representative is deemed to be a citizen of the same state as the decedent, infant or incompetent. *See* 28 U.S.C. 1332(c). As Wright & Miller states, "[i]t should be emphasized, however, that the change in the statute only applies to the particular categories of appointments of representative parties identified in the legislation." 14 Wright & Miller, Federal Practice and Procedure, § 3641, at 159. Accordingly, the amendment does not apply to trusts, and the citizenship of a trust is still determined by reference to the citizenship of its trustees. The amendment merely revises the outcome of the *Mecom* decision by changing the focus of the federal diversity statute; it does not undermine the validity of the Court's holding that "the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship." *Mecom*, 284 U.S. at 189, 52 S. Ct. at 87.

*Retirement Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004). As Plaintiffs have shown, Mr. Modell has failed to establish that he has the right to removal, especially given that this Court must resolve all doubts against removal.

Federal policies also support remand here. Former Chief Justice Rehnquist and the Second Circuit have each remarked on the already overly-broad application of diversity jurisdiction and the unnecessary burden that it places on the federal court system. *See Chief Justice William H. Rehnquist's 1991 Report on the Federal Judiciary*, reprinted in *1992 Chicago Daily Law Bulletin, Volume 138, No. 1* (stating that "the federal court system is a resource which is both precious and exhaustible . . . . This means that we must give serious attention to curtailing some federal jurisdiction . . . . elimination of diversity jurisdiction is an idea that merits serious consideration."); *Gardner & Florence Call Cowles Found. v. Empire Inc.*, 754 F.2d 478, 482 (2d Cir. 1985) ("Given the burgeoning dockets of federal courts, we perceive no role for judicial inventiveness in expanding diversity jurisdiction where Congress has sought to limit it."); *Tobin v. Slutsky*, 506 F.2d 1097, 1098 (2d Cir. 1974) ("Once again, at a time when the federal courts of appeals have the highest case load in their history, we must, because of diversity jurisdiction, devote considerable time to deciding whether a federal district judge correctly determined a difficult question of state law.") *Modave v. Long Island Jewish Med. Ctr.*, 501 F.2d 1065, 1067 (2d Cir. 1974) ("It is unfortunate that the rights of the parties to the substantial sums at stake must be adjudicated by a court which can make only educated guesses on a close and serious issue of New York law."). Accordingly, there is no reason for this court to stretch the bounds of applicable law to find a basis to exercise its diversity jurisdiction where no such basis exists.

**Conclusion**

For the reasons stated herein and those set forth in *Minogue v. Modell*, No. 1:06CV286, 2006 WL 1704932 (N.D. Ohio Jun. 16, 2006) (*Minogue II*), Plaintiffs respectfully submit that the Court should remand this case to the Supreme Court of the State of New York, Westchester County.

Dated: Armonk, New York
       July 3, 2007

Respectfully submitted,

**BOIES, SCHILLER & FLEXNER LLP**

By: /s/ Christopher M. Green

Christopher M. Green (CG-1090)
Daniel E. Holloway (DH-5254)
Lisa M. Nousek (LN-0902)

333 Main Street
Armonk, New York 10504
(914) 749-8200

*Attorneys for Plaintiffs*

OF COUNSEL:

Neil McGinness, Esq.
McGINNESS, PAINTER & McGINNESS
Tower Press Building
1900 Superior Avenue
Suite 230
Cleveland, OH  44114
(216) 696-8440 (telephone)
(216) 696-0910 (facsimile)

24