# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS E. MINOGUE, TRUSTEE, CO-TRUSTEE OF THE PHYLLIS ANDREWS FAMILY TRUST, ET AL., | ) ) ) ) CASE NO. 1:06cv0286 |
| Plaintiffs, | ) ) |
| vs. | ) JUDGE PATRICIA GAUGHAN ) |
| ARTHUR B. MODELL | ) ) |
| Defendant. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND THIS CASE TO THE CUYAHOGA COUNTY COURT OF COMMON PLEAS**

Plaintiffs Thomas E. Minogue, Herman H. Tarnow and Jane F. Sims, Co-Trustees of the Phyllis Andrews Family Trust, hereby respectfully submit this memorandum in support of their motion to remand this case to The Cuyahoga County Court of Common Pleas.

## PRELIMINARY STATEMENT

The Plaintiffs in this case are citizens of Connecticut, Florida and Maryland, respectively. Under controlling Supreme Court precedent, the Trust they represent is considered to be a citizen of each of those three states for purposes of diversity jurisdiction. Because Defendant Arthur Modell is a citizen of Maryland, complete diversity of citizenship is lacking between Mr. Modell and the Plaintiffs. For this reason, and because there is no merit to Mr. Modell's fraudulent joinder argument, this case should be remanded to The Cuyahoga County Court of Common Pleas where it was properly filed and should be tried.[1]

---

[1] Mr. Modell accusing Plaintiffs of inappropriate litigation tactics is like the pot calling the kettle black. In January 2004, Mr. Modell filed a motion for summary judgment in the first round of this litigation that relied entirely upon the statement in his own sworn affidavit that "[i]t

This is the second round of litigation between the Phyllis Andrews Family Trust and Mr. Modell over his refusal to pay the Trust a finder's fee of over $21.5 million that was earned by Mrs. Andrews' late husband Vincent when he brought Mr. Modell the opportunity to purchase the Cleveland Browns in 1961. The first round began when Co-Trustees Thomas Callaghan and Thomas Minogue filed a Complaint in the Cuyahoga County Court of Common Pleas on May 23, 2003. Mr. Modell removed that case to this Court and successfully sought transfer to Maryland, where the Maryland district court granted him summary judgment on the ground that the Trust lacked standing to bring its claims.[2]

Following the Maryland district court's decision, Co-Trustees Callaghan and Minogue worked with Mrs. Andrews to cure the standing problems and authorized counsel to draft a new Complaint. However, Mr. Callaghan, who was diagnosed with cancer during the first round of litigation, decided to step down if a suitable replacement Trustee could be located.

---

is contemplated that in March, 2004, Mr. Bisciotti . . . will exercise an option to purchase a 50% common partnership interest in BRLP [the partnership that owned the Baltimore Ravens]. Nevermore . . . will continue to own a 1% common partnership interest in BRLP. . . . Nevermore has no intention to sell this 1% interest."

That sworn statement was later shown to be alarmingly disingenuous, if not false, when Mr. Bisciotti testified that "until the time [on April 8, 2004, when he] actually signed the agreements that provided for Mr. Modell to retain the one-percent interest, [he wasn't] actually bound to allow Mr. Modell to retain the one-percent interest." *See* Exhibit A to the Declaration of Melissa S. Kho dated March 17, 2006 (Excerpts from the Deposition of Stephen Bisciotti in *Minogue v. Modell* (hereinafter "*Minogue I*"), Civil No. CCB-03-3391 (D. Md.), at 73: 5-10).

[2] The Maryland district court noted that its standing decision deprived it of subject matter jurisdiction over the remaining issues in the case, but it nevertheless proceeded to address those issues "in the interests of efficiency." *See Minogue I*, 384 F. Supp. 2d 821, 825 n.8 (D. Md. 2005). As Plaintiffs here have noted in their Opposition to Defendant's pending Motion in the Alternative to Change Venue, they believe that the Maryland district court misapplied Ohio law when it concluded that the initial Co-Trustees' reliance on the doctrine of prevention must necessarily fail. Plaintiffs also believe that, due to the Maryland district court's lack of jurisdiction, its discussion of the Ohio doctrine of prevention is *dicta* at best.

