# EXHIBIT
# E

STATE OF NEW YORK
SURROGATE'S COURT
COUNTY OF NASSAU

| | |
|---|---|
| In the Matter of the Settlement of the Account of Proceedings of **Philomena G. Andrews** as Executrix of the Estate of Vincent S. Andrews, Deceased | ) <br> ) <br> ) **RECEIPT, RELEASE,** <br> ) **REFUNDING AGREEMENT,** <br> ) **INDEMNIFICATION** <br> ) **AGREEMENT AND WAIVER** <br> ) **OF CITATION** <br> ) <br> ) **FILE NO.: 138197** <br> ) |

1.    WHEREAS, Vincent Andrews died a resident of the County of Nassau,

State of New York, on January 2, 1969, leaving a Last Will and Testament dated July 22,

1955, which was duly admitted to probate by the Surrogate's Court of Nassau County on

February 10, 1969; and

2.    WHEREAS, Letters Testamentary were granted by said Court on February

10, 1969 to Philomena G. Andrews, as Executrix of said will; and

3.    WHEREAS, paragraph "THIRD" of said will provides as follows: "I give

all my property, real and personal, owned by me at my death, to my wife, Philomena

Andrews, if she survives me;" and

4.    WHEREAS, the personal property owned by Vincent Andrews at his

death included all of Mr. Andrews' interest in an agreement with Arthur B. Modell dated

February 4, 1963 (hereinafter, the "Letter Agreement"), which was listed on "Schedule

A" of the "Accounting of Philomena Andrews as Executrix of the Estate of Vincent

Andrews," dated April 30, 1971, as "Contract with Arthur Modell", and a copy of which

is appended hereto as Exhibit A; and

      5.      WHEREAS, in the Letter Agreement, Arthur Modell (hereinafter, "Modell") promised to pay Vincent Andrews or his estate a finder's fee amounting to 5% of Modell's "net gain" from either the liquidation of the Cleveland Browns or the divestment of all of Modell's "stock interest" in the team; and

      6.      WHEREAS, on December 27, 1999, Philomena Andrews, who is also known as Phyllis Andrews, created the Phyllis Andrews Family Trust (hereinafter, the "Trust") by entering into the Trust Agreement appended hereto as Exhibit B; and

      7.      WHEREAS, on or before January 27, 2000, Phyllis Andrews, as Executrix of the Estate of Vincent Andrews, distributed the Letter Agreement to herself, as sole legatee of the Estate of Vincent Andrews; and

      6.      WHEREAS, on January 27, 2000, Phyllis Andrews (i) represented and warranted in a written Purchase Agreement, a copy of which is appended hereto as Exhibit C (the "Purchase Agreement"), that she had taken "all necessary action required to have been taken by or on [her] behalf . . . by applicable law" to authorize her as an individual to sell the Letter Agreement to the Trust; (ii) sold all of her interest in the Letter Agreement to the Trust for $200,000.00 pursuant to the Purchase Agreement; and (iii) executed an Assignment of Rights and Claims, a copy of which is appended hereto as Exhibit D (the "Assignment of Rights and Claims"), in which she assigned to the Trust all rights and claims to which she was entitled in connection with the Letter Agreement; and

      8.      WHEREAS, on May 23, 2003, after Modell repeatedly refused to provide relevant information requested by the Trust despite numerous press reports on the

planned sale of the Cleveland Browns' successor-in-interest, the Baltimore Ravens, the then Co-Trustees of the Trust, Thomas E. Minogue and Thomas O. Callaghan, filed a lawsuit against Modell, entitled *Minogue, et. al v. Modell*, in which the Trust sought to recover from Modell damages for his breach of the Letter Agreement; and

9.    WHEREAS, on July 22, 2005, the United States District Court for the District of Maryland granted Modell summary judgment in *Minogue, et. al v. Modell* on the ground that the plaintiffs Minogue and Callaghan had failed to establish that Phyllis Andrews transferred the Letter Agreement from the Estate of Vincent Andrews to herself before she transferred it from herself to the Trust;

NOW, THEREFORE, the undersigned, Phyllis Andrews, representing that she is both the Executrix of the Estate of Vincent Andrews and the sole Legatee referenced in paragraph "THIRD" of the Last Will and Testament of Vincent Andrews and that the bequest made by that paragraph has not been assigned, pledged or encumbered in whole or in part, except as set forth above:

(A)    Does hereby, as sole Legatee, acknowledge receipt from herself, as Executrix, on or before January 27, 2000, or if not at that time, then, at the latest, on the date of her execution of this instrument, of the Estate's interest in the Letter Agreement and all rights thereunder in full payment and satisfaction of so much of the bequest to her set forth in paragraph "THIRD" of the Last Will and Testament of Vincent Andrews as pertains to the Letter Agreement; and

(B)    Does hereby acknowledge that she executed the Purchase Agreement and the Assignment of Rights and Claims in her dual capacities as Executrix of the Estate of Vincent Andrews and as sole Legatee of that estate; and

(C)    Does hereby, as sole Legatee, (i) re-confirm and re-acknowledge (a) the sale of her interest in the Letter Agreement to the Trust for $200,000.00 pursuant to the Purchase Agreement, and (b) the assignment to the Trust of all the rights and claims to which she was entitled in connection with the Letter Agreement pursuant to the Assignment of Rights and Claims; or, alternatively, (ii) in the event that the aforementioned sale and assignment of her interest in the Letter Agreement pursuant to the Purchase Agreement and Assignment of Rights and Claims, respectively, are deemed by an appropriate authority to have been ineffective, does hereby confirm and acknowledge the assignment to the Trust of all the rights and claims to which she is entitled in connection with the Letter Agreement pursuant to the Restated Assignment of Rights and Claims, a copy of which is appended hereto as Exhibit E; and

(B)    Does hereby release and discharge herself, individually and as such Executrix, of and from any and all claims, dues and demands and from all further liability or responsibility to her by reason of said bequest; and

(C)    Does hereby agree, both in her capacity as Executrix and in her capacity as sole Legatee, to refund to the Estate of Vincent Andrews any amounts necessary to pay any debts, taxes or other charges or expenses of any kind which, if charged to the Estate prior to distribution, would be a proper charge against the legacy receipted for herein, not to exceed, however, an amount equal to the aggregate value on the date of distribution of the Letter Agreement receipted for herein; and

(D)    Does hereby covenant and agree to indemnify and hold harmless the Estate of Vincent Andrews of and from and against any and all expenses, claims, damages, liabilities, losses, demands and charges of any kind or nature whatsoever which

it may incur or which at any time may be made against it because of, in respect of, or in connection with her acts, omissions, transactions, duties, obligations or responsibilities as Executrix or because of the payment of the bequest receipted for herein; and

(E)    Does hereby waive the issuance and service of a citation or any other process in any proceeding in any jurisdiction brought at any time to settle her account as Executrix as aforesaid, and consents that a decree may be entered at any time judicially settling such account and discharging her as Executrix without further notice.


IN WITNESS WHEREOF, witness my hand on this the 19th day of September, 2005.


_Phyllis Andrews_
PHYLLIS ANDREWS



I, Phyllis Andrews, sign my name to this instrument this the 19th day of September, 2005, and being first duly, sworn, do hereby declare to the undersigned authority that I sign and execute this instrument willingly, and that I execute it as my free and voluntary act for the purposes therein expressed, and that I am eighteen (18) years of age or older, of sound mind and under no constraint or undue influence.


