# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

PHYLLIS ANDREWS, *et al.*,

          Plaintiffs,

          v.

ARTHUR B. MODELL,

          Defendant.

Civil Action No. 07-3368 (SCR)

## DEFENDANT'S OPPOSITION TO
## PLAINTIFFS' MOTION TO REMAND

Claudia T. Morgan (CM 1998)
**Hogan & Hartson LLP**
44 S. Broadway, Third Floor
White Plains, NY 10601
(212) 918-8300

*Counsel for Arthur Modell*

Steven F. Barley*
Daniel J. Jawor*
**Hogan & Hartson LLP**
111 S. Calvert Street, Suite 1600
Baltimore, MD 21202
(410) 659-2700

*Counsel for Arthur Modell*
*\* Admitted Pro Hac Vice*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................ii

TABLE OF AUTHORITIES ............................................................................iv

INTRODUCTION .............................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT ......................................................................................................8

I.   THE REMAND ORDER IN *MINOGUE II* DOES NOT GOVERN
     THIS COURT'S JURISDICTION. .............................................................8

     A.   The removal statute does not prohibit the Court from
          considering its jurisdiction because the removal statute
          operates within the confines of a single action. ...................8

     B.   The remand order in *Minogue II* does not preclude Mr.
          Modell's arguments in support of this Court's jurisdiction
          because Mr. Modell had no right of appeal. .......................11

II.  MS. SIMS'S CITZENSHIP DOES NOT DESTROY DIVERSITY
     JURISDICTION BECAUSE SHE IS NOT A REAL AND
     SUBSTANTIAL PARTY TO THE CONTROVERSY. ............................14

     A.   Ms. Sims is not a real and substantial party to the controversy
          because the Trust Instrument strips Ms. Sims of the authentic
          powers of a trustee. .............................................................14

          1.   The Trust Instrument gives Robert and Vincent Jr.
               absolute power to remove Ms. Sims. .............................15

          2.   The Trust Instrument relieves Ms. Sims of the fiduciary
               duty to review the trust's ownership of the very contract
               that is the trust's only asset and basis for suing Mr. Modell. .......17

     B.   Ms. Sims is not a real and substantial party to the controversy
          because her appointment was a collusive device designed to
          stifle proper diversity jurisdiction. ....................................17

          1.   The collusive assignment of a claim to a nondiverse
               plaintiff does not destroy diversity jurisdiction. ............18

          2.   Ms. Sims's appointment is like a collusive assignment of a
               legal claim. ...................................................................19

3.   Ms. Sims was privately appointed to stifle the Court's proper jurisdiction..........................................................20

4.   The Court is empowered to review Ms. Sims's appointment. .......22

CONCLUSION ..........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Attorneys Trust v. Videotape Comp. Prods., Inc.,*
  93 F.3d 593 (9th Cir. 1996) ................................................................ 19

*Chaara v. Intel Corp.,*
  410 F. Supp. 2d 1080 (D.N.M. 2005) ............................................... 10

*Gelb v. Royal Globe Ins. Co.,*
  798 F.2d 38 (2d Cir. 1986) ............................................................... 13

*Gentle v. Lamb-Weston, Inc.,*
  302 F. Supp. 161 (D. Maine 1969) ................................................... 25

*Grassi v. Ciba-Geigy, Ltd.,*
  894 F.2d 181 (5th Cir. 1990) ..................................................... passim

*In re Korean Air Lines Disaster,*
  829 F.2d 1171 (D.C. Cir. 1987) .......................................................... 2

*In re Oxford Health Plans, Inc.,*
  191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................ 1

*JMTR Enters., L.L.C. v. Duchin,*
  42 F. Supp. 2d 87 (D. Mass. 1999) ............................................ 20, 25

*Kircher v. Putnam Funds Trust,*
  __ U.S. __, 126 S. Ct. 2145 (2006) ................................................... 12

*McClanahan v. Snodgrass,*
  319 F. Supp. 913 (N.D. Miss. 1970) ................................................. 19

*Mecom v. Fitzsimmons Drilling Co.,*
  284 U.S. 183, 52 S. Ct. 84 (1931) ......................................... 6, 23, 24

*MediSys Health Network, Inc. v. Local 348-S United Food &*
  *Comm. Workers, AFL-CIO & CLC,*
  337 F.3d 119 (2d Cir. 2003) ................................................ 8, 11, 12

*Minogue v. Modell,*
  2006 WL 1704932 (N.D. Ohio June 16, 2006) ............................ 7, 23

*Navarro Sav. Ass'n v. Lee,*
  446 U.S. 458, 100 S. Ct. 1779 (1980) ................................. 15, 16, 17

*Picquet v. Amoco Prod. Co.,*
   513 F. Supp. 938 (M.D. La. 1981) ................................................................... 25

*Smiglin v. New York Life Ins. Co.,*
   854 F. Supp. 464 (S.D. Tex. 1994) ........................................................... 19, 25

*Thermtron Prods., Inc. v. Hermansdorfer,*
   423 U.S. 336, 96 S. Ct. 584 (1976) ................................................................ 8

