IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHYLLIS ANDREWS, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ARTHUR B. MODELL,<br><br>　　　　　Defendant. | Civil Action No. 07-3368 (SCR) |

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

**EXHIBIT 5**

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "Agreement") is dated as of January 27, 2000, by and among Phyllis Andrews, residing at 284 South Smith Ridge Road, South Salem, New York ("Seller") and Vincent S. Andrews and Robert L. Andrews, as Trustees of the Phyllis Andrews Family Trust under Agreement dated December 28, 1999, established by Phyllis Andrews, as Grantor, having its principal place of business at c/o Vincent Andrews Management Corp., 16 West Avenue, Darien, Connecticut (the "Buyer").

## RECITALS

A. The Seller owns an interest in the net gain from the sale by Arthur B. Modell of his stock interest in Cleveland Browns, Inc., as set forth in a certain letter agreement dated February 2, 1963 between Vincent S. Andrews and Arthur B. Modell (the "Letter Agreement Interest"), a copy of which is attached hereto as Exhibit A.

B. On the terms and subject to the conditions set forth herein, the Seller desires to sell to the Buyer, and the Buyer desires to purchase from the Seller the Letter Agreement Interest.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and of the representations, warranties and agreements set forth below, the parties hereto agree as follows:

## ARTICLE 1
## PURCHASE AND SALE

Section 1.1. *Purchase and Sale of the Letter Agreement Interest*. At the Closing (as such term is hereinafter defined), on the terms and subject to the conditions of this Agreement, the Seller will sell, transfer and deliver to the Buyer, and the Buyer will purchase from the Seller, free and clear of all liens, claims, encumbrances, security interests, options, charges and restrictions of any kind, all of the Seller's right title and interest in and to the Letter Agreement Interest.

Section 1.2. *Consideration Payable by the Buyer*. The aggregate consideration to be paid by the Buyer to the Seller in exchange for the Partnership Interest shall be Two Hundred Thousand Dollars ($200,000) (the "Aggregate Consideration").

## ARTICLE 2
## CLOSING

The closing of the transactions herein contemplated (the "Closing") shall, unless another date, time or place is agreed to by parties hereto, take place at the offices of the Buyer at 1:00 p.m., local time, on January 21, 2000 (the date upon which the Closing shall occur is hereinafter referred to as the "Closing Date").

(a) <u>Delivery of Aggregate Consideration</u>. At the Closing, the Buyer shall deliver to Seller cash in the amount of Two Hundred Thousand Dollars ($200,000).

(b) <u>Assignment of Partnership Interest at Closing</u>. At the Closing, the Seller shall deliver or cause to be delivered to the Buyer an assignment of the Letter Agreement Interest (the "Assignment"), in proper form for transfer and such other documents as are specifically required by this Agreement.

## ARTICLE 3
## CONDITIONS TO CLOSING

Section 3.1. <u>Conditions to the Buyer's Obligations</u>. The obligations of the Buyer to consummate the Closing are subject to the satisfaction (or waiver by the Buyer) as of the Closing of the following conditions:

(a) <u>Representations, Warranties and Covenants</u>. The representations and warranties of the Seller made in this Agreement shall be true and correct in all material respects as of the date of this Agreement and, except as specifically contemplated by this Agreement, on and as of the Closing Date, as though made on and as of the Closing Date, and the Seller shall have performed or complied, in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Seller by the time of the Closing.

(b) <u>Assignment of Letter Agreement Interest</u>. The Seller shall have assigned the Letter Agreement Interest as provided in Article 2(b) hereof.

Section 3.2. <u>Conditions to the Seller's Obligations</u>. The obligations of the Seller to consummate the Closing are subject to the satisfaction (or waiver by the Seller) as of the Closing of the following conditions:

(a) <u>Representations, Warranties and Covenants</u>. The representations and warranties of the Buyer made in this Agreement shall be true and correct in all material respects as of the date of this Agreement and on and as of the Closing, as though made on and as of the Closing Date, and the Buyer shall have performed or complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by the Buyer by the time of the Closing.

(b) <u>Aggregate Consideration</u>. The Buyer shall have remitted the Aggregate Consideration as provided in Article 2.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF SELLER

The Seller hereby represents and warrants to the Buyer as follows:

Section 4.1. <u>Authority</u>. All necessary action required to have been taken by or on behalf of the Seller by applicable law has been taken to authorize (a) the execution and delivery by the Seller of this Agreement and (b) the performance by Seller of her obligations under this Agreement and the consummation of the transactions contemplated hereby. This Agreement constitutes a valid and binding agreement of Seller, enforceable against such Seller in accordance with its terms.

Section 4.2. <u>No Breach</u>. The execution and delivery of this Agreement by Seller does not, and the consummation of the transactions to which the Seller is a party contemplated hereby will not constitute a material breach or default or give rise to any lien, third-party right of termination, cancellation, material modification or acceleration under any material agreement, understanding or undertaking to which the Seller is a party.

