IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHYLLIS ANDREWS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR B. MODELL, <br><br> Defendant. | Civil Action No. 07-3368 (SCR) |

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

EXHIBIT 7

THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

THOMAS E. MINOGUE, ET AL.   CASE NO. 580274
    Plaintiff(s)

vs.                          MEMORANDUM OF OPINION
                             AND ORDER
ARTHUR B. MODELL
    Defendant(s)

**FRIEDMAN, J:**

{¶1}   The Court has before it for consideration the motion of Defendant Arthur B. Modell to dismiss (filed July 17, 2006), the brief in opposition of Plaintiffs (filed August 18, 2006), Defendant's reply brief in support (filed September 1, 2006), and Plaintiffs' sur-reply (filed September 8, 2006). Upon a careful review, and for the reasons set forth below, the Court grants the motion of Defendant to dismiss.

{¶2}   This case concerns allegations that Defendant Arthur B. Modell failed to pay a finder's fee upon divesting substantially all his stock in the company that owns the Baltimore Ravens National Football League ("NFL") franchise. The following facts are undisputed. In 1960, Vincent Andrews, a resident of the state of New York, informed Mr. Modell, at the time also a New York resident, of an opportunity to purchase a part ownership in the Cleveland Browns football team. Mr. Andrews then organized a meeting between Mr. Modell and the sellers. At the time, Mr. Andrews intended to participate in the purchase, but was unable to procure the necessary funds. Mr. Modell later bought the Browns football team (in 1961) with other business partners. Two years after the purchase was finalized, Mr. Modell, now an Ohio resident, and Mr. Andrews signed the following Letter Agreement that stated:

> 1.   You [Modell] hereby retain me [Andrews] as your business manager for the period commencing January 1, 1963 and ending December 31, 1970. You will pay me a compensation of $3,000 for each of the calendar years during that period....In consideration of such retainer, I shall render to you at reasonable times and places such business advice, including the preparation of federal and other income and similar tax returns, as you may request.
>
> 2.   In addition to the foregoing, and as a finder's fee payable to me as a result of my efforts in the negotiations and transactions leading to your ownership of stock in Cleveland Browns, Inc., a Delaware corporation ("Browns"), and the acquisition by that corporation on March 22, 1961, of substantially all the assets of Cleveland

1

> Browns, Inc., an Ohio corporation, you agree that when, as and if you ever completely divest yourself of all your stock interest in the Browns or the Browns completely liquidate, you shall pay me an amount equivalent to 5% of your net gain from either of those transactions and any intervening sales by you of your Browns stock.
>
> 3. However, the payments specified in Section 2 above shall be made in the event of my death to my estate.

{¶3} Mr. Modell paid Mr. Andrews the annual compensation as outlined in section 1 of the Agreement. Mr. Andrews died on January 2, 1969. His widow and sole beneficiary, Phyllis Andrews, was named the executor of his estate. In 1996, Mr. Modell moved the Cleveland Browns to Maryland, where the team adopted the name, the Baltimore Ravens. Mr. Modell further announced the "potential" sale of the Ravens to a Baltimore businessperson, Stephen Bisciotti. Under the terms of the contract, Mr. Bisciotti purchased 49% of the team in 1999, with an option to buy the remaining 51% by December 1, 2005. In the spring of 2003, Mr. Bisciotti announced his plan to exercise his purchase option on the Ravens. On behalf of the Andrews Family Trust[1], trustees Thomas Minogue and Thomas Callaghan then contacted Mr. Modell regarding the 1963 Letter Agreement and finder's fee clause. Mr. Modell indicated to the two trustees that he had no intention of paying the finder's fee. Mr. Minogue and Mr. Callaghan then filed suit in the Trust's name in this Court on May 23, 2003. The action was then removed to the United States District Court for the Northern District of Ohio, and later transferred to the Unites States District Court for the District of Maryland.

{¶4} The United States District Court for the District of Maryland granted summary judgment in favor of Mr. Modell in July of 2005, finding that the Trust lacked standing to sue. According to the District Court, a letter written by Mrs. Andrews purporting to transfer the Agreement to the Trust was not sworn and was contradicted by her deposition testimony. Furthermore, the court noted that the letter agreement could not have passed to Mrs. Andrews by operation of law because the estate was insolvent and not finally closed. Lastly, because Plaintiffs could not establish that Mrs. Andrews ever had any rights to the Letter Agreement, the Court found that Plaintiffs could not prove that she transferred her rights to the Trust itself.

---

[1] The Andrews Family Trust was formed on December 27, 1999, just following the announcement of the sale of the Ravens to Mr. Bisciotti. Vincent Andrews, Jr. and Robert Andrews were its original trustees. The Trust was funded by a $200,000 gift from Mrs. Andrews to her sons. The $200,000 was then used by the Trust to purchase the Letter Agreement from Mrs. Andrews.