Ultimately, Mr. Callaghan and Mr. Minogue chose to appoint two new Co-Trustees in place of Mr. Callaghan to avoid any possibility of a future deadlock in the administration of the Trust. They also decided that it would be in the Trust's best interests to appoint as Co-Trustees practicing lawyers who have an understanding of the respective probate laws of Maryland and Florida, the two states in which Mr. Modell's estate likely will be probated. (As Plaintiffs have previously noted, Mr. Modell has engaged in extensive estate planning and financial restructuring through which he has apparently sought to reduce the value of his estate, and potentially make it judgment-proof, by transferring substantial portions of his assets to other members of his family.) With these concerns at the fore, Mr. Callaghan and Mr. Minogue appointed Mr. Tarnow and Ms. Sims as Co-Trustees. Because the new Co-Trustees were chosen and appointed for legitimate reasons, including reasons other than their citizenship, there is no merit to Mr. Modell's assertion that they were joined fraudulently, solely to divest this Court of subject matter jurisdiction.

In any event, even if the new Co-Trustees were chosen solely to defeat diversity – and not for legitimate reasons having nothing to do with their citizenship – remand would still be required for two independently sufficient reasons: First, neither case law nor statute prohibits the joinder of a non-diverse plaintiff to avoid federal jurisdiction over state law claims. And second, real parties in interest may be joined even where the sole factor motivating joinder is a desire to destroy diversity jurisdiction.

## ARGUMENT

### I. COMPLETE DIVERSITY MUST EXIST FOR THIS COURT TO EXERCISE JURISDICTION.

Absent a federal question, a federal court may not exercise jurisdiction over a controversy unless complete diversity exists between the parties. *See Caudill v. N. Am. Media Corp.*, 200

F.3d 914, 916 (6th Cir. 2000); *Harris v. Ambrozic*, 2005 WL 1593921, slip op. at *1 (N.D. Ohio, July 6, 2005). 28 U.S.C. § 1447(c) requires that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. *Id.*; *Sweeney v. Nat'l Union Fire Ins. Co.*, No. 02 Civ. 3459, 2002 WL 1363502 at *2 (6th Cir. June 21, 2002). "The diversity statute has historically been interpreted to require complete diversity of citizenship . . . diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Rose v. Giamatti*, 721 F. Supp. 906, 910 (S.D. Ohio 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)) (emphasis in original).

## II. FOR DIVERSITY PURPOSES, THE CITIZENSHIP OF THE TRUST IS THAT OF ITS THREE CO-TRUSTEES.

For purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of its trustees where those trustees are not "'naked trustees' who act as 'mere conduits' for a remedy flowing to others," but where "[t]hey have legal title; they manage the assets; [and] they control the litigation." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980). In such circumstances, the trustees are "real parties to the controversy. For more than 150 years, the law has permitted trustees who meet this standard to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.*[3]

Rule 17(a) of the Federal Rules of Civil Procedure explicitly states that trustees of express trusts are real parties in interest. *See* Fed. R. Civ. P. 17(a) ("An executor, administrator,

---

[3] "Where a trustee is a party to an action in a federal court brought under the diverse citizenship clause of the federal constitution, the citizenship of the trustee, and not that of the beneficiaries under the trust, determines the jurisdiction." *Coal Co. v. Blatchford*, 78 U.S. 172, 173 (1870); *Navarro Sav. Ass'n*, 446 U.S. at 465 ("As early as 1808, this Court stated that trustees of an express trust are entitled to bring diversity actions in their own names and upon the basis of their own citizenship."); *see Smith v. Nelson*, 86 F. Supp. 2d 787, 788 (N.D. Ohio 2000) (determining jurisdiction on basis of trustees' citizenship).

guardian, bailee, trustee of an express trust . . . or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought."). And "[u]nder Ohio law, it is axiomatic that a trustee has a duty to defend the trust property." *Smith v. Nelson*, 86 F. Supp. 2d 787, 788 (N.D. Ohio 2000).