_Phyllis Andrews_
PHYLLIS ANDREWS

We, _Laurie A. Wiegand_ and _James A. Slater_,

the witnesses, sign our names to this instrument, being first duly sworn, and do hereby

declare to the undersigned authority that Phyllis Andrews signs and executes this

instrument willingly, and that each of us, in the present and hearing of Phyllis Andrews

and in the presence of the other subscribing witness, hereby signs this instrument as

witness to Mrs. Andrews' signing, and that to the best of our knowledge, the Mrs.

Andrews is eighteen (18) years of age or older, of sound mind and under no constraint or

undue influence.

_____
WITNESS

_____
WITNESS


STATE OF CONNECTICUT        )
                            ) ss:  _New Canaan_
COUNTY OF FAIRFIELD         )


        On the __19th__ day of September, in the year 2005, before me, the
undersigned, personally appeared PHYLLIS ANDREWS, personally known to me or
proved to me on the basis of a driver's license or other satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged before
me that she executed the same as her free act and deed in her capacity therein stated, that
by her signature on the instrument, the individual, or the person upon behalf of whom the
individual acted, executed the instrument for the purposes therein contained, and that
such individual made such appearance before the undersigned in _New Canaan_,
Connecticut.

_____
Notary Public

VIRGINIA HYDE
NOTARY PUBLIC
STATE OF CONNECTICUT
COMM. EXP. 7-31-07

STATE OF CONNECTICUT )
) ss: *New Canaan*
COUNTY OF FAIRFIELD )

       On the ___19^___ day of September, in the year 2005, before me, the undersigned, personally appeared ___Laurie A Wiegand___, personally known to me or proved to me on the basis of a driver's license or other satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged before me that he/she executed the same as his/her free act and deed in his/her capacity therein stated, that by his/her signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument for the purposes therein contained, and that such individual made such appearance before the undersigned in ___New Canaan___, Connecticut.

                                                        *Virginia Hyde*
                         Notary Public

               VIRGINIA HYDE
                    COMM EXP 7-31-07

STATE OF CONNECTICUT )
) ss: *New Canaan*
COUNTY OF FAIRFIELD )

       On the ___19^___ day of September, in the year 2005, before me, the undersigned, personally appeared ___James A Slater___, personally known to me or proved to me on the basis of a driver's license or other satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged before me that he/she executed the same as his/her free act and deed in his/her capacity therein stated, that by his/her signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument for the purposes therein contained, and that such individual made such appearance before the undersigned in ___New Canaan___, Connecticut.

                                                        *Virginia Hyde*
                         Notary Public

               VIRGINIA HYDE
                    COMM EXP 7-31-07

THIS INSTRUMENT WAS PREPARED BY:

John R. Musicaro, Jr., Esq.
CUMMINGS & LOCKWOOD LLC
Four Stamford Plaza
107 Elm Street
Stamford, CT 06902
Tel. (203) 327-1700
Fax (203) 351-4535

2151614_1.doc 9/19/2005

VINCENT S. ANDREWS
90 Elderfields Road
Manhasset, New York

February 4, 1963

Mr. Arthur B. Modell
12520 Edgewater Drive,
Cleveland, Ohio

Dear Arthur:

I write this letter to confirm my understanding of the arrangements to which we agreed some time ago. If my understanding conforms to yours, I would appreciate your executing the enclosed copy of this letter in the space provided at the end thereof and returning it to me, together with your check to my order in the amount of $750, and this arrangement shall become an agreement effective as of the date of this letter.

1. You hereby retain me as your business manager for the period commencing January 1, 1963, and ending December 31, 1970. You will pay me a compensation of $3,000 for each of the calendar years during that period, with payment to be made as follows: $750 on or before the 15th day of each January, April, July and September, except that in the case of the payment of the payment of $750 otherwise due January 15, 1963, you shall make payment upon your return of the executed carbon copy of this letter.

In consideration of such retainer, I shall render to you at reasonable times and places such business advice, including the preparation of federal and other income and similar tax returns, as you may request.

2. In addition to the foregoing, and as a finder's fee payable to me as a result of my efforts in the negotiations and transactions leading to your ownership of stock in Cleveland Browns, Inc., a Delaware corporation ("Browns"), and the acquisition by that corporation on March 22, 1961, of substantially all the assets of Cleveland Browns, Inc., an Ohio corporation, you agree that when, as and if you ever completely divest yourself of all your stock interest in the Browns or the Browns

P00090

completely liquidate, you shall pay me an amount equivalent to 5% of your net gain from either of those transactions and any intervening sales by you of your Browns stock. For the purposes of the preceding sentence, the term "net gain" shall be computed as it would for purposes of federal income taxation, and there shall be taken into account any and every net loss you may sustain on either of those transactions or on any intervening sale. In the event of your death or the gift of any or all of your Browns stock, prior to either of those transactions the amounts payable under this Section shall be payable by your estate or your donee (to the extent of any gift) as the case may be, and "net gain" shall be computed as though your estate or donee were required to use your basis in Browns stock.

Payment of any amount due me under this Section 2 shall be made within the 60 days next following the close of the transaction by which you divest yourself of all interest as a shareholder in the Browns or a final distribution in complete liquidation of the Browns; provided, however, that if the amounts to be received by you from either of those transactions are payable over a period of time, you shall pay me 5% of the net gain attributable to any particular installment within 60 days next following your receipt of such installment. For the purposes of the preceding sentence, you shall be deemed to have received your net gain ratably over the period of such installments.

3. I represent and warrant to you that I shall not delegate any portion of the services to be performed by me under Section 1 above, except to the extent of incidental clerical services. This agreement shall not be assignable by me in whole or in part, and your obligation to make the payments specified in Section 1 above shall be contingent upon my continued ability to perform. However, the payments specified in Section 2 above shall be made in the event of my death to my estate.

Sincerely yours,

Vincent S. Andrews

Accepted:

Arthur B. Modell

P00091

# PHYLLIS ANDREWS
# FAMILY TRUST

THIS AGREEMENT, dated 12-2? , 1999, between PHYLLIS ANDREWS, of South Salem, New York, as Grantor, and VINCENT S. ANDREWS, of South Salem, New York, and ROBERT L. ANDREWS, of South Salem, New York (hereinafter collectively called "my Trustees").

## WITNESSETH:

In order to fund the trust, I deliver and assign to my Trustees the property specified in Schedule A to this Agreement. My Trustees acknowledge receipt of the property and agree to hold it, in trust, together with any property added to any trust, as follows:

**Article I. Trust for Descendants.**

**A. Distribution of Trust Funds.** My Trustees shall pay or apply all or any part of the net income of the trust to or for the benefit of my descendants and their spouses, in such proportions, equal or unequal or all to one person, as my Trustees in their discretion consider advisable. In addition, my Trustees are authorized in their discretion to pay or apply to or for the benefit of my grandchildren, all or any part of the trust principal that my Trustees in their discretion consider advisable for the grandchild's maintenance in health and reasonable comfort, complete education (including preparatory, college, postgraduate and professional training), or support in the grandchild's accustomed manner of living, with no duty to equalize such payments or applications among beneficiaries. Any undistributed income shall be added to principal.

**B. Termination of Article I Trust.** My Trustees at any time or times in their discretion may dispose of all or any part of the remaining assets of the trust under this Article pursuant to Article II of this Agreement.