*Wecker v. Nat'l Enameling & Stamping Co.,*
   204 U.S. 176, 27 S. Ct. 184 (1907) ............................................................... 23

## Statutes

28 U.S.C. § 1332 ........................................................................................... 14

28 U.S.C. § 1447(d) ......................................................................................... 8

## Treatises

14B Wright, Miller, & Cooper, Federal Practice and Procedure
   § 3723 at 625 (3d ed. 1998) ....................................................................... 18

**INTRODUCTION**

Plaintiffs ask the Court to remand this action because both plaintiff-trustee Jane Sims and defendant Arthur Modell are citizens of Maryland. Ordinarily, these facts alone might be sufficient to determine the merits of plaintiffs' motion. But this is not an ordinary case. Cloaked with only seeming authority, Ms. Sims actually is a "mere conduit for a remedy flowing to others" — namely, two trust beneficiaries who have the right to remove her at will. Plaintiffs appointed Ms. Sims, moreover, to stifle proper federal jurisdiction and to avoid appearing before the U.S. District Court in Maryland that already adjudicated plaintiffs' claims in the first round of this litigation. For these reasons, Ms. Sims is not a "real and substantial" party to the controversy, and the Court should disregard her citizenship for purposes of diversity jurisdiction. Once doing so, the Court unquestionably has subject matter jurisdiction over this action.

Plaintiffs argue that this Court should refuse to even consider Mr. Modell's arguments in support of removal jurisdiction. In the discussion that follows, Mr. Modell debunks each of the technical bases on which plaintiffs make this argument, but equally important is the broader warrant for this Court's review. Of course, no prior district court decision is binding precedent on another district court,[1] but the removal of this action is not, in any event, a repeat performance of *Minogue II*. It is a new action with new arguments not

---

[1]    *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 377 (S.D.N.Y. 2000).

previously considered by the court in *Minogue II*.[2]  These new arguments
particularly justify this Court's fresh appraisal of its own jurisdiction.[3]

Plaintiffs have expended significant effort in an attempt to avoid
returning to the Maryland District Court, twice changing their lineup to skip
from one state to another.  But this conduct only advertises the need for
diversity jurisdiction, which is greatest "when the plaintiff tries hardest to
defeat it."[4]

## BACKGROUND

According to the complaint, Vincent Andrews Sr. brought Mr. Modell
the opportunity to purchase part of an NFL football franchise.  Mr. Modell took
this opportunity and, in 1961, became part owner of the corporation that held
the assets of the Cleveland Browns.[5]

Two years later, Mr. Andrews and Mr. Modell signed a document (the
"Letter Agreement"), in which Mr. Modell allegedly agreed to pay Mr. Andrews
a fee for having found the opportunity to become an NFL owner.  The Letter
Agreement allegedly specifies that this finder's fee is five percent of Mr.

---

[2]    See section II.A, *infra* (distinguishing *Navarro*); see section II.B.4, *infra*
(distinguishing *Mecom*).

[3]    *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (Ruth Bader
Ginsburg, J.) ("There is no room in the federal system of review for rote acceptance of the
decision of a court outside the chain of direct review.  If a federal court simply accepts the
interpretation of another circuit without independently addressing the merits, it is not
doing its job.") (citation omitted).

[4]    *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990).

[5]    Compl. ¶¶ 29, 34.

Modell's eventual net gain from either the liquidation of the Cleveland Browns or the divestment of all of Mr. Modell's stock interest in the team.[6]  Neither of these events occurred within Mr. Andrews's lifetime (nor have they since).  He died in 1969, naming his widow, Phyllis, as executor of his estate and leaving his interest in the Letter Agreement to her as sole legatee.[7]

In 1996, Mr. Modell moved the Cleveland Browns to Baltimore, Maryland and renamed the team the Baltimore Ravens.

In 1999, certain press articles reported that Mr. Modell had agreed to sell a partial interest in the Baltimore Ravens to local businessman, Stephen J. Bisciotti.[8]  One week later, at the direction of her sons Robert and Vincent Jr., Mrs. Andrews — who was then eighty-eight years old and had entrusted her finances entirely to her sons since her husband's death thirty years earlier[9] — created the Phyllis Andrews Family Trust for the benefit of her husband's heirs.[10]  The trust was funded with a gift of $200,000 sometime in late

---

[6]  Compl. ¶¶ 38-39.

[7]  Compl. ¶ 43.

[8]  Compl. ¶ 48.

[9]  Phyllis Andrews Dep. at 32:14-17, 34:21 – 35:2, 35:10-16, 36:23 – 37:4, 38:18-24 (June 21, 2004) (attached as Ex. 1).

[10]  Phyllis Andrews Family Trust [Instrument] (Dec. 27, 1999) (the "Trust Instrument") (attached as Ex. 2).

December 1999 or early January 2000.[11]  Robert and Vincent Jr. were appointed trustees.