Section 4.3. <u>Consents and Approvals</u>. Neither the execution and delivery of this Agreement by the Seller nor the consummation of the transactions to which Seller is a party contemplated hereby will require any consent, approval, authorization or permit of any person, other than consents which have been obtained.

Section 4.4. <u>Title to and Transfer of the Letter Agreement Interest</u>. The Seller is the record owner of the Letter Agreement Interest and has good and marketable title thereto, free and clear of any liens, claims, encumbrances, security interests, options, pledges, charges and restrictions of any kind. Upon delivery to the Buyer of the Assignment and such other documents required to be delivered pursuant to Article 2(b), and upon the Seller's receipt of the Aggregate Consideration and such other deliveries required pursuant to Article 2(b), good and marketable title to the Letter Agreement Interest will pass to the Buyer, free and clear of any liens, claims, encumbrances, security interests, options, pledges, charges and restrictions of any kind other than those arising from acts of the Buyer or its affiliates.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF BUYER

The Buyer hereby represents and warrants to the Seller as follows:

Section 5.1. <u>No Breach</u>. The execution and delivery of this Agreement by the Buyer does not, and the consummation of the transactions contemplated hereby by the Buyer will not constitute a breach or default (or an event that with notice or lapse of

time or both would become a breach or default) or give rise to any lien, third-party right of termination, cancellation, modification or acceleration under any material agreement, understanding or undertaking to which the Buyer is a party or by which it is bound, or any law, rule or regulation to which it is subject.

Section 5.2.    Consents and Approvals.  Neither the execution and delivery of this Agreement by the Buyer nor the consummation by the Buyer of the transactions contemplated hereby will require any consent, approval, authorization or permit of any person.

## ARTICLE 6
## COVENANTS

Section 6.1    Mutual Covenants.  Seller and Buyer covenant and agree from time to time following the Closing, as and when requested by either party hereto, the other party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to evidence the consummation or further effect the transactions contemplated by this Agreement.

Section 6.2    Seller's Covenant.  Seller, individually and as Executor of the estate of Vincent S. Andrews, covenants and agrees (a) to take all actions necessary to collect any and all proceeds payable under the Letter Agreement provided that Assignee agrees to pay all costs associated with such actions and (b) to pay all such proceeds received to Assignee.

## ARTICLE 7
## INDEMNIFICATION

Section 7.1.    Indemnification by the Seller.  Seller shall indemnify the Buyer and hold him harmless from all liability, damages, losses and expenses (including reasonable attorneys' fees and expenses) ("Losses") suffered or incurred or arising from or in connection with any breach of any representation or warranty made by the Seller under this Agreement or any other document delivered to the Buyer in connection herewith.

Section 7.2.    Indemnification by the Buyer.  The Buyer shall indemnify and hold harmless the Seller from any Losses suffered or incurred by Seller arising from in connection with (i) any breach of any representation or warranty made by the Buyer under this Agreement or any other document delivered to the Seller in connection herewith.

# ARTICLE 8
# MISCELLANEOUS

Section 8.1. <u>Amendments</u>. No amendment to this Agreement shall be effective unless it shall be in writing and signed by each party hereto.

Section 8.2. <u>Assignment</u>. This Agreement and the rights and obligations hereunder shall not be assignable or transferable by the Buyer or the Seller without the prior written consent of the other party hereto; <u>provided, however</u>, that no assignment shall limit or affect the assignor's obligations hereunder.

Section 8.3. <u>No Third-Party Beneficiaries</u>. This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any person or entity, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

Section 8.4. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to the other party.

Section 8.5. <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersede all prior agreements and understandings relating to such subject matter.

Section 8.6. <u>Governing Law</u>. This Agreement and the provisions hereof shall be governed by and construed in accordance with the internal laws of the state of Connecticut without regard to its principles of conflicts of laws.

Section 8.7. <u>Severability</u>. If any provision of this Agreement or the application of any such provision to any person or circumstance shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision hereof.

Section 8.8. <u>No Consequential or Punitive Damages</u>. Notwithstanding anything to the contrary elsewhere in this Agreement, no party (or its affiliates) shall, in any event, be liable to any other party (or its affiliates) for any consequential damages, including, but not limited to, loss of revenue or income, or loss of business reputation or opportunity, or any punitive damages relating to the breach or alleged breach of this Agreement.

Section 8.9. <u>Effect</u>. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and permitted assigns of the respective parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed as of the date first written above.

_____
Phyllis Andrews


PHYLLIS ANDREWS FAMILY TRUST
U/A DTD December 28, 1999

By: _____
Robert L. Andrews, Trustee

_____
Vincent S. Andrews, Trustee


.StmLib1:740579.1 01/24/00

P00160