{¶5} During the first lawsuit, Mr. Modell and Mr. Bisciotti entered into an agreement whereby Mr. Modell retains, through a series of corporate entities, a 1% interest in the Baltimore Ravens. In addition, following the conclusion of the first suit, Mr. Callaghan resigned as trustee and two new trustees – Jane Sims and Herman Tarnow – were appointed. The trustees then filed a second complaint in this Court on December 30, 2005. In February of 2006, the matter was again removed to the United States District Court for the Northern District of Ohio. Given the appointment of Ms. Sims, a Maryland resident, and Mr. Tarnow, a Florida resident, as trustees, however, the case was remanded back to this Court in June of 2006 for lack of federal diversity jurisdiction.

{¶6} The suit before this Court involves claims for breach of contract, good faith and fair dealing and prevention. Defendant has moved to dismiss the complaint, asserting the following grounds: 1) Plaintiffs' lack of standing; 2) lack of personal jurisdiction over Defendant; 3) failure to state a claim for relief; and 4) the common law doctrine of *forum non conveniens*. Following a thorough review of the motion and briefs submitted, this Court grants Defendant's motion under the doctrine of *forum non conveniens*.

{¶7} "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 507. "The common law doctrine of *forum non conveniens* is committed to the sound discretion of a court of general jurisdiction, and may be employed pursuant to the inherent powers of such court to achieve the ends of justice and convenience of the parties and witnesses. The doctrine of forum non conveniens is consistent, and does not conflict, with the intent or purpose of *Civ. R. 3*, relating to venue." *Chambers v. Merrell-Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, syllabus ¶¶ 1 and 2. "In determining whether a dismissal is proper on the basis of *forum non conveniens*, the trial court must consider the facts of each case, balancing the private interests of the litigants and the public interest involving the courts and citizens of the forum state." *Stidham v. Butsch* (Hamilton Cty. App. 2005), 163 Ohio App.3d 227, 231.

{¶8} "Important private interests include: 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive…'" *Chambers*, 35 Ohio St.3d at 126-127, *citing Gilbert*, 330 U.S. at 508. "The *Gilbert* court noted that 'the plaintiffs' choice of forum should rarely be disturbed,' *id.*, particularly when the plaintiff has chosen his home forum. *Koster v. Lumbermens Mut. Cas. Co.* (1947), 330 U.S. 518, 524. However, in *Piper Aircraft Co. v.*

3

*Reyno* (1981), 454 U.S. 235, 256, the court held: "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.'"

{¶9}   As further outlined in *Chambers*, public interest factors for the Court to consider are as follows: (1) the administrative difficulties and delay to other litigants caused by congested court calendars; (2) the imposition of jury duty upon the citizens of a community which has very little relation to the litigation; (3) a local interest in having localized controversies decided at home; and (4) the appropriateness of litigating a case in a forum familiar with the applicable law. *Chambers*, 35 Ohio St.3d at 127, *citing Gilbert*, 330 U.S. at 508-509. "The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster*, 330 U.S. at 527.

{¶10}   It is clear to this Court that the litigants' private interests weigh heavily in favor of an alternate forum. In particular, the "relative ease of access to sources of proof" is certainly diminished, as all of the evidence and witnesses are located outside of this state. In fact, the bulk of the evidence and witnesses can be found in the state of Maryland. Moreover, given that the witnesses all reside outside of Ohio, this Court cannot compel any unwilling witnesses to appear for trial. Additionally, because the majority of the witnesses do reside in Maryland, the cost of obtaining the attendance of willing witnesses to testify in Cuyahoga County only increases. Lastly, as neither Plaintiffs nor Defendant reside in Ohio or have any connection to this forum, trial in this state will absolutely not serve the convenience of the parties.

{¶11}   With respect to the public interest factors, the Court observes for the record that the only apparent connection between the dispute at hand and this jurisdiction is the undisputed fact that Mr. Modell signed the Letter Agreement (drafted by his New York attorneys) forty-three years ago while at his then-home in the Cleveland area. No other activity related to this case appears to have transpired in Cuyahoga County, Ohio. Consequently, the Court finds that the following public factors weigh solidly against trial in this forum – "the imposition of jury duty upon the citizens of a community which has very little relation to the litigation" and "a local interest in having localized controversies decided at home."

## CONCLUSION AND ORDER

{¶12}   Upon this Court's determination that an alternate forum – i.e. the Circuit Court for Baltimore County, Maryland – is the more convenient, the common law doctrine requires that this

4

Court dismiss the action. *Chambers*, 35 Ohio St.3d at 127, *citing Gilbert*, 330 U.S. at 512. Accordingly, Defendant's motion is granted and the within action is hereby dismissed. FINAL.

**IT IS SO ORDERED.**

_____
Judge Stuart A. Friedman

Dated:        OCTOBER 4, 2006

### SERVICE

Copies of the foregoing Memorandum of Opinion and Order were sent via U.S. mail to all counsel of record this date: OCTOBER 4, 2006.

_____
Judge Stuart A. Friedman

5