The record before this Court demonstrates that, as *Navarro* requires, the Co-Trustees of the Phyllis Andrews Family Trust have legal title to the Trust assets, manage those assets and control the Modell litigation:

- Pursuant to the Trust Agreement for the Phyllis Andrews Family Trust, *see* Exhibit A to the Declaration of Thomas E. Minogue dated March 14, 2006 (hereinafter, "Minogue Decl."), the Co-Trustees have "full power to manage and control the trust and to sue on its behalf," *see Navarro*, 446 U.S. at 460, as did the respondent trustees in *Navarro*.

- As Mr. Minogue testified in *Minogue I*, the Co-Trustees "conferred and concurred" to the filing of the Complaint in that matter, *see* Minogue Decl., Exhibit C (Excerpts from the Deposition of Thomas E. Minogue in *Minogue I*), at 29:24-25, approved the payment of legal fees, *see id.* at 55:21-22, and were empowered "as a fiduciary to take all reasonable steps for the protection of the trust property including but not limited to the prosecution of litigation," *see id.* at 66:13-17.

- Mr. Minogue's declaration demonstrates that the current Co-Trustees, who also derive their authority from the Trust Agreement for the Phyllis Andrews Family Trust, "are active trustees whose control over the assets held in their names is real and substantial," *see Navarro*, 446 U.S. at 465, as were the respondent trustees in *Navarro*. For example, the current Co-Trustees reviewed and approved the Complaint and Motion for Preliminary Injunction in this matter before those documents were filed, and they have also reviewed and approved all accrued attorney and expert fees. As Mr. Minogue's declaration states, had the current Co-Trustees not approved the Complaint and Motion for Preliminary Injunction in this matter, those documents would not have been filed. *See* Minogue Decl. at 4, ¶ 15.

Because the Co-Trustees of the Phyllis Andrews Family Trust have legal title to the Trust assets, manage those assets and control the Modell litigation, *see Navarro Sav. Ass'n*, 446 U.S. at

465, the Co-Trustees are real parties to the controversy and the Trust's citizenship is determined by their citizenship.[4]

### III. THE NEW CO-TRUSTEES WERE APPOINTED FOR LEGITIMATE REASONS, NOT FRAUDULENTLY AND IMPROPERLY AS MR. MODELL ASSERTS.

There is no merit to Mr. Modell's assertion that the new Co-Trustees, Jane Sims and Herman Tarnow, were joined fraudulently, solely for the purpose of attempting to divest this Court of subject matter jurisdiction. The new Co-Trustees were chosen and appointed for a number of legitimate reasons, including several reasons other than their citizenship. First, Thomas Callaghan was required to resign as a Co-Trustee due to serious health issues. Second, although Mr. Callaghan and Mr. Minogue have never materially disagreed over the management of the Trust, both decided that Mr. Callaghan should be replaced by two Co-Trustees rather than one to avoid any possibility of future deadlocks in the administration of the Trust. And third, due to Mr. Modell's extensive estate planning efforts and out of concern that those efforts are designed to make his estate judgment-proof, Mr. Callaghan and Mr. Minogue agreed that it would be in the Trust's best interests to appoint as Co-Trustees attorneys such as Ms. Sims and Mr. Tarnow who have an understanding of the respective probate laws of the two states in which Mr. Modell's estate will likely be probated. Although their appointment had the additional effect

---

[4] Indeed, in the removal papers he filed in *Minogue I*, Mr. Modell conceded that the citizenship of the Trust cannot be determined without considering the citizenship of its Trustees: "At the time the Complaint was filed, and at the date of Removal, the parties here were citizens of different states. There is complete diversity of citizenship. According to the Complaint, Plaintiff Thomas Minogue is a citizen of Connecticut and Plaintiff Thomas Callaghan is a citizen of Ohio. Both Plaintiffs are trustees of a trust created in New York. Defendant, Arthur Modell, is a citizen of Maryland. None of these parties share citizenship, and, therefore, the first requirement of diversity jurisdiction is met." See Minogue Decl., Exhibit D (*Minogue I* Notice of Removal) at 3, ¶ 5.

of defeating diversity, Ms. Sims and Mr. Tarnow were appointed for the foregoing valid reasons having nothing to do with that outcome.