EXHIBIT
Phyllis Andrews
7
6-21-04     AP

P00133

**Article II.  Lifetime Trusts for Descendants.** My Trustees shall divide any property to be disposed of pursuant to Article II into separate shares, per stirpes, with respect to my then living descendants, and dispose of such shares as follows:

My Trustees shall hold the share of each descendant of mine (hereinafter referred to as the "Beneficiary") in a separate trust and shall pay or apply all or any part of the net income therefrom to or for the benefit of the Beneficiary, the Beneficiary's descendants, and the Beneficiary's spouse, in such proportions, equal or unequal or all to one person, as my Trustees in their discretion consider advisable. In addition, my Trustees are authorized in their discretion to pay or apply to or for the benefit of the Beneficiary, the descendants of the Beneficiary and the Beneficiary's spouse all or any part of the trust principal that my Trustees in their discretion consider advisable, with no duty to equalize such payments among eligible beneficiaries. Any undistributed income shall be added to trust principal.

Any trust principal remaining at the death of the Beneficiary shall be distributed to or in trust for the benefit of such persons or organizations, upon such conditions and terms, as the Beneficiary shall direct and appoint in an inter vivos instrument filed with my Trustees or by a Will (dated subsequent to all such inter vivos instruments) expressly referring to and exercising this power; provided, however, that this power shall not be exercisable to any extent for the benefit of the Beneficiary, his or her estate, his or her creditors or the creditors of his or her estate. Any trust principal not effectively so appointed shall be distributed to the Beneficiary's then living descendants, per stirpes, or, if none, to the then living descendants, per stirpes, of his or her nearest ancestor who was a descendant of mine and who has descendants then living, or, if none, to my then living descendants, per stirpes; provided, however, that any such property thereby distributable to a person who is the Beneficiary of a trust under this Article shall instead be added to the principal of such trust; and provided further, however, that any

-2-

P00134

such property thereby distributable to a person who is not the Beneficiary of a trust under this Article shall instead be held in a separate trust for such person pursuant to this Article.

Article III. Discretionary Termination of Trust. I recognize that there may be circumstances in which it is not in the best interests of the income beneficiary of a trust established under this Agreement to continue the trust, taking into account all relevant factors, including the costs of administration and any tax benefits or lack thereof. Accordingly, my Trustees are authorized in their discretion and for any reason which they deem sufficient to terminate the trust and distribute any remaining trust property to the income beneficiary, or, if there is more than one income beneficiary, to any one or more of the income beneficiaries in such proportions as my Trustees consider advisable. In exercising their discretion, my Trustees shall have no obligation to consider the interests of any other person in the trust.

Article IV. Additional Dispositive Provisions.

A.     Family Disaster. If the principal of any trust established under this document is not effectively disposed of by the foregoing provisions of this document, such property shall be distributed to those persons to whom and in those proportions in which my Administrator would have been required to distribute the same had I died intestate, unmarried, a resident of New York, and possessed thereof immediately after the termination of such trust.

B.     Withdrawal of Contributions to Trust Under Article I. The following persons who are living on the date of any lifetime transfer to a trust under this Agreement shall be immediately entitled to withdraw from the trust an amount equal to the fair market value of any such transfer which is treated as a gift for federal gift tax purposes (a "contribution"), subject to the provisions which follow, except as modified in writing by the donor prior to or at the time of the contribution giving rise to those withdrawal rights.

-3-

P00135

1.    Each of my descendants and their spouses shall have the right to withdraw (i) the maximum amount allowable to a donor as an annual exclusion for federal gift tax purposes, or (ii) in the case of a married donor, twice said amount, reduced as provided in subsection 2 of this section.

2.    The amount that any descendant of mine may withdraw under subsection 1 of this section shall be reduced by the amounts given to that descendant or which that descendant could withdraw from all irrevocable trusts as a result of prior gifts by the donor and the donor's spouse to that descendant or those trusts during the calendar year that qualify for the federal gift tax annual exclusion.

3.    My Trustees shall give reasonable notice of the right of withdrawal and the conditions under which it may be exercised to each person entitled to make a withdrawal or, if such person is under a legal disability, to such person's legal representative or natural guardian, other than the person making the contribution (such person's "legal representative"). My Trustees' determination of the amount subject to any right of withdrawal shall be conclusive.

4.    A right of withdrawal shall be exercisable only by delivery to my Trustees of a written instrument signed by the person holding such right, or such person's legal representative, exercising the right. Any right of withdrawal may be exercised in anticipation of the creation of that right, but any anticipatory exercise shall be effective only as to withdrawal rights created in the calendar year in which such instrument is delivered to my Trustees.

5.    On December 31 of each calendar year, the aggregate value of each person's exercised cumulative rights of withdrawal that are attributable to lifetime gifts made to the trust prior to December 1 of such year shall be reduced by an amount equal to five percent (5%) of the fair market value of the trust principal as of December 31 of such year, and such rights shall continue with respect to any such excess and shall not

-4-

P00136

terminate until and to the extent that termination does not exceed the greater of such amounts in any one calendar year.

6.     Rights of withdrawal pursuant to this Article shall have priority over (i) distributions of trust principal under any other Article of this Agreement and (ii) the exercise of a power of appointment under any other Article of this Agreement. Failure to exercise a right of withdrawal shall not increase the amount of any other person's right of withdrawal. All unexercised rights of withdrawal held by any person under this section shall be extinguished and shall lapse upon the death of such person.

7.     The withdrawal rights of any class of persons which exceed the contribution subject to such rights shall be reduced equally.

8.     My Trustees may satisfy an exercised right of withdrawal by making a distribution in cash or in kind, or partly in each.

C.     **Withdrawal of Contributions to Trusts Under Article II.** The following persons who are living on the date of any lifetime transfer to a trust under Article II of this Agreement shall be immediately entitled to withdraw from such trust an amount equal to the fair market value of any such transfer which is treated as a gift for federal gift tax purposes (a "contribution"), subject to the provisions which follow, except as modified in writing by the donor prior to or at the time of the contribution giving rise to those withdrawal rights.

1.     Withdrawals shall be made in the following order of priority with respect to each donor's aggregate contributions to the trust during the calendar year:

a)     The Beneficiary of such trust shall have the right to withdraw (i) the maximum amount allowable to a donor as an annual exclusion for federal gift tax purposes, or (ii) in the case of a married donor whose gifts to such trust exceed the withdrawals permitted under (a) (i), twice said amount, reduced as provided in subsection 2 of this section.

-5-

P00137

      **b)**     Each of the descendants and the spouse of the Beneficiary of such trust shall have the right to withdraw (i) the maximum amount allowable to a donor as an annual exclusion for federal gift tax purposes, or (ii) in the case of a married donor whose gifts to such trust exceed the withdrawals permitted under (a) and (b) (i), twice said amount, reduced as provided in subsection 2 of this section.

      2.     The amount that each person may withdraw under subsection 1 of this section shall be reduced by the amounts given to such person or which such person could withdraw from all irrevocable trusts as a result of prior gifts by the donor and the donor's spouse to such person or those trusts during the calendar year that qualify for the federal gift tax annual exclusion.

      3.     My Trustees shall give reasonable notice of the right of withdrawal and the conditions under which it may be exercised to each person entitled to make a withdrawal or, if such person is under a legal disability, to such person's legal representative or natural guardian, other than the person making the contribution (such person's "legal representative"). My Trustees' determination of the amount subject to any right of withdrawal shall be conclusive.