A month to the day after creating the trust, Robert and Vincent Jr. tapped the trust in an attempt to purchase the Letter Agreement from their mother for $200,000.[12]  By the supposed purchase,[13] Robert and Vincent Jr. apparently sought to prevent the Letter Agreement from passing directly to them at Mrs. Andrews's death — something they wished to avoid since they had already declared bankruptcy after a multi-million dollar jury verdict against them.[14]

Two years after the trust was created, and about a month before the first lawsuit, Robert and Vincent Jr. resigned as trustees and appointed two successors:  Thomas Minogue of Connecticut and Thomas Callaghan of Ohio. Although they purported to possess all the customary powers of trustees, Mr. Minogue and Mr. Callaghan (and all successor trustees) were carefully reined. Robert and Vincent Jr. reserved the right to "remove any Trustee . . . and to appoint one or more successor Trustees."[15]  That is, the same two beneficiary sons who instigated the creation of the trust, acted as trustees for two years,

---

[11]   Robert Andrews Dep. at 38:17 – 39:7 (May 10, 2004) (attached as Ex. 3); Vincent Andrews Jr. Dep. at 35:14-17 (May 10, 2004) (attached as Ex. 4).

[12]   Purchase Agreement (Jan. 27, 2002) (attached as Ex. 5).

[13]   Mr. Modell disputes the validity of the supposed purchase.

[14]   Robert Andrews Dep. at 59:21 – 69:17 (attached as Ex. 3); Vincent Andrews Jr. Dep. at 52:3-21 (attached as Ex. 4).

[15]   Trust Instrument, Art. V at 9 (attached as Ex. 2).

and purported to buy the Letter Agreement, reserved the exclusive right as beneficiaries to remove any trustee at any time for any reason.  Under this watchful eye, Messrs. Minogue's and Callaghan's first major action was to sue Mr. Modell.

*Minogue I*

On May 23, 2003, the trust filed a complaint against Mr. Modell in the Court of Common Pleas in Cuyahoga County, Ohio seeking to recover the same finder's fee at issue here.  Mr. Modell removed the case to the U.S. District Court for the Northern District of Ohio on the basis of diversity jurisdiction. The Ohio District Court granted Mr. Modell's ensuing motion to transfer venue to the District of Maryland.  Following two years of extensive discovery and voluminous briefing by the parties, the U.S. District Court in Maryland granted summary judgment to Mr. Modell, in part, on the ground that the trust lacked standing to sue because it could not demonstrate that it rightfully owned the Letter Agreement that formed the basis of all the trust's claims.[16] The court also held that the trust's claims for "prevention" and breach of the implied covenant of good faith and fair dealing were defective as a matter law.[17]

---

[16]   *Minogue v. Modell*, 384 F. Supp. 2d at 821, 824-25 (D. Md. 2005) ("*Minogue I*").

[17]   *Id.* at 826.

*Minogue II*

Claiming to have corrected its lack of standing, the same trust filed a second lawsuit against Mr. Modell on December 30, 2005, raising nearly identical claims to those already adjudicated by the U.S. District Court in Maryland.  To avoid appearing before the same federal judge in Maryland, the trust filed its complaint once again in the Court of Common Pleas in Cuyahoga County, Ohio.   Anticipating that Mr. Modell might again exercise his statutory right to remove the action to federal court based on diversity jurisdiction, the trust shuffled its trustee lineup.  Less than two weeks before filing the second complaint, Mr. Callaghan of Ohio resigned as co-trustee.  Two new co-trustees, Herman Tarnow and Jane Sims, took his place.  Ms. Sims is a citizen of Maryland, just like Mr. Modell.  Mr. Tarnow is a citizen of Florida where Mr. Modell lives in the winter.

Mr. Modell again removed the action to the U.S. District Court in Ohio on the basis of diversity jurisdiction, arguing that the court should disregard Ms. Sims's citizenship for purposes of the complete diversity rule because her appointment as trustee on the eve of litigation was a collusive device to stifle proper diversity jurisdiction.  Relying largely on *Mecom v. Fitzsimmons Drilling Co.*,[18] the Ohio District Court decided that it was "forbidden from speculating . . . into the motive for Sims's appointment as trustee," and therefore remanded the action to Ohio state court for lack of complete

---

[18]   284 U.S. 183, 52 S. Ct. 84 (1931)

diversity.[19]  On remand, the Ohio Court of Common Pleas granted Mr. Modell's motion to dismiss the complaint on the ground of *forum non conveniens* because Maryland was "the more convenient" forum.[20]  Plaintiffs appealed the dismissal order, but ultimately decided to abandon their claims in Ohio by voluntarily withdrawing their petition for review from the Ohio Supreme Court.[21]

### The Current Action

Paying no heed to the Ohio state court's *forum non conveniens* analysis, Mr. Minogue, Mr. Tarnow, and Ms. Sims filed yet another complaint on behalf of the trust on March 13, 2007, this time in the Supreme Court of the State of New York for Westchester County.  Joining the co-trustees as plaintiff in this latest round of litigation is the trust's grantor and New York resident, Phyllis Andrews.  Although the trust has repeatedly asserted that Mrs. Andrews sold her interest in the Letter Agreement to the trust,[22] the latest complaint includes a new allegation that she now retains some form of beneficial interest in the Letter Agreement that justifies her appearance before this Court.[23]

---

[19]  *Minogue v. Modell*, 2006 WL 1704932 (N.D. Ohio June 16, 2006) (attached as Ex. 6). Mr. Modell, of course, could not appeal the remand ruling.  *See* 28 U.S.C. § 1447(d).