While *Minogue I* was pending, Co-Trustee and plaintiff Thomas O. Callaghan was diagnosed with cancer. *See* Minogue Decl. at 2, ¶ 6. After the Maryland District Court entered summary judgment for Mr. Modell in *Minogue I* on standing grounds, Co-Trustees Minogue and Callaghan determined that the Trust should cure the standing problem identified by the court and continue to press its claims against Mr. Modell for the finder's fee owed to Mr. Andrews, its predecessor-in-interest. *See id.* at 2, ¶ 8. However, Mr. Callaghan decided that due to his health problems, it would not be in the best interests of the Trust or himself and his family for him to continue as a Co-Trustee. Accordingly, he told Mr. Minogue that he intended to resign as Co-Trustee after an appropriate replacement Co-Trustee could be located and appointed. *See id.* at 3, ¶ 10.

Although Mr. Callaghan and Mr. Minogue had never seriously disagreed over Trust-related issues, Mr. Minogue was concerned that such unanimity may not exist in the future between him and any single replacement Co-Trustee. *See id.* at 3, ¶ 11. As a consequence of discussions between them, and after consideration of advice from counsel, the Co-Trustees decided to replace Mr. Callaghan with two Co-Trustees to avoid any possibility of a deadlock in the future. *See id.*[5]

---

[5] The Uniform Trust Code, drafted in 2000 by the National Conference of Commissioners on Uniform State Laws, supports the appointment of an odd number of trustees: "Cotrustees are appointed for a variety of reasons. Having multiple decision-makers serves as a safeguard against eccentricity or misconduct. Cotrustees are often appointed to gain the advantage of differing skills, perhaps a financial institution for its permanence and professional skills, and a family member to maintain a personal connection with the beneficiaries. . . . Cotrusteeship should not be called for without careful reflection. Division of responsibility among cotrustees is often confused, the accountability of any individual trustee is uncertain, obtaining consent of all trustees can be burdensome, and *unless an odd number of trustees is named deadlocks requiring*

Mr. Callaghan and Mr. Minogue also decided that it would be in the Trust's best interests to appoint as Co-Trustees attorneys who have an understanding of the respective probate laws of Maryland and Florida, the two states in which Mr. Modell's estate likely will be probated. *See id.* at 3, ¶ 12. As Plaintiffs have noted in support of their Motion for a Preliminary Injunction, Mr. Modell has engaged in extensive estate planning and financial restructuring in which he has transferred substantial portions of his assets to other members of his family, and he has refused to make any provision to ensure that he or his estate will be able to satisfy any potential judgment in the Plaintiffs' favor in this litigation. *See id.* In order for the Trust to be well equipped to protect its interests in light of Mr. Modell's sophisticated estate planning, Mr. Callaghan and Mr. Minogue selected as replacement Co-Trustees Ms. Jane Sims, an experienced Trusts and Estates attorney with a broad knowledge of Maryland Trust and Estates law, and Herman Tarnow, a family law practitioner and long-time friend of the Andrews family with a solid knowledge of Florida Trust and Estates law reinforced during his recent and successful preparations to join the Florida Bar. *See id.* at 3, ¶ 13.

### IV.   EVEN IF CO-TRUSTEES SIMS AND TARNOW WERE APPOINTED SOLELY TO DEFEAT DIVERSITY, REMAND WOULD STILL BE REQUIRED.

Even if the new Co-Trustees were chosen solely to defeat diversity – and not for the legitimate reasons that inform their appointments having nothing to do with citizenship – remand would still be required for two independently sufficient reasons: First, neither case law nor statute prohibits the joinder of a non-diverse plaintiff to avoid federal jurisdiction over state law claims. And second, real parties in interest may be joined even where the sole factor motivating joinder is a desire to destroy diversity jurisdiction.

---

*court resolution can occur."* UNIF. TRUST CODE § 703 cmt. (2000 & Supp. I 2005) (emphasis added).