      4.     A right of withdrawal shall be exercisable only by delivery to my Trustees of a written instrument signed by the person holding such right, or such person's legal representative, exercising the right. Any right of withdrawal may be exercised in anticipation of the creation of that right, but any anticipatory exercise shall be effective only as to withdrawal rights created in the calendar year in which such instrument is delivered to my Trustees.

      5.     On December 31 of each calendar year, the aggregate value of each person's unexercised cumulative rights of withdrawal that are attributable to lifetime gifts made to the trust prior to December 1 of such year shall be reduced by an amount equal to five percent (5%) of the fair market value of the trust principal as of December 31

-6-

P00138

of such year, and such rights shall continue with respect to any such excess and shall not terminate until and to the extent that termination does not exceed the greater of such amounts in any one calendar year.

6.   Rights of withdrawal pursuant to this Article shall have priority over (i) distributions of trust principal under any other Article of this Agreement and (ii) the exercise of a power of appointment under any other Article of this Agreement. Failure to exercise a right of withdrawal shall not increase the amount of any other person's right of withdrawal. All unexercised rights of withdrawal held by any person under this section shall be extinguished and shall lapse upon the death of such person.

7.   The withdrawal rights of any class of persons which exceed the contribution subject to such rights shall be reduced equally.

8.   My Trustees may satisfy an exercised right of withdrawal by making a distribution in cash or in kind, or partly in each.

D.   **Generation-Skipping Transfer Tax Provision.** Notwithstanding any other provision of this Agreement, I authorize my Trustees (other than any descendant of mine) to divide any trust into two separate trusts based on the fair market value of the trust assets at the time of the division, so that the federal generation-skipping transfer tax inclusion ratio for each such trust shall be either zero or one and to allocate additions to any trust so that all trusts or property with an inclusion ratio of zero shall be allocated to a trust with an inclusion ratio of zero and all trusts or property with an inclusion ratio of one shall be allocated to a trust with an inclusion ratio of one.

E.   **Children and Descendants.** The terms "child," "children," "descendant" and "descendants" as used in this document with regard to any person shall include (i) such person's present natural and adopted children and their present natural and adopted descendants and (ii) any children or other descendants of such person born after

-7-

P00139

the date of this document or legally adopted prior to attaining age eighteen (18) after the date of this document.

F.    **Per Stirpes.**  Whenever my fiduciaries are directed to distribute property to an individual's descendants "per stirpes," the property shall be divided into shares beginning with the first generation below such individual, whether or not there are members of such generation living at the time of distribution.  Subdivision of shares for successive generations shall be made in the same manner.  The meaning of the term "per stirpes" set forth in this section shall override the provisions of any state's law to the contrary.

G.    **Definition of Incapacitated.**  An individual shall be considered to be incapacitated if the individual is under a legal disability or by reason of illness or mental or physical disability is unable to give prompt and intelligent consideration to financial matters.  The determination as to whether an individual is incapacitated shall be made by my Trustees other than the individual, or, if none, by the institution or individual designated to succeed the individual as Trustee, who may rely conclusively upon (1) the written opinion of the individual's primary physician, (2) the written opinion of any two physicians, or (3) the written order of a court appointing a Conservator or Guardian of the individual's person or property.

Article V.  Appointment of Fiduciaries.

Each of THOMAS A. CHAMPION, of New Canaan, Connecticut, and TIMOTHY TENNEY, of Cold Spring, New York, shall be entitled to become a Trustee upon signing a written Acceptance of the responsibility as Trustee.

If either of THOMAS A. CHAMPION or TIMOTHY TENNEY fails or ceases to act as Trustee, JOHN R. MUSICARO, JR., of Darien, Connecticut, is entitled to become a Trustee, upon his signing a written Acceptance of the responsibility as Trustee

-8-

P00140

My Trustees may appoint one or more additional Trustees or successor Trustees at any time.

Any individual Trustee may at any time appoint his or her successor as Trustee, unless the foregoing provisions of this Agreement effectively provide for his or her successor.

If JOHN R. MUSICARO, JR. or any successor to him fails or ceases to act as a fiduciary and fails to appoint his successor, the law firm of Cummings & Lockwood may appoint a successor fiduciary, including a member of such firm.

If a Trustee of any trust fails or ceases to act and the foregoing provisions of this Agreement do not effectively provide for a successor, a majority of the adult eligible income beneficiaries of any trust may appoint one or more successor Trustees of such trust.

My sons, VINCENT and ROBERT, shall have the right to remove any Trustee of any trust hereunder and to appoint one or more successor Trustees; provided, however, that both sons are living and competent and agree with such action and that any such successor Trustee would not be a related or subordinate party subservient to the wishes of any such son (within the meaning of section 672(c) of the Code) if such son were the grantor of such trust.

A majority of the adult eligible income beneficiaries of any trust, with the concurrence of a majority of the adult presumptive remaindermen of such trust, may remove any Trustee of such trust and appoint a Trustee or Trustees to succeed the removed Trustee, provided at least one (1) adult income beneficiary and one (1) adult presumptive remainderman join in the exercise of such power.

Any fiduciary is authorized to resign at any time without court approval. The resignation, appointment or revocation of appointment of a Trustee may be made by the person authorized to take such action by delivery of an acknowledged instrument to my

-9-

P00141

Trustees then acting and any Trustee to be appointed, or, if none, to a court having jurisdiction over the trust. Any appointment of a Trustee may be conditioned to commence or cease upon a future event and may be revoked or modified at any time before such future event has occurred. Unless otherwise expressly provided, any power to appoint a Trustee shall permit appointment of an individual, bank or trust company as such fiduciary, and shall be exercised by the parent (or, if none, the legal representative) of any minor and the legal representative of any incapacitated person holding such power. A determination that any individual fiduciary acting hereunder is incapacitated shall be deemed a resignation by that individual fiduciary as of the date of the determination.

Article VI. Administrative Provisions.

A.     Irrevocable Trust. This Agreement and any trust created hereunder shall be irrevocable and, except as otherwise specifically provided in this Agreement, shall not be subject to alteration or amendment in any respect.

B.     Additions to Trust. Any person may add property to any trust under this Agreement by lifetime gift or by transfer taking effect at death, provided such property is acceptable to my Trustees.

C.     Discretionary Distributions Limited to Independent Trustee. Notwithstanding any other provision of this document to the contrary, no Trustee who is not an "Independent Trustee" (as defined in this section) shall participate in any decision regarding any discretionary accumulation, payment, application or allocation of income or principal or termination of a trust unless such decision is limited by an ascertainable standard as defined in section 2041(b) of the Code. A Trustee is an Independent Trustee with regard to any such discretionary decision to accumulate or distribute income only if such Trustee is not a current eligible income beneficiary of such trust, and with regard to any such discretionary decision to distribute principal or terminate a trust only if such Trustee is not a current eligible beneficiary of the income of such trust and has not been

-10-

P00142

appointed as a Trustee by any such beneficiary other than pursuant to a power to appoint which requires that at least one adult income beneficiary and one other adult presumptive remainderman of such trust join in the exercise of such power. All such decisions shall rest exclusively in the discretion of the other Trustees who are Independent Trustees. If no Independent Trustee is then acting and there is no other provision of this Agreement by which an Independent Trustee can be appointed, then (1) JOHN R. MUSICARO, JR., or, if he fails to act, (2) the law firm of Cummings & Lockwood or, if they fail to act, a majority of the adult income beneficiaries (of which there must be one) and a majority of the adult presumptive remaindermen (of which there must be one other) of such trust may appoint an Independent Trustee, or, if no Independent Trustee is so appointed, then any adult beneficiary may request a court having jurisdiction over such trust to appoint an Independent Trustee.