[20]  *Minogue v. Modell*, No. 580274, Slip Op. ¶ 12 (Ohio Ct. Com. Pleas Oct. 4, 2006) ("*Minogue II*") (attached as Ex. 7).

[21]  Compl. ¶ 86.

[22]  *See*, *e.g.*, Compl. ¶ 6 ("Phyllis Andrews . . . entered into a written Purchase Agreement in which she transferred to the Trust all of her interest in the Letter Agreement."); *id*. ¶ 55 (same).

[23]  Compl. ¶ 22.

## ARGUMENT

Plaintiffs ask the Court to remand this action because: (1) the removal statute and principles of issue preclusion prevent the Court from even considering if it has jurisdiction; and (2) even if the Court considers the jurisdictional question, Ms. Sims's citizenship destroys diversity jurisdiction. Neither argument has merit.

## I.    THE REMAND ORDER IN *MINOGUE II* DOES NOT GOVERN THIS COURT'S JURISDICTION.

### A.    The removal statute does not prohibit the Court from considering its jurisdiction because the removal statute operates within the confines of a single action.

The statute governing procedure after removal, 28 U.S.C. § 1447(d), states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."[24]  The statute expresses Congress's purpose "to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues."[25]  It "serves the important but limited purpose of expediting the process of choosing a forum for litigation."[26]

Plaintiffs argue that the "or otherwise" language in § 1447(d) prevents the Court from "reconsidering" the Ohio District Court's remand decision in *Minogue II*.  This argument is flawed for two reasons.

---

[24]  28 U.S.C. § 1447(d).

[25]  *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 351, 96 S. Ct. 584, 593 (1976).

[26]  *MediSys Health Network, Inc. v. Local 348-S United Food & Comm. Workers, AFL-CIO & CLC*, 337 F.3d 119, 124 (2d Cir. 2003).

First, putting aside for a moment the meaning of the phrase, "or otherwise," the Ohio District Court's remand order is, quite simply, not up for review in this case.  Neither Mr. Modell's notice of removal, nor plaintiffs' motion to remand, asks the Court to decide if the Ohio District Court was correct to remand the action in *Minogue II* to Ohio state court.  To exert jurisdiction here, the Court need not limit, revise, reverse, or vacate the Ohio District Court's remand order in any way.  The remand order in *Minogue II* thus stands untouched, just as the removal statute requires.

Second, not a single case cited by plaintiffs construes the "or otherwise" language in § 1447(d) to prohibit a district court from considering its jurisdiction because another district court issued a remand order in a separate, prior action between the parties.  Instead, the cases plaintiffs cite stand for the proposition that § 1447(d) prohibits a district court from *reconsidering its own* remand order in the same action, which clearly advances Congress's purpose to expedite trial of remanded cases.[27]  This proposition does not apply here since the Court has not previously issued a remand order in this action.[28]

---

[27]  Pls.' Supp. Mem. at 7 (citing *Shapiro v. Logistic USA, Inc.*, 412 F.3d 307, 311 (2d Cir. 2005) (holding consistent with other circuits that a district court may not reconsider its own remand order) (citing cases)).

[28]  The only other authorities plaintiffs cite concern motions to vacate remand orders and anti-suit injunctions intended to halt state proceedings after remand.  *See* Pls.' Supp. Mem. at 7.  Neither type of action is at issue here since the Ohio state court proceedings after remand in *Minogue II* continued uninterrupted until plaintiffs abandoned their appeal.

This distinction was determinative in *Chaara v. Intel Corp.*, in which the defendants removed an action to the New Mexico District Court on the ground of diversity jurisdiction ("Action #1").[29]  The district court, Judge Black presiding, remanded Action #1 for a lack of complete diversity.  Following remand, the plaintiff filed a second action ("Action #2"), which the New Mexico state court consolidated with Action #1.[30]  The defendants then removed the consolidated actions, arguing that an intervening change in citizenship made both actions removable.  The district court, Judge Browning presiding, concluded that despite consolidation, Action #1 and Action #2 remained separate actions for purposes of determining jurisdiction.  With respect to Action #1, the court held that it could not exert jurisdiction because to do so the court would have had to review, in violation of § 1447(d), "whether Judge Black's ruling still stands."[31]  With respect to Action #2, however, the court held that, because Judge Black's order only concerned Action #1, "§ 1447(d) does not bar the Court from deciding whether [Action #2], a separate action, possesses subject-matter jurisdiction."[32]

As in *Chaara*, the Ohio District Court's remand order in *Minogue II* does not concern this action and § 1447(d) is no bar.  Section 1447(d) expedites a remanded action by precluding review of remand orders within the same case.

---

[29]  410 F. Supp. 2d 1080, 1092 (D.N.M. 2005).

[30]  *Id*. 1092-93.

[31]  *Id*. at 1093.

[32]  *Id*. at 1095-96.

It does not prohibit a Court from determining its own jurisdiction in the first instance when a new action is removed for the first time. Section 1447(d) does not apply here.