### A.     The Fraudulent Joinder Doctrine Does Not Apply to Plaintiffs.

"The doctrine of fraudulent joinder of a defendant, used to destroy diversity jurisdiction and prevent removal of state court action, does not extend to alleged fraudulent joinder of [a] plaintiff." 14 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3641, at Pocket Part n.49 (3d ed. 2005). Moreover, there is no statutory prohibition on purposely attempting to avoid federal jurisdiction over state law claims. *See* 14 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3641, text accompanying n.2 (3d ed. 2005) ("[T]here is no statute that expressly inhibits the use of devices to defeat federal jurisdiction. Section 1359 of Title 28 'expresses a policy against the *creation* of federal jurisdiction and not against its *avoidance*.'") (citing, *inter alia*, *Attorneys Trust v. Videotape Computer Prods., Inc.* 93 F.3d 593 (9th Cir. 1996) (emphasis added)).

In the Sixth Circuit, "[w]hen a defendant claims fraudulent joinder, the only issue is whether the plaintiff had at least a colorable cause of action in state court against the defendant." *Board of Comm'rs of Hancock County, OH v. Smith*, No. 02 Civ. 7539, 2003 WL 403176, at *1 (N.D. Ohio Jan. 24, 2003); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (same). Here, there is no question that Co-Trustees Sims and Tarnow have a colorable cause of action in state court against Mr. Modell. They are real parties in interest who have the power to prosecute or defend this action to protect and preserve the trust *res*. *Schofield v. Cleveland Trust Co.*, 78 N.E.2d 167, 173 (Ohio 1948). Indeed, "[u]nder Ohio law, it is axiomatic that a trustee," such as Ms. Sims or Mr. Tarnow, "has a duty to defend the trust property." *Smith v. Nelson*, 86 F. Supp. 2d 787, 788 (N.D. Ohio 2000).

### B. Real Parties in Interest May Be Joined Even Where the Sole Factor Motivating Joinder Is a Desire to Destroy Diversity Jurisdiction.

"[I]n cases in which the plaintiff attempts to defeat jurisdiction by the joinder of a nondiverse plaintiff, the federal courts will allow the transaction ... if that person is deemed a real party in interest under Civil Rule 17(a)." *See* 14 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3641, text accompanying n.65 (3d ed. 2005). In other words, "if the nondiverse plaintiff is a real party in interest, the fact that his joinder was motivated by a desire to defeat federal jurisdiction is not material." *Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 904 (N.D. Iowa 2000) (citing *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977) (internal quotation marks omitted).[6] *See also Davis v. Prentiss Properties Ltd.*, 66 F. Supp. 2d 1112, 1115 (C.D. Cal. 1999).[7]

As Ms. Sims and Mr. Tarnow are clearly real parties in interest, Mr. Modell's attacks upon the former Co-Trustees' motives for appointing them are of no moment. "[T]he real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." *Certain Interested Underwriters at Lloyd's, London England v. Layne*, 26 F.3d 39, 42-43 (6th Cir. 1994); *Schofield v. Cleveland Trust Co.*, 78 N.E.2d 167, 173 (1948) (stating that the real party in interest with the power to prosecute or defend an action to protect or preserve a trust *res* is the trustee of an express trust).

---

[6] The *Foslip* court further stated that "a plaintiff is not fraudulently joined unless there is no possibility that the plaintiff would be able to establish a cause of action against the defendant in state court." *Id.* (citations omitted). As all three Co-Trustees in this case are real parties in interest, and any one of them could bring an action in state court on the claims here asserted, *Foslip* serves only to bolster the Plaintiffs' contention that this case should be remanded.

[7] "[I]f a diversity-defeating claim is not frivolous, the plaintiff has the right to have it considered by the state court in which it was filed." *Davis v. Prentiss Properties*, 66 F. Supp. 2d at 1115 (claim not fraudulently joined if "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.").

Here, only the Co-Trustees are vested with the authority to pursue the legal rights of the Trust. Moreover, and as stated above, Rule 17(a) of the Federal Rules of Civil Procedure specifically states that trustees of express trusts are real parties in interest. *See* Fed. R. Civ. P. 17(a). Not only are they real parties interest, but one court has held that "trustees of express trusts are *indispensable* parties, [and] *must* be joined." *Langhorne v. Capital Fire Ins. Co. of California*, 54 F. Supp. 771, 776 (D. Minn. 1944) (emphasis added). As Co-Trustees Sims and Tarnow are each real parties in interest, they are unequivocally entitled to participate in this litigation.