In addition, I, whether acting as a Trustee hereunder or otherwise: (1) shall have no right or power to vote any stock or other security of a controlled corporation as defined in section 2036(b) of the Code comprising a part of any trust estate; and (2) shall have no right to participate in any decision regarding the discretionary payment or application of principal or income to or for the benefit of any beneficiary. All such voting rights, powers, discretions and authorities shall be vested exclusively in and exercisable by the other Trustee or Trustees, if any, then acting hereunder.

D.    **Legal Obligations Not Relieved.**  No provision of this Agreement shall be construed as relieving any person of his or her legal obligations, including the obligation to support any beneficiary hereunder, and no part of the income or principal of any trust hereunder and no exercise of a power of appointment granted herein shall be used to satisfy any such legal obligations.

E.    **Consideration of Other Resources of Beneficiaries.**  In exercising their discretion to distribute trust funds to any beneficiary, my fiduciaries may (but shall

-11-

P00143

not be required to) take into consideration any other resources reasonably available to such beneficiary.

F.    **Rule Against Perpetuities.** I realize that the law imposes certain limits upon the duration of trusts, and accordingly, regardless of any other provision of this Agreement, each trust shall terminate not later than twenty (20) years after the death of all my descendants now living, and my Trustees shall distribute the trust property to the income beneficiary, or, if there is more than one income beneficiary, to any one or more of the income beneficiaries in such proportions as my Trustees consider advisable.

G.    **Distributions to Minors.** If my fiduciaries are authorized or required to distribute property to a beneficiary who is then a minor, and my fiduciaries do not believe that an immediate distribution is in the beneficiary's best interests, they may instead distribute such property to any adult caring for the beneficiary or to the beneficiary's Guardian or Custodian under a Uniform Gifts or Transfers to Minors Act.

H.    **Informal Accountings.** My Trustees may provide to each eligible income beneficiary who is not then incapacitated statements of trust transactions at such time and in such form as they consider advisable. If all such beneficiaries either give written approval of the statement or fail to notify my Trustees in writing of any objection within thirty (30) days of the mailing of the statement to the beneficiaries, the statement shall be final, binding and conclusive on all persons interested in the trust.

I.    **Optional Trusts to Age Twenty-One.** If property is distributable outright to a beneficiary who is then under the age of twenty-one (21) years, my fiduciaries may hold such property in trust and pay or apply all or any part of the net income and principal to or for the benefit of such beneficiary, as they consider advisable. Undistributed income shall be added to trust principal. Any remaining trust principal shall be paid to such beneficiary when he or she attains the age of twenty-one (21) years or, if such beneficiary dies prior to attaining such age, then to his or her estate.

-12-

P00144

J.    **Elections.** I authorize my fiduciaries, in their sole discretion and without the order or approval of any court, to make or not make any election, allocation or other discretionary decision permitted under the provisions of any tax law in effect from time to time, and to make or not make equitable adjustments of interests of beneficiaries in light of such decisions; provided, however, that any adjustment necessary to avoid reducing any marital deduction under any tax law shall be made. No beneficiary shall have any rights against my fiduciaries by reason of any such decisions or adjustments. My fiduciaries may also allocate property (or the right to receive property) which is subject to estate tax and federal income tax as income in respect of a decedent to principal, to income, or in part to each.

K.    **Definition of Code.** Any reference to the "Code" shall mean the Internal Revenue Code of 1986, as amended, and as interpreted by the Treasury Regulations thereunder (including Proposed Regulations), any provisions amendatory thereof, supplemental thereto, or substituted therefor.

L.    **Requirement of Survival.** No beneficiary shall be considered to have survived the event terminating any trust and be entitled to any trust funds on that event unless such beneficiary survives for at least ninety (90) days after that event.

M.    **Disclaimers.** Any person (or his or her attorney-in-fact or legal representative, including the Executor, Administrator, Conservator, or other personal representative of his or her estate) or entity, without approval of any court, may irrevocably disclaim, renounce or release, in whole or in part, any interest, benefit, right, privilege or power granted to such person or entity under this document. My Trustees with regard to any interest in property passing to any trust under this document (including a beneficial interest in a trust) or any fiduciary power under this document, without the approval of any court, may irrevocably disclaim, renounce or release, in whole or in part, any such interest, benefit, right, privilege or power. A disclaimer shall be in writing,

-13-

P00145

signed by the fiduciary, person or entity making the disclaimer before two disinterested witnesses and acknowledged before a Notary Public (or other proper official for taking acknowledgements) and shall also comply with any additional requirements of local, state and federal law regarding the formalities of execution and delivery.

N.    Powers of Appointment. Any power of appointment created under this Agreement may be exercised only by an express reference to the power which includes my name. A person exercising a power of appointment may appoint trust funds outright or in trust. The choice of terms, trustees and jurisdiction of any trust shall be entirely within the discretion of the person having the power of appointment, except to the extent otherwise expressly provided in this Agreement. No power of appointment shall be exercisable by a beneficiary over any property or its proceeds added to a trust by means of a disclaimer by such beneficiary.

O.    Investment Counsel. My fiduciaries may employ investment counsel; consult with such counsel on any matters relating to the retention, sale, purchase, investment, or reinvestment of securities or other property; delegate to such investment counsel my fiduciaries' investment authority; and pay such investment counsel reasonable compensation for its services in addition to the regular compensation of my fiduciaries. My fiduciaries may act upon or refrain from acting upon the advice of such investment counsel in whole or in part, and to the extent my fiduciaries follow the advice of such counsel or rely upon such investment counsel's exercise of delegated investment authority, my fiduciaries shall not be liable for any action taken or omitted, except in the case of willful misconduct.

P.    Delegation. Except as otherwise provided herein, any fiduciary may delegate to the other fiduciaries the right to exercise any power (discretionary, administrative or otherwise) and may revoke the delegation at any time by delivery of an acknowledged instrument to such other fiduciaries.

-14-

Q.    **Trustee Relieved From Liability.** No individual Trustee who is a descendant of mine shall be liable for any mistake or error of judgment, or for any action taken or omitted, either by my Trustees or by any agent or attorney employed by my Trustees, or for any loss or depreciation in the value of the trust, except in the case of willful misconduct.

R.    **Successor Trustee.** No Trustee has a duty to examine the transactions of any prior Trustee. Each Trustee is responsible only for those assets which are actually delivered to it.

S.    **Governing Law.** The validity, construction and administration of this document and any trust hereunder shall be governed by the laws of New York.

T.    **Definition of Trustee.** Except as otherwise provided herein, any Trustee who acts under this Agreement may exercise all of the rights, powers and discretions and shall be entitled to all of the privileges and immunities granted to the named Trustee. In this Agreement, I sometimes refer to my Trustees as "my fiduciaries." Any references in this Agreement to my Trustees or my fiduciaries shall include (unless otherwise expressly provided) all Trustees. No surety bond shall be required of any Trustee.

U.    **Discretion of Trustee.** The Trustee shall have absolute discretion regarding the exercise of his powers, and such exercise shall be final and conclusive upon all persons.

V.    **Closely Held Businesses.** This trust may be funded with, or subsequently purchase or otherwise acquire, securities or other financial interests in one or more closely held businesses (each of which is hereinafter referred to as the "business"). I realize that the business may not be the type of investment in which fiduciaries would normally invest estate or trust funds. Nonetheless, my fiduciaries shall incur no liability for any loss which may be sustained by reason of the retention, operation or sale of the

-15-

P00147

business or the exercise of any power conferred upon my fiduciaries with respect to the business.