    **B.**    **The remand order in *Minogue II* does not preclude Mr. Modell's arguments in support of this Court's jurisdiction because Mr. Modell had no right of appeal.**

Plaintiffs also contend that the remand order in *Minogue II* bars removal to this Court as a matter of issue preclusion.[33] Plaintiffs mistakenly focus on irrelevant circuit splits and inapposite cases, only to overlook controlling precedent in the Second Circuit that forecloses their argument.

In *MediSys Health Network, Inc. v. Local 348-S*,[34] MediSys filed a petition in New York state court to enjoin arbitration proceedings initiated by a union of health care workers. The union removed the action, arguing that the Labor Management Relations Act provided subject matter jurisdiction. The district court disagreed, holding that MediSys was a "political subdivision" falling outside the category of employers that are the concern of the LMRA.[35] Since the district court remanded on the basis of subject matter jurisdiction, the Court of Appeals concluded that it did not have jurisdiction to review the remand order under § 1447(d). The union nonetheless argued that the remand order was reviewable despite § 1447(d) under the collateral order doctrine

---

[33]  Pls.' Supp. Mem. at 7-13.

[34]  337 F.3d 119 (2d Cir. 2003).

[35]  *Id.* at 122.

because the district court's finding on remand that MediSys was a political subdivision would prejudice the union's substantive rights in state court by preventing the union from raising federal claims and defenses.[36]  The substantive determination of its federal claims and defenses, argued the union, fell within the collateral order doctrine making the remand order appealable.[37]

The Court of Appeals rejected this argument, specifically holding that issue preclusion does not apply to "jurisdictional findings incident to remand."[38]  The Court reasoned that under contemporary issue preclusion, "the unavailability of appellate review of remand orders under § 1447(d) strongly militates against giving a judgment preclusive effect."[39]  Indeed, the U.S. Supreme Court emphatically approved this exact reasoning just last term in *Kircher v. Putnam Funds Trust*, where the Court said that issue preclusion "should be no bar . . ., given that § 1447(d) prevents the [removing party] from appealing the District Court's decision."[40]

Although *MediSys* involved the effect of remand findings in state court, its holding applies equally to the effect of remand findings in federal court. Nothing in the federal test for the application of issue preclusion turns on the

---

[36]  *MediSys*, 337 F.3d at 122.

[37]  *Id*. at 123-24.

[38]  *Id*. at 124 (quoting *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 322 (4th Cir.1993)).

[39]  *Id.*

[40]  __ U.S. __, 126 S. Ct. 2145, 2156-57 (2006) (citing, *inter alia*, Restatement (Second) of Judgments § 28(1) (1980)).

identity of the subsequent court.[41]  If, as the Second Circuit determined in *MediSys*, issue preclusion does not bar a state court from redetermining a district court's remand findings, nor does it bar a federal court from doing the same.

Just as in *MediSys*, the Ohio District Court's conclusion in *Minogue II* that Ms. Sims was a real and substantial party to the controversy is a "jurisdictional finding incident to remand" that has no preclusive effect here. The contrary decisions cited by plaintiffs are either conflicting, non-binding opinions from other federal circuits,[42] or inapposite cases unrelated to remand orders that rely on decisions implicitly overruled in the remand context by the Supreme Court's recent decision in *Kircher*.[43]

\* \* \*

For each of the foregoing reasons, the Court is not bound by the remand decision in *Minogue II*.  Not only is the Court unimpeded by the Ohio remand order, the Court should consider Mr. Modell's arguments in support of jurisdiction because Mr. Modell advances new arguments with respect to both *Navarro Sav. Ass'n v. Lee* and *Mecom v. Fitzsimmons Drilling Co.* that were

---

[41]  *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (listing federal elements).

[42]  Pls.' Supp. Mem. at 9 (citing *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636-37 (5th Cir. 1974)); *id.* at 11 (citing *Painters Local Union No. 109 Pension Fund*, 113 F.3d 590 (8th Cir. 1998)).

[43]  Pls.' Supp. Mem. at 10 (citing *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978) (discussing the preclusive affect of state court orders) (relying on the more-than-a-century old decision in *Johnson Co. v. Wharton*, 152 U.S. 252, 256-57 (1894)).

not advanced by the parties in *Minogue II* before the Ohio District Court gave dispositive effect to both decisions.

## II.   MS. SIMS'S CITZENSHIP DOES NOT DESTROY DIVERSITY JURISDICTION BECAUSE SHE IS NOT A REAL AND SUBSTANTIAL PARTY TO THE CONTROVERSY.

Subject matter jurisdiction based on diversity of citizenship permits a federal district court to adjudicate state claims if the amount in controversy exceeds $75,000 and all plaintiffs are citizens of states different than all defendants.[44]  Plaintiffs do not contest that the amount in controversy exceeds the Court's jurisdictional minimum.  The only question is diversity of citizenship — specifically, whether the Court must relinquish jurisdiction because both Ms. Sims and Mr. Modell are citizens of Maryland.  The answer is no.  The Court should disregard Ms. Sims's citizenship for purposes of the complete diversity rule because she is not a real and substantial party to the controversy: (1) she lacks the authentic powers of a trustee to control the trust or this litigation, and (2) her appointment was a collusive device designed to stifle proper diversity jurisdiction.