The case of *UICI v. Gray*, No. 01 Civ. 0921, 2002 WL 356753 (N.D. Tex. Mar. 1, 2002), is instructive. The *Gray* court "note[d] some confusion over the proper standard to apply when a defendant contends that a *plaintiff* has been improperly joined. The fraudulent joinder doctrine more commonly addresses the improper joinder of a non-diverse defendant. The Fifth Circuit has not yet extended the doctrine to the joinder of a non-diverse plaintiff." *Id.* After considering the question, the court determined that rather than engaging in an analysis based on fraudulent joinder, it would use the real party in interest test. The court relied on WRIGHT & MILLER for the proposition that "in cases in which the plaintiff attempts to defeat jurisdiction by the joinder of a non-diverse plaintiff, the courts will allow the transaction only if that person is deemed a real party in interest under Rule 17(a)." *Id.* (quoting 14 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3641 (2d ed. 1985)). Because Ms. Sims and Mr. Tarnow are real parties in interest, their presence as Plaintiffs requires that this case be remanded.

        C.    **The Addition of Ms. Sims and Mr. Tarnow Compares Favorably to a Valid Assignment of Claims.**

Consistent with the fact that purposeful avoidance of federal jurisdiction is permissible where the added non-diverse parties are real parties in interest, courts have also allowed

plaintiffs to avoid diversity jurisdiction by assigning claims to other non-diverse plaintiffs and by obtaining court-ordered appointments of non-diverse replacements for themselves.

It is well-established that a valid assignment of claims may properly destroy diversity. *See Rosecrans v. William S. Lozier, Inc.*, 142 F.2d 118, 124-25 (8th Cir. 1944) ("The motive prompting the assignment is not material and an assignment of a cause of action to the plaintiff, a citizen of the same state as the defendant, even though it be for the purpose of giving the state court exclusive jurisdiction, will not render the cause removable on the ground of diversity of citizenship."); Jerald J. Director, Annotation, *Validity and Effect of Plaintiff's Assignment of Claim or Part Thereof to Prevent Removal of Action from State Court to Federal District Court on Ground of Diversity of Citizenship*, 8 A.L.R. FED. 845 (1971) ("Thus, with few exceptions, it has generally been held that an assignment [of] all of a plaintiff's claim or of a portion of that claim to a person who is a resident of the same state as is the defendant, is effective to prevent the defendant from removing the case from a state court to a Federal District Court on grounds of diversity of citizenship, even though the assignment was expressly made for the purpose of preventing such removal.").[8]

Similarly, a plaintiff may defeat diversity jurisdiction by obtaining a court-ordered appointment of a non-diverse replacement for him- or herself. For example, in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183 (1931), the administratrix of an estate obtained dismissal

---

[8] Mr. Modell's Notice of Removal argues that "courts should not tolerate an assignment of property or a claim to a non-diverse party where the assignment is made to defeat diversity jurisdiction," in reliance on *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990). *See* Notice of Removal at 8, ¶ 21. But the court in *Grassi* explicitly noted that the controlling precedent on this issue remains *Provident Serv. Life Assurance Soc'y v. Ford*, 114 U.S. 635 (1885), in which the Supreme Court held an assignment of a complete cause of action to defeat removal was effective to give the state court exclusive jurisdiction. *Grassi v. Ciba Geigy, Ltd.*, 894 F.2d at 184. The *Grassi* court merely declined to extend *Provident's* holding to cases of partial, rather than complete, assignments. *Id.* at 185.

of three successive state court actions alleging identical claims after losing remand motions in each case following removal to the federal court on diversity grounds. The administratrix then resigned and had a different, non-diverse administrator appointed with the purpose of defeating federal jurisdiction. The Supreme Court upheld remand of the fourth state court action, stating that: "the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it." *Id.* at 189.[9]

### V. MR. MODELL HAS NOT MET THE BURDEN THAT MUST BE BORNE BY A PARTY WHO SEEKS REMOVAL.

"It is well settled that the party seeking removal bears the burden of establishing its right thereto." *Belle v. Ross Products Div. Abbott Labs.*, 2002 WL 483535, at *2 (S.D. Ohio Mar. 13, 2002) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921)). The removal