My fiduciaries shall have the following powers with respect to the business, in addition to any granted by law or elsewhere in this document.

1. To retain and continue the business or any interest therein for such time as they consider advisable;

2. To operate or participate in the operation of the business in the form of a corporation, partnership or proprietorship, or in any other form, whether or not in such form at my death;

3. To direct, control, supervise, manage, operate or participate in the operation of the business; to serve as officers and directors of the business; and to receive from the business compensation for their services in addition to their compensation as fiduciaries;

4. To delegate all or any part of their power to supervise, manage or operate the business to such persons as they may select, including any director, officer, or employee of the business;

5. To engage, compensate and discharge such managers, employees, agents, attorneys, accountants, consultants or other representatives as they consider advisable, including anyone who may be a beneficiary or fiduciary;

6. To invest or employ in the business, or to use as collateral for loans to the business, such other estate or trust funds as they consider advisable;

7. To sell, liquidate or otherwise dispose of all or any part of the business at such time or times, for such prices and upon such terms and conditions as they consider advisable, and to sell the business to anyone who is a beneficiary or fiduciary; and

-16-

P00148

        **8.**    To exercise with respect to the retention, continuance, and disposition of such business all the rights and powers which I would have were I to make the decision at the time of such exercise.

        **W.**    **Spendthrift Provision.** The income and principal of any trust hereunder shall be used only for the personal benefit of the designated beneficiaries of the trust, and no distributions or expenditures of trust assets shall be made except to or for the benefit of a trust beneficiary. To the fullest extent permitted by law, the interest of each trust beneficiary shall not be subject to any form of pledge, assignment, sale, attachment, garnishment, execution, or other form of transfer.

        **X.**    **Virtual Representation.** I direct that in any proceeding relating to any trust created hereunder, service of process upon any person under a disability shall not be made when another person not under a disability is a party to the proceeding and has the same interest as the person under the disability.

        **Y.**    **Reacquisition of Trust Principal.** Notwithstanding any provision of this Agreement to the contrary, I, whether or not I am acting as a Trustee, shall at any time have the power, exercisable individually in a nonfiduciary capacity and without the approval or consent of any person or entity in a fiduciary capacity, to reacquire the trust principal (other than voting stock or other securities of a controlled corporation as defined in section 2036(b) of the Code) of any trust under Article I or Article II by substituting other property of an equivalent value at the time of reacquisition. This power may be released by me at any time by filing an acknowledged instrument of release with my Trustees.

        **Z.**    **Management Powers of Trustee.** In addition to any powers conferred upon them by law and without the order or approval of any court, except as otherwise provided herein, I authorize and empower my Trustees:

-17-

P00149

(1) To retain, acquire, or sell any variety of real or personal property (including any discretionary common trust fund of any corporate fiduciary acting under this document, mutual funds, covered and uncovered stock options, insurance policies on my life and investments in foreign securities), without regard to diversification and without being limited to the investments authorized for trust funds; (2) to exercise stock options; (3) to enter into agreements for the sale, merger, reorganization, dissolution or consolidation of any corporation or properties; (4) to manage, improve, repair, sell, mortgage, lease (including the power to lease for oil and gas), pledge, convey, option or exchange any property and take back purchase money mortgages thereon, without court order; (5) to make distributions in cash or in kind, or partly in each, and, in the discretion of such fiduciaries, to allocate particular assets or portions thereof to any one or more beneficiaries, without any duty to distribute any asset pro rata among beneficiaries, and to do so without regard to the income tax basis of specific property allocated to any beneficiary, provided that such property shall be valued for purposes of distribution at its value on the date of distribution; (6) to maintain custody or brokerage accounts (including margin accounts) and to register securities in the name of a nominee; (7) to compromise and settle claims (including those relating to taxes); (8) to borrow funds from any person or corporation (including a Trustee) and pledge or mortgage trust assets to secure such loans; (9) to extend, renew or renegotiate loans or guarantees; (10) to lend money to or for the benefit of any person beneficially interested hereunder (including a guardian); (11) to employ attorneys, accountants, investment counsel, custodians, brokers and other agents to assist in the administration of estate or trust property and to delegate discretionary powers (including the granting of a power of attorney and the power to be a signer on any estate or trust financial accounts) to such persons; (12) to vote and give proxies to vote shares of stock; (13) to make joint investments in property, real or personal; to enter into and act as a general or limited partner in general or limited partnerships; to establish corporations

-18-

P00150

(including limited liability companies) of any kind; and to transfer assets to any such joint ventures, partnerships or corporations; (14) to divide any trust into separate trusts based on the fair market value of the trust assets at the time of the division; and (15) if there is more than one trust established under this document, to administer such trusts as a single fund.

AA.    **Execution and Identification of Agreement.**    This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed an original and may be referred to as the "Phyllis Andrews Family Trust."

IN WITNESS WHEREOF, PHYLLIS ANDREWS, the Grantor, and VINCENT S. ANDREWS and ROBERT L. ANDREWS, my Trustees, have hereunto set their respective hands and seals as of the day and year first above written.

_____    _____
Witness                        PHYLLIS ANDREWS
                               Grantor

_____
Witness

_____    _____
Witness                        VINCENT S. ANDREWS
                               Trustee

_____
Witness

_____    _____
Witness                        ROBERT L. ANDREWS
                               Trustee

_____
Witness

-19-

P00151

STATE OF Connecticut            )
                                ) ss.: Danis
COUNTY OF Fairfield             )

On the 21st day of December          in the year 1999 before

me. the undersigned, a Notary Public in and for said State, personally appeared PHYLLIS

ANDREWS, personally known to me or proved to me on the basis of satisfactory evidence

to be the individual whose name is subscribed to the within instrument and acknowledged

to me that she executed the same in her capacity, and that by her signature on the

instrument, the individual, or the person upon behalf of which the individual acted,

executed the instrument.

                                            Notary Public
                                Commissioner of the Superior Court
                                            SONYA NIELSEN
                                            NOTARY PUBLIC
                                    My Commission Expires July 31, 2001

STATE OF Connecticut            )
                                ) ss.: Danis
COUNTY OF Fairfield             )

On the 21st day of December          in the year 1999 before

me, the undersigned, a Notary Public in and for said State, personally appeared VINCENT

S. ANDREWS, personally known to me or proved to me on the basis of satisfactory

evidence to be the individual whose name is subscribed to the within instrument and

acknowledged to me that he executed the same in his capacity, and that by his signature on

the instrument, the individual, or the person upon behalf of which the individual acted,

executed the instrument.

                                            Notary Public
                                Commissioner of the Superior Court
                                            SONYA NIELSEN
                                            NOTARY PUBLIC
                                    My Commission Expires July 31, 2001

-20-

PS0152

STATE OF Connecticut            )
                                ) ss: Dallas
COUNTY OF Fairfield             )

On the 21 st day of December in the year 1999 before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT L. ANDREWS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public,
Commissioner of the Superior Court

JUDITH NELSON
NOTARY PUBLIC
My Commission Expires July 31, 2001

-21-

PS0153

## SCHEDULE A

FIVE DOLLARS ------------------------------------------------------------------------ $ 5.00

64-401.733093.1 12/23/99

P50154

EXHIBIT C

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "Agreement") is dated as of January 27, 2000, by and among Phyllis Andrews, residing at 284 South Smith Ridge - Road, South Salem, New York ("Seller") and Vincent S. Andrews and Robert L. Andrews, as Trustees of the Phyllis Andrews Family Trust under Agreement dated December 28, 1999, established by Phyllis Andrews, as Grantor, having its principal place of business at c/o Vincent Andrews Management Corp., 16 West Avenue, Darien, Connecticut (the "Buyer").