### A.   Ms. Sims is not a real and substantial party to the controversy because the Trust Instrument strips Ms. Sims of the authentic powers of a trustee.

The U.S. Supreme Court established long ago that the "'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial

---

[44]   28 U.S.C. § 1332(a)(1)

parties to the controversy."[45]  "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."[46]

Trustees of an express trust generally can file a diversity action upon the basis of their own citizenship.[47]  This case, however, falls within an exception recognized by the U.S. Supreme Court in *Navarro Sav. Ass'n v. Lee* for trustees lacking authentic power:  Ms. Sims is a "naked trustee" who acts as a "mere conduit" for a remedy flowing to others, namely Robert and Vincent Jr.[48]  Several provisions of the Trust Instrument make this plain.

### 1.    The Trust Instrument gives Robert and Vincent Jr. absolute power to remove Ms. Sims.

The Trust Instrument empowers Robert and Vincent Jr. to remove any trustee for any reason at any time:

> My sons, VINCENT and ROBERT, shall have the right to remove any Trustee of any trust hereunder . . .; provided, however, that both sons are living and competent and agree with such action . . . .[49]

In other words, as long as Robert and Vincent Jr. are breathing, thinking, and thinking alike, they steer the ship.

---

[45]  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460, 100 S. Ct. 1779, 1781 (1980) (citing *McNutt v. Bland*, 2 How. 9, 15 (1844)).

[46]  446 U.S. at 461, 100 S. Ct. at 1782.

[47]  446 U.S. at 462, 100 S. Ct. at 172.

[48]  446 U.S. at 465 & n.14, 100 S. Ct. at 1784 n.14.

[49]  Trust Instrument, Art. V at 9 (attached as Ex. 2).

The provision empowering Robert and Vincent Jr. to remove trustees at will strips Ms. Sims — indeed all of the trustees — of authentic power over the trust and this litigation. Any decision she makes must conform to Robert's and Vincent's will. If not, she can be removed. Jane Sims depends on Vincent and Robert Jr. for her office. She is a "naked trustee" serving at the pleasure of the real parties to the controversy.

The U.S. District Court in Ohio concluded in *Minogue II* that the trust provision quoted above did not strip Ms. Sims of her authentic power as trustee because it is "reminiscent" of trust provisions in *Navarro* that the Supreme Court found insufficient to disregard the trustees' citizenships. The shareholder-beneficiaries in *Navarro* could "elect and remove trustees; they [could] terminate the trust or amend the Declaration; and they [had to] approve any disposition of more than half of the trust estate."[50] Respectfully, the Ohio District Court was mistaken to analogize to these provisions, which are a pale comparison to the provision at issue here.

The trustees in *Navarro* held legal title to real estate investments for the benefit of 9,500 shareholders of Fidelity Mortgage Investors Company. The diffuse power of 9,500 shareholders, who "had no voice in the initial investment decision," to remove trustees by election in no way compares to the power of Robert and Vincent Jr. as beneficiaries and former trustees of a

---

[50]   446 U.S. at 465 & n.14, 100 S. Ct. at 1784 n.14.

family trust to remove at any time and for any reason any trustee that jeopardizes the value of the Letter Agreement they selected for their future financial security. *Navarro* is not analogous.

      2.    **The Trust Instrument relieves Ms. Sims of the fiduciary duty to review the trust's ownership of the very contract that is the trust's only asset and basis for suing Mr. Modell.**

The Trust Instrument purports to limit Ms. Sims's fiduciary duties in a way that absolves her of responsibility for the acquisition of the Letter Agreement: "No Trustee has a duty to examine the transactions of any prior Trustee. Each Trustee is responsible only for those assets which are actually delivered to it."[51] This stands in sharp contrast to the ubiquitous responsibility of the *Navarro* trustees, who had undivided responsibility for the trust's assets.[52] In this case, Ms. Sims is exempt from reviewing the trust's ownership of the very contract upon which the trust sues as its only asset. Her nominal interest in this controversy is hobbled from the start.

      B.    **Ms. Sims is not a real and substantial party to the controversy because her appointment was a collusive device designed to stifle proper diversity jurisdiction.**

Not only does Ms. Sims lack the authentic power of a trustee, but her appointment was a collusive device intended to stifle the federal courts' proper jurisdiction. This too is good cause under the law to disregard her citizenship.

---

[51]  Trust Instrument, Art. VI.R at 15 (attached as Ex. 2).

[52]  *Navarro*, 446 U.S. at 459.

"[I]t is well-settled that the district court will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the collusive or improper . . . assignment of claims."[53] This well-established principle concerning the improper assignment of claims should equally apply in this case to plaintiffs' improper appointment of Ms. Sims to pursue a claim.