---

[9] The result in *Mecom* has been superseded by statute, but as WRIGHT & MILLER makes clear, that statutory revision only applies to estates, incompetents and infants. Specifically, in 1988 Congress amended 28 U.S.C. § 1332, reversing the long-standing rule that the citizenship of the representative in guardian or estate situations determined jurisdiction for diversity purposes. Through the new rule, Congress has mandated that for purposes of jurisdiction, the representative is deemed to be a citizen of the same state as the decedent, infant or incompetent. *See* 28 U.S.C. 1332(c). As WRIGHT & MILLER states, "[i]t should be emphasized, however, that the change in the statute only applies to the particular categories of appointments of representative parties identified in the legislation." 14 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3641, at 159. Accordingly, the amendment does not apply to trusts, and the citizenship of a trust is still determined by reference to the citizenship of its trustees. The amendment merely revises the outcome of the *Mecom* decision by changing the focus of the federal diversity statute; it does not undermine the validity of the Court's holding that "the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship." *Mecom*, 284 U.S. at 189.

petition is to be strictly construed, with all doubts resolved against removal. *See Her Majesty The Queen v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989). This is no less true where, as here, it is the defendant, rather than the plaintiff, who seeks the federal forum. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir.1996). As Plaintiffs have shown, Mr. Modell has failed to establish that he has the right to removal, especially given that this Court must resolve all doubts against removal.

Finally, Mr. Modell's contention that "federal policies" support removal here, *see* Removal Petition at 3, is mistaken. Former Chief Justice Rehnquist and the Sixth Circuit have each remarked on the already overly-broad application of diversity jurisdiction and the unnecessary burden that it places on the federal court system. *See Chief Justice William H. Rehnquist's 1991 Report on the Federal Judiciary*, reprinted in *1992 Chicago Daily Law Bulletin, Volume 138, No. 1* (stating that "the federal court system is a resource which is both precious and exhaustible . . . . This means that we must give serious attention to curtailing some federal jurisdiction . . . . elimination of diversity jurisdiction is an idea that merits serious consideration."); *Arrow-Hart, Inc. v. Phillip Carey Co.*, 552 F.2d 711, 713 (6th Cir. 1977) (stating that "the diversity jurisdiction of federal courts is an anachronism and should be repealed"); *Schwartz v. Electronic Data Sys., Inc.*, 913 F.2d 279, 287-90 (6th Cir. 1990) (describing diversity jurisdiction as an anachronism and admonishing courts to remain mindful of the policies underlying diversity jurisdiction while recognizing the heavy caseloads and abuses that result from this form of jurisdiction). Accordingly, there is no reason for this court to stretch the bounds of applicable law to find a basis to exercise its diversity jurisdiction where no such basis exists.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully submit that the Court should remand this case to The Cuyahoga County Court of Common Pleas.

Respectfully submitted,

/s/ Daniel D. Domozick
Mark R. Koberna, Esq. (0038985)
Daniel D. Domozick, Esq. (0025040)
SONKIN & KOBERNA CO., L.P.A.
3401 Enterprise Parkway; Suite 400
Cleveland, OH 44122
(216) 514-8300 (telephone)
(216) 514-4467 (facsimile)

*Attorneys for Plaintiffs*
*Thomas E. Minogue, Herman H. Tarnow, and*
*Jane F. Sims, Co-Trustees of the Phyllis Andrews*
*Family Trust*

OF COUNSEL:

Christopher M. Green, Esq.
Jacqueline B. Friedland, Esq.
Melissa S. Kho, Esq.
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
(914) 749-8200 (telephone)
(914) 749-8300 (facsimile)

Neil McGinness, Esq. (0024824)
McGINNESS, PAINTER & McGINNESS
Tower Press Building
1900 Superior Avenue
Suite 230
Cleveland, OH 44114
(216) 696-8440 (telephone)
(216) 696-0910 (facsimile)

## CERTIFICATE OF SERVICE

A copy of the foregoing Plaintiffs' Motion to Remand and supporting memorandum, declarations and exhibits was filed electronically on March 17, 2006. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Daniel D. Domozick
Attorney for Plaintiffs