## RECITALS

A.    The Seller owns an interest in the net gain from the sale by Arthur B. Modell of his stock interest in Cleveland Browns, Inc., as set forth in a certain letter agreement dated February 2, 1963 between Vincent S. Andrews and Arthur B. Modell (the "Letter Agreement Interest"), a copy of which is attached hereto as Exhibit A.

B.    On the terms and subject to the conditions set forth herein, the Seller desires to sell to the Buyer, and the Buyer desires to purchase from the Seller the Letter Agreement Interest.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and of the representations, warranties and agreements set forth below, the parties hereto agree as follows:

## ARTICLE 1
## PURCHASE AND SALE

Section 1.1.    Purchase and Sale of the Letter Agreement Interest. At the Closing (as such term is hereinafter defined), on the terms and subject to the conditions of this Agreement, the Seller will sell, transfer and deliver to the Buyer, and the Buyer will purchase from the Seller, free and clear of all liens, claims, encumbrances, security interests, options, charges and restrictions of any kind, all of the Seller's right title and interest in and to the Letter Agreement Interest.

Section 1.2.    Consideration Payable by the Buyer. The aggregate consideration to be paid by the Buyer to the Seller in exchange for the Partnership Interest shall be Two Hundred Thousand Dollars ($200,000) (the "Aggregate Consideration").

P50155

## ARTICLE 2
## CLOSING

The closing of the transactions herein contemplated (the "Closing") shall, unless another date, time or place is agreed to by parties hereto, take place at the offices of the Buyer at 1:00 p.m., local time, on January 21 , 2000 (the date upon which the Closing shall occur is hereinafter referred to as the "Closing Date").

(a)     Delivery of Aggregate Consideration.  At the Closing, the Buyer shall deliver to Seller cash in the amount of Two Hundred Thousand Dollars ($200,000).

(b)     Assignment of Partnership Interest at Closing.  At the Closing, the Seller shall deliver or cause to be delivered to the Buyer an assignment of the Letter Agreement Interest (the "Assignment"), in proper form for transfer and such other documents as are specifically required by this Agreement.

## ARTICLE 3
## CONDITIONS TO CLOSING

Section 3.1.     Conditions to the Buyer's Obligations.  The obligations of the Buyer to consummate the Closing are subject to the satisfaction (or waiver by the Buyer) as of the Closing of the following conditions:

(a)     Representations, Warranties and Covenants.  The representations and warranties of the Seller made in this Agreement shall be true and correct in all material respects as of the date of this Agreement and, except as specifically contemplated by this Agreement, on and as of the Closing Date, as though made on and as of the Closing Date, and the Seller shall have performed or complied, in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Seller by the time of the Closing.

(b)     Assignment of Letter Agreement Interest.  The Seller shall have assigned the Letter Agreement Interest as provided in Article 2(b) hereof.

Section 3.2.     Conditions to the Seller's Obligations.  The obligations of the Seller to consummate the Closing are subject to the satisfaction (or waiver by the Seller) as of the Closing of the following conditions:

(a)     Representations, Warranties and Covenants.  The representations and warranties of the Buyer made in this Agreement shall be true and correct in all material respects as of the date of this Agreement and on and as of the Closing, as though made on and as of the Closing Date, and the Buyer shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Buyer by the time of the Closing.

P50156

(b)    Aggregate Consideration. The Buyer shall have remitted the Aggregate Consideration as provided in Article 2.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF SELLER

The Seller hereby represents and warrants to the Buyer as follows:

Section 4.1.    Authority. All necessary action required to have been taken by or on behalf of the Seller by applicable law has been taken to authorize (a) the execution and delivery by the Seller of this Agreement and (b) the performance by Seller of her obligations under this Agreement and the consummation of the transactions contemplated hereby. This Agreement constitutes a valid and binding agreement of Seller, enforceable against such Seller in accordance with its terms.

Section 4.2.    No Breach. The execution and delivery of this Agreement by Seller does not, and the consummation of the transactions to which the Seller is a party contemplated hereby will not constitute a material breach or default or give rise to any lien, third-party right of termination, cancellation, material modification or acceleration under any material agreement, understanding or undertaking to which the Seller is a party.

Section 4.3.    Consents and Approvals. Neither the execution and delivery of this Agreement by the Seller nor the consummation of the transactions to which Seller is a party contemplated hereby will require any consent, approval, authorization or permit of any person, other than consents which have been obtained.

Section 4.4.    Title to and Transfer of the Letter Agreement Interest. The Seller is the record owner of the Letter Agreement Interest and has good and marketable title thereto, free and clear of any liens, claims, encumbrances, security interests, options, pledges, charges and restrictions of any kind. Upon delivery to the Buyer of the Assignment and such other documents required to be delivered pursuant to Article 2(b), and upon the Seller's receipt of the Aggregate Consideration and such other deliveries required pursuant to Article 2(b), good and marketable title to the Letter Agreement Interest will pass to the Buyer, free and clear of any liens, claims, encumbrances, security interests, options, pledges, charges and restrictions of any kind other than those arising from acts of the Buyer or its affiliates.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF BUYER

The Buyer hereby represents and warrants to the Seller as follows:

Section 5.1.    No Breach. The execution and delivery of this Agreement by the Buyer does not, and the consummation of the transactions contemplated hereby by the Buyer will not constitute a breach or default (or an event that with notice or lapse of

**P50157**

time or both would become a breach or default) or give rise to any lien, third-party right of termination, cancellation, modification or acceleration under any material agreement, understanding or undertaking to which the Buyer is a party or by which it is bound, or any law, rule or regulation to which it is subject.

Section 5.2.    Consents and Approvals. Neither the execution and delivery of this Agreement by the Buyer nor the consummation by the Buyer of the transactions contemplated hereby will require any consent, approval, authorization or permit of any person.

## ARTICLE 6
## COVENANTS

Section 6.1    Mutual Covenants. Seller and Buyer covenant and agree from time to time following the Closing, as and when requested by either party hereto, the other party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to evidence the consummation or further effect the transactions contemplated by this Agreement.

Section 6.2    Seller's Covenant. Seller, individually and as Executor of the estate of Vincent S. Andrews, covenants and agrees (a) to take all actions necessary to collect any and all proceeds payable under the Letter Agreement provided that Assignee agrees to pay all costs associated with such actions and (b) to pay all such proceeds received to Assignee.

## ARTICLE 7
## INDEMNIFICATION

Section 7.1.    Indemnification by the Seller. Seller shall indemnify the Buyer and hold him harmless from all liability, damages, losses and expenses (including reasonable attorneys' fees and expenses) ("Losses") suffered or incurred or arising from or in connection with any breach of any representation or warranty made by the Seller under this Agreement or any other document delivered to the Buyer in connection herewith.

Section 7.2.    Indemnification by the Buyer. The Buyer shall indemnify and hold harmless the Seller from any Losses suffered or incurred by Seller arising from in connection with (i) any breach of any representation or warranty made by the Buyer under this Agreement or any other document delivered to the Seller in connection herewith.