### 1. The collusive assignment of a claim to a nondiverse plaintiff does not destroy diversity jurisdiction.

In *Grassi v. Ciba-Geigy, Ltd.* — the seminal case regarding collusive transfers of interests designed to stifle diversity jurisdiction — several plaintiffs filed a collection action against a Swiss corporation.[54] Shortly before filing, however, the plaintiffs assigned a small percentage interest in their claim to a Costa Rican corporation in consideration for certain assistance related to the lawsuit.[55] When the defendant removed the action to federal court, the plaintiffs sought remand, arguing that the Costa Rican corporation's interest in the suit destroyed complete diversity. Although the district court noted possible rationalizations for the assignment, it nonetheless found the assignment to be primarily an improper attempt to stifle diversity jurisdiction.[56] Accordingly, the court disregarded the Costa Rican corporation's

---

[53]   14B Wright, Miller, & Cooper, Federal Practice and Procedure § 3723 at 625 (3d ed. 1998).

[54]   894 F.2d 181, 182 (5th Cir. 1990).

[55]   *Id.*

[56]   *Id.* at 186.

citizenship for purposes of diversity jurisdiction.[57]  Other courts similarly have applied this elemental principle of fairness and refused to give effect to form-over-substance maneuvers designed to stifle diversity jurisdiction.[58]

### 2.   Ms. Sims's appointment is like a collusive assignment of a legal claim.

Ms. Sims's appointment is practically indistinguishable from the partial assignment of claims discussed in the *Grassi* line of cases.  In *Grassi*, the nominal party is assigned the legal claim itself; in this case, the nominal party is assigned an office allowing her to pursue a legal claim that is the trust's only asset.  In *Grassi*, an assignee is given an interest too small to be called genuine; in this case, an appointee is given an interest too restricted to be called genuine.  Not to apply *Grassi* in the closely analogous circumstances of this case would incentivize plaintiffs to make an end-run around the right of removal.  Rather than assign part of a legal claim to a nondiverse party, a plaintiff bent on robbing a defendant of his right to removal would merely assign the entire claim to a trust with diversity-destroying, but fully removable, trustees.  The *Grassi* line of cases discourages these sleights of hand and logically applies to collusive fiduciary appointments.

---

[57]   *Id.*

[58]   *See, e.g., Attorneys Trust v. Videotape Comp. Prods., Inc.*, 93 F.3d 593, 597-600 (9th Cir. 1996); *Smiglin v. New York Life Ins. Co.,* 854 F. Supp. 464 (S.D. Tex. 1994); *McClanahan v. Snodgrass*, 319 F. Supp. 913 (N.D. Miss. 1970).

### 3.    Ms. Sims was privately appointed to stifle the Court's proper jurisdiction.

Whether a partial assignment of a legal claim — or, as here, a restricted appointment to pursue a legal claim — is improperly made to defeat jurisdiction is a question of fact.[59]  Plaintiffs profess to have had the best of intentions unrelated to diversity jurisdiction when they appointed Ms. Sims to be trustee.[60]  But similar professions of neutral intention were made by the plaintiffs in the *Grassi* line of cases who argued that their assignments were perfectly legitimate under state law.[61]  These professions were not enough in the *Grassi* line of cases, nor are they here.  Rather than rely on plaintiffs' representations, the Court should look to the full record of objective facts in this case.

Although the universe of relevant facts is limited only by the creativity of litigants, there exists "a 'pattern' of facts that courts have found indicative of a plaintiff's impermissible attempt to destroy diversity through assignment."[62]  This pattern includes: (1) a partial, rather than complete, assignment; (2) an incentive on the part of the plaintiff to stay in state court; (3) the lack of any interest in the litigation on the part of the assignee before the assignment; and (4) the timing of the assignment in relation to the filing of the complaint.  The

---

[59]    *Grassi*, 894 F.2d at 186.

[60]    Pls.' Supp. Mem. at 16-18.

[61]    *See, e.g., Grassi*, 894 F.2d at 182.

[62]    *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92 (D. Mass. 1999).

presence of these factors here should lead the Court to disregard Ms. Sims's citizenship for diversity purposes.

First, Ms. Sims's legal interest in the trust's claim comprises significantly less than a full and undivided interest. As already discussed, Robert and Vincent Jr. have the right under the Trust Instrument to remove Ms. Sims for any reason at any time. Her interest in this litigation is therefore fully revocable at the hands of the two individuals with the greatest financial interest in the claim, neither of whom is a Maryland citizen. At least the assignees in the *Grassi* line of cases could say that their diminutive interest was genuinely theirs. Ms. Sims cannot claim even that.

And even while her appointment lasts, her authority is purposefully diluted. Before Ms. Sims's appointment there were two trustees; after her appointment there are three. The trust candidly admits that it appointed an additional trustee to dilute the control and influence of any one.[63] The trust purposefully created for Ms. Sims something analogous to a minority interest, so that she might pursue in her own name the trust's legal claim without the risk that she could actually control the trust or this litigation.

Second, plaintiffs' incentive to keep this case in New York state court is self-evident. A remand to state court will allow plaintiffs to evade once again the Maryland courts, including the court that already handled and rendered

---

[63]   Pls.' Supp. Mem. at 2.

partial judgment on plaintiffs' claims, and which the Ohio state court expressly found were a proper forum for the case. A remand would foreclose any motion to transfer this case back to the U.S. District Court in Maryland — a motion which the Ohio District Court found to be meritorious in *Minogue I*.