P50158

## ARTICLE 8
## MISCELLANEOUS

Section 8.1.    Amendments.  No amendment to this Agreement shall be effective unless it shall be in writing and signed by each party hereto.

Section 8.2.    Assignment.  This Agreement and the rights and obligations hereunder shall not be assignable or transferable by the Buyer or the Seller without the prior written consent of the other party hereto; provided, however, that no assignment shall limit or affect the assignor's obligations hereunder.

Section 8.3.    No Third-Party Beneficiaries.  This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any person or entity, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

Section 8.4.    Counterparts.  This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party.

Section 8.5.    Entire Agreement.  This Agreement contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.

Section 8.6.    Governing Law.  This Agreement and the provisions hereof shall be governed by and construed in accordance with the internal laws of the state of . Connecticut without regard to its principles of conflicts of laws.

Section 8.7.    Severability.  If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

Section 8.8.    No Consequential or Punitive Damages.  Notwithstanding anything to the contrary elsewhere in this Agreement, no party (or its affiliates) shall, in any event, be liable to any other party (or its affiliates) for any consequential damages, including, but not limited to, loss of revenue or income, or loss of business reputation or opportunity, or any punitive damages relating to the breach or alleged breach of this Agreement.

Section 8.9.    Effect.  This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and permitted assigns of the respective parties.

P50159

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the date first written above.

_Phyllis Andrews_
Phyllis Andrews


PHYLLIS ANDREWS FAMILY TRUST
U/A DTD December 28, 1999

By: _Robert L. Andrews_
Robert L. Andrews, Trustee

_Vincent S. Andrews_
Vincent S. Andrews, Trustee

.ScaLib1:740579.1 01/34/00

P00160

EXHIBIT D

## ASSIGNMENT OF RIGHTS AND CLAIMS

This ASSIGNMENT OF RIGHTS AND CLAIMS, executed as of this 27 day of *January*, 2000, is made by PHYLLIS ANDREWS, residing at 284 South Smith Ridge Road, South Salem, New York ("Assignor"), for the benefit of Vincent S. Andrews and Robert L. Andrews, as Trustees of the Phyllis Andrews Family Trust under Agreement dated December 28, 1999, established by Phyllis Andrews, as Grantor, having its principal place of business at c/o Vincent Andrews Management Corp., 16 West Avenue, Darien, Connecticut ("Assignee").

WHEREAS, Assignor owns an interest in the net gain from the sale by Arthur B. Modell of his stock interest in Cleveland Browns, Inc., as set forth in a certain letter agreement dated February 2, 1963 between Vincent S. Andrews and Arthur B. Modell (the "Letter Agreement Interest"), a copy of which is attached hereto as Exhibit A.

WHEREAS, Assignor desires to transfer the Letter Agreement Interest to Assignee.

NOW, THEREFORE, in consideration of the payment of Two Hundred Thousand Dollars ($200,000.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby assign and transfer to Assignee all of its right, title and interest in and to any and all rights and claims which Assignor is entitled to in connection with the Letter Agreement, and by act of subrogation, for all purposes hereafter, the Assignee shall be entitled to be substituted for the Assignor with respect to all such rights and claims.

TO HAVE AND TO HOLD the same unto Assignee, and Assignee's successors and assigns, forever.

IN WITNESS WHEREOF, the Assignor has executed this document as of the date first above written.

ASSIGNOR:

*Phyllis Andrews*

Phyllis Andrews

:StmLib1:748730.1 01/19/00

P00162

# EXHIBIT
# F

Appointment of Trustees

WHEREAS,

1.    Phyllis Andrews, a Grantor, by a Trust Agreement dated December 27, 1999 (the "Agreement") with Vincent S. Andrews and Robert L. Andrews, as Trustees, established the Phyllis Andrews Family Trust.

2.    Article V of the Agreement provides that the Trustees may appoint one or more additional Trustees at any time by delivery of an acknowledged instrument to the Trustees then acting and any Trustee to be appointed.

3.    On April 8, 2003, Vincent S. Andrews and Robert L. Andrews appointed Thomas E. Minogue and Thomas O. Callaghan as additional Trustees, and Vincent S. Andrews and Robert L. Andrews resigned as Trustees.

4.    Thomas E. Minogue and Thomas O. Callaghan wish to appoint Herman H. Tarnow and Jane F. Sims as additional Trustees.

NOW THEREFORE,

The undersigned Thomas E. Minogue and Thomas O. Callaghan, as Trustees of the Phyllis Andrews Family Trust, hereby appoint Herman H. Tarnow and Jane F. Sims to act as Trustees of the Phyllis Andrews Family Trust.

_____
Thomas E. Minogue

_____
Thomas O. Callaghan

Delivery of the foregoing Appointment of Trustees is hereby acknowledged by Thomas E.
Minogue and Thomas O. Callaghan as Trustees.

Dated:  December 15, 2005

_____
Thomas E. Minogue

Dated:  December 15, 2005

_____
Thomas O. Callaghan

3

STATE OF CONNECTICUT       ) ss *New Canaan*

COUNTY OF *Fairfield*       )

The foregoing instrument was acknowledged before me this 7 day of *December*, 2005, by Thomas E. Minogue, who is personally known to me or who has produced a driver's license as identification.

_____
Notary Public

STATE OF OHIO             )
                          )
COUNTY OF *Cuyahoga*       )

The foregoing instrument was acknowledged before me this 30 day of *November*, 2005, by Thomas O. Callaghan, who is personally known to me or who has produced a driver's license as identification.

*Cynthia L Carlson*
_____
Notary Public
CYNTHIA L. CARLSON
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES MARCH 18, 2009

The undersigned, Herman H. Tarnow, hereby acknowledges delivery of the foregoing Appointment of Trustees and consents to act as a Trustee of the Phyllis Andrews Family Trust.

Dated: 12/14/05

_____
Herman H. Tarnow

The undersigned, Jane F. Sims, hereby acknowledges delivery of the foregoing Appointment of Trustees and consents to act as a Trustee of the Phyllis Andrews Family Trust.

Dated:

_____
Jane F. Sims

2

**Resignation of Trustee**

WHEREAS,

1.    Phyllis Andrews, a Grantor, by a Trust Agreement dated December 27, 1999 (the "Agreement") with Vincent S. Andrews and Robert L. Andrews, as Trustees, established the Phyllis Andrews Family Trust.

2.    Article V of the Agreement provides that any Trustee may resign without court approval by delivery of an acknowledged instrument to the Trustees then acting.

3.    Thomas E. Minogue, Thomas O. Callaghan, Herman H. Tarnow and Jane F. Sims are acting as Trustees.

4.    Thomas O. Callaghan wishes to resign as Trustee.

NOW THEREFORE,

The undersigned, Thomas O. Callaghan, hereby resigns as Trustee of the Phyllis Andrews Family Trust.

_____
Thomas O. Callaghan

STATE OF OHIO              )
                           )
COUNTY OF *Cuyahoga*       )

The foregoing instrument was acknowledged before me this *15th* day of *December*, 2005, by Thomas O. Callaghan, who is personally known to me or who has produced a driver's license as identification.

_____
Notary Public

CYNTHIA L. CARLSON
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES MARCH 18, 2009

Delivery of the foregoing Resignation of Trustee is hereby acknowledged by Thomas E. Minogue, Herman H. Tarnow and Jane F. Sims, as Trustees.

Dated:  12/16/05

_____
Thomas E. Minogue

Dated:  12/19/05

_____
Herman H. Tarnow

Dated:

_____
Jane F. Sims