Third, before her appointment, Ms. Sims was a fifth-year associate at a law firm in Baltimore City, Maryland, specializing in estates and trusts law. She had no connection to the trust or this litigation.

Fourth and finally, plaintiffs appointed Ms. Sims only after losing on summary judgment in *Minogue I* in the U.S. District Court in Maryland and only on the eve of filing *Minogue II*.[64] In the first thirteen days of her appointment, then, Ms. Sims apparently evaluated two year's worth of litigation in *Minogue I* and the merits of filing *Minogue II*. Never mind that the Trust Instrument absolved her from any need to consider the one issue most within her expertise: the trust's acquisition of the Letter Agreement. The timing of Ms. Sims's appointment belies the argument that she was appointed for a meaningful substantive or advisory purpose related to the Letter Agreement or this litigation.

### 4. The Court is empowered to review Ms. Sims's appointment.

Mr. Modell acknowledges that *Minogue II* was remanded to state court because the U.S. District Court in Ohio felt it was "forbidden" under *Mecom v.*

---

[64] Complaint ¶ 20.

*Fitzsimmons Drilling Co.*[65] from questioning the "motive for Sims's appointment as trustee."[66] Mr. Modell respectfully submits that the Ohio District Court misconstrued *Mecom* and took too limited a view of its own authority.

Contrary to the conclusion of the Ohio District Court in *Minogue II*, the Court is fully empowered to examine whether Ms. Sims's appointment was made to manipulate jurisdiction. As the U.S. Supreme Court long ago stated, the "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."[67] "[F]ederal district courts have both the authority and the responsibility . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal."[68]

*Mecom* is not to the contrary. In that case, an Oklahoma man died in an accident allegedly caused by the defendants' negligence.[69] His widow was

---

[65]  284 U.S. 183, 52 S. Ct. 84 (1931).

[66]  *Minogue II,* 2006 WL 1704932 at *16.

[67]  *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186, 27 S. Ct. 184, 188 (1907).

[68]  *Grassi*, 894 F.2d at 185.

[69]  284 U.S. at 184, 52 S. Ct. at 85.

appointed the administrator of his estate by the Oklahoma state probate court. The widow attempted to sue the defendants three different times in state court and each time the case was properly removed to federal court.[70]  After each removal, the widow voluntarily dismissed suit.  Finally, the widow resigned and Mr. Mecom was appointed administrator by the state probate court.[71] Because Mr. Mecom was a Louisiana citizen, total diversity was destroyed. The Supreme Court rebuffed the defendants' contention that Mr. Mecom, the widow, and her attorney "were in a conspiracy to defeat federal jurisdiction" because "[t]o go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it."[72]

The decision in *Mecom* thus rested not on the federal court's powerlessness to examine the nature of a trustee's appointment, but on the rationale that parties seeking to establish diversity jurisdiction may not do so by collaterally attacking a valid state court order appointing a fiduciary.  This, of course, is not what is occurring here.  Unlike Mr. Mecom, Ms. Sims was not appointed co-trustee by an order of any state court.  Rather, she was appointed solely by the private action of the trust itself, an action whose validity Mr. Modell does not "confess."  The warning expressed in *Mecom* against collateral

---

[70]  *Id.*

[71]  284 U.S. at 185, 52 S. Ct. at 85.

[72]  284 U.S. at 189, 52 S. Ct. at 87.

attacks on state court orders, therefore, is not implicated.  Where, as here, private conduct is at issue, courts take quite the opposite approach and, as discussed above, consider whether, based on the objective facts, the creation of an interest in litigation is a collusive device to stifle diversity jurisdiction.[73] That is the situation here.

## CONCLUSION

Plaintiffs are not like those who strategically arrange themselves according to citizenship before filing suit to ensure that an action legitimately remains in state court.  Rather, the record is replete with objective facts showing plaintiffs' efforts to divert power from the nominal trustees and to avoid returning to Maryland.  Ms. Sims is not a real and substantial party to the controversy, and the Court should therefore disregard her citizenship for purposes of diversity jurisdiction and deny plaintiffs' motion to remand.

DATED: July 24, 2007                              Respectfully submitted,


*/s/ Claudia T. Morgan*
**Hogan & Hartson LLP**
By: Claudia T. Morgan (CM 1998)
44 S. Broadway, Third Floor
White Plains, NY 10601
(212) 918-8300

*Counsel for Arthur B. Modell*

---

[73]  *See Grassi*, 894 F.2d at 182; *JMTR*, 42 F. Supp. 2d at  91; *Smilgin*, 854 F. Supp. at 465; *Picquet v. Amoco Prod. Co.*, 513 F. Supp. 938, 940 (M.D. La. 1981); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 162 (D. Maine 1969).

Steven F. Barley*
Daniel J. Jawor*
**Hogan & Hartson LLP**
111 S. Calvert Street, Suite 1600
Baltimore, MD 21202
(410) 659-2700

*Counsel for Arthur B. Modell*
*\* Admitted Pro Hac